# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Bryan S. Ross, Chapter 7 Trustee )<br><br>Plaintiff, )<br><br>v.  )<br><br>Continental Casualty Company )<br>Defendant. ) | Case:  1:07-CV-01450<br><br>Assigned to:  Roberts, Richard W.<br><br>Assign Date:  8/10/2007<br><br>Description:  Contract |

## ANSWER AND COUNTERCLAIM OF
## DEFENDANT CONTINENTAL CASUALTY COMPANY

Defendant Continental Casualty Company ("Continental"), by and through its undersigned counsel, hereby answers the Complaint for Declaratory Judgment and Breach of Contract Regarding Duty to Defend and Indemnity (the "Complaint") filed by Bryan S. Ross, Chapter 7 Trustee (the "Trustee") for the estate of Restaurant Equipment & Supply Depot, Inc. ("RESD"), on knowledge, information and belief as follows:

### Nature of the Action

Continental admits that Plaintiff seeks a declaratory judgment to determine the rights of the parties under an insurance policy issued by Continental.  Continental denies that it had a duty to defend or indemnity the Law Offices of Stanley H. Goldschmidt, P.C. (the "Firm") in connection with a malpractice action commenced by the Trustee.  Continental further denies that it breached its contractual obligations under the applicable insurance policy.

### Parties

1.      Continental admits that Bryan S. Ross is the Trustee of the bankruptcy estate of RESD.  Continental also admits that the Trustee entered into an assignment with RESD. Continental is without sufficient knowledge or information to form a belief as to whether Ross is duly appointed, and therefore denies the allegation.

358347v1

2.      Continental admits the allegations in Paragraph 2.

**Jurisdiction and Venue**

3.      Continental admits the allegations in Paragraph 3.

4.      Continental admits the allegations in Paragraph 4.

5.      Continental admits the allegations in Paragraph 5, except that Continental denies that Plaintiff is entitled to any relief.

**The Continental Policy**

6.      Continental admits that it issued Lawyers Professional Liability Policy No. 267870255 to the Firm for the original policy period May 1, 2005 to May 1, 2006 (the "Policy"), which was cancelled as of July 1, 2005.  The Firm purchased an unlimited extended reporting period upon cancellation of the Policy.

7.      Continental admits that the Policy was issued for the May 1, 2005 to May 1, 2006 policy period.  Continental further admits that the Policy was cancelled as of July 1, 2005. Continental denies that the Policy was effective through May 2006.  The Firm purchased an unlimited extended reporting period upon cancellation of the Policy.

8.      Continental admits that, subject to the Policy's terms, conditions and exclusions, the Policy has limits of liability of $2 million per claim and in the aggregate, inclusive of Claims Expenses.

9.      Continental admits that, in general, subject to the Policy's terms, conditions and exclusions, the Policy affords coverage to "insureds" because of "claims" that are both "first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services**."  Continental admits that Goldschmidt is an "insured" under the Policy.  Continental denies that the Policy covers the claims made against Goldschmidt and the Firm arising out of Goldschmidt's representation of

RESD in the lawsuit styled *Gutierrez v. Restaurant Equipment & Supply Depot, Inc.*, in the Superior Court of the District of Columbia (the "Underlying Litigation").

<b><u>The Underlying Litigation</u></b>

10.     Continental admits that in or around February 2000, certain individuals filed the complaint in the Underlying Litigation.  Continental is without sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 10, and therefore denies the allegations.

11.     Continental asserts that the allegations made by the plaintiffs in the Underlying Litigation are fully set out in the complaint filed in the Underlying Litigation, which speaks for itself.

12.     Continental admits the allegations in Paragraph 12.

13.     Continental admits the allegations in Paragraph 13.

14.     Continental admits the allegations in Paragraph 14.

15.     Continental is without sufficient knowledge or information to form a belief as to the allegations in Paragraph 15, and therefore denies the allegations.

<b><u>The Bankruptcy Case, Malpractice Lawsuit, and Assignment</u></b>

16.     Continental admits that RESD filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  Continental denies the remaining allegations in Paragraph 16.

17.     The allegations in Paragraph 17 constitute a conclusion of law to which no response is required.  To the extent a response is required, Continental denies the allegations in Paragraph 17.

18.     Continental admits only that on January 6, 2006, counsel for the Trustee wrote Goldschmidt regarding a potential malpractice claim.  Continental states that the position of the Trustee is fully set out in the January 6, 2006 letter, which speaks for itself.

19.     Continental admits the allegations in Paragraph 19.

20.     Continental admits only that it denied coverage for claims made against Goldschmidt and the Firm arising out of Goldschmidt's representation of RESD in the Underlying Litigation.  Continental denies the remaining allegations in Paragraph 20.

21.     Continental admits the allegations in Paragraph 21.

22.     Continental states that the Trustee's allegations are fully set forth in the complaint in the lawsuit captioned *Ross, Trustee in Bankruptcy for Restaurant Equipment & Supply Depot, Inc. v. The Law Offices of Stanley H. Goldschmidt, P.C.,* Case No. 05-01316, filed in the United States Bankruptcy Court for the District of Columbia on or around February 17, 2006 (the "Malpractice Lawsuit"), which speaks for itself.

23.     Continental admits the allegations in Paragraph 23.

24.     Continental denies the allegations in Paragraph 24.

25.     Continental admits the allegations in Paragraph 25.

26.     Continental admits only that, by letter dated April 27, 2006, it advised Goldschmidt that its denial of coverage must stand and that it would therefore not be providing Goldschmidt with a defense to the malpractice claim.  Continental denies the remaining allegations in Paragraph 26.

27.     Continental admits only that the Trustee, the Firm and Goldschmidt entered into a Settlement Agreement (the "Settlement Agreement"), which speaks for itself.  Continental is without sufficient knowledge to form a belief regarding the validity of the Settlement Agreement or the circumstances surrounding it.  Continental further is without sufficient knowledge to form a belief regarding the remaining allegations in Paragraph 27, and therefore denies the remaining allegations.

28.     Continental admits only that the Trustee, the Firm and Goldschmidt entered into the Settlement Agreement, which speaks for itself.  Continental is without sufficient knowledge to form a belief  regarding the validity of the Settlement Agreement or the circumstances surrounding it.  Continental further is without sufficient knowledge to form a belief regarding the remaining allegations in Paragraph 28, and therefore denies the remaining allegations.

29.     Continental admits only that the Trustee, the Firm and Goldschmidt entered into the Settlement Agreement, which speaks for itself.  Continental is without sufficient knowledge to form a belief regarding the validity of the Settlement Agreement or the circumstances surrounding it.  Continental further is without sufficient knowledge to form a belief regarding the remaining allegations in Paragraph 29, and therefore denies the remaining allegations.

30.     Continental admits the allegations in Paragraph 30.

## Count I - Declaratory Judgment

31.     Continental incorporates its responses to Paragraphs 1-30 of the Complaint as if fully set forth herein.

32.     The allegations of Paragraph 32 constitute a conclusion of law to which no response is required.

33.     The allegations of Paragraph 33 constitute a conclusion of law to which no response is required.

34.     The allegations of Paragraph 34 constitute a conclusion of law to which no response is required.

35.     Continental denies the allegations in Paragraph 35.

36.     Continental denies the allegations in Paragraph 36.

37.     Continental admits that the complaint in the Malpractice Lawsuit was filed during the Policy's extended reporting period.  Continental denies that all relevant events that gave rise

to the Malpractice Action occurred during the policy period. Continental denies the remaining allegations in Paragraph 37.

38.     Continental denies the allegations in Paragraph 38.

39.     Continental admits only that it did not provide a defense to the Firm or Goldschmidt in connection with the Malpractice Lawsuit because claims made against Goldschmidt and the Firm arising out of Goldschmidt's representation of RESD in the Underlying Litigation are not covered by the Policy. Continental denies the remaining allegations in Paragraph 39.

40.     Continental denies the allegations in Paragraph 40.

The allegations following Paragraph 40 constitute a prayer of relief to which no response is required. To the extent that a response is deemed to be required, Continental denies the allegations contained within the prayer for relief. Continental specifically denies that it owes any coverage to the Trustee, the Firm or Goldschmidt under the Policy.

Each and every allegation of the Complaint not specifically admitted is hereby denied.

### Count II – Breach of Contract

41.     Continental incorporates its responses to Paragraphs 1-40 of the Complaint as if fully set forth herein.

42.     Continental denies the allegations in Paragraph 42.

43.     Continental denies the allegations in Paragraph 43.

44.     Continental admits only that it did not provide a defense or indemnity coverage to the Firm or Goldschmidt in connection with the Malpractice Lawsuit. Continental specifically denies that it had an obligation to provide coverage to the Firm or Goldschmidt in connection with the Malpractice Litigation. Continental denies the remaining allegations in Paragraph 44.

45.     Continental denies the allegations in Paragraph 45.

46.    Continental denies the allegations in Paragraph 46.

47.    Continental denies the allegations in Paragraph 47.

48.    Continental denies the allegations in Paragraph 48.

The allegations following Paragraph 48 constitute a prayer of relief to which no response is required.  To the extent that a response is deemed to be required, Continental denies the allegations contained within the prayer for relief.  Continental specifically denies that it breached the terms of the Policy and that it is liable for damages to the Trustee, the Firm, or Goldschmidt.

Each and every allegation of the Complaint not specifically admitted is hereby denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Trustee has failed to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Trustee does not have standing to assert the allegations in the Complaint.

### Third Affirmative Defense

The Settlement entered into between Goldschmidt, the Firm, and the Trustee was not a valid, arms-length settlement.

### Fourth Affirmative Defense

The Trustee does not have a valid assignment of the Firm's rights under the Policy.

### Fifth Affirmative Defense

The Trustee may not pursue coverage under the Policy based on an assignment of rights from the Firm or Goldschmidt because the Trustee did not obtain the written consent of Continental to the assignment.

### Sixth Affirmative Defense

The Settlement was not reasonable, and therefore it is not covered by the Policy.

### Seventh Affirmative Defense

The Trustee cannot recover under the Policy because the Firm failed to comply with the terms of the Policy.

### Eighth Affirmative Defense

The Trustee's claims in the Complaint are barred by the Policy's terms, conditions and exclusions.

### Ninth Affirmative Defense

There is no coverage under the Policy for the Trustee's claims because, among other reasons, the Firm did not provide notice of this matter in connection with its application for the Policy.

### Tenth Affirmative Defense

There is no coverage under the Policy for the Trustee's claims because, among other reasons, the Policy only provides coverage to the extent that on the inception date of the first policy issued by the Firm, "no **Insured** had a basis to believe that any such act or omissions, or **related act or omission**, might reasonably be expected to be the basis of a **claim** . . . ."

### Eleventh Affirmative Defense

The Policy bars coverage for legal fees, costs and expenses paid or incurred or charged by the Insured.

WHEREFORE, Continental respectfully requests that this Court enter judgment in its favor and against the Trustee, dismiss the Trustee's claims, and award Continental its costs and such other relief as this Court may deem appropriate.

### COUNTERCLAIM

Defendant and Counterclaim Plaintiff Continental Casualty Company ("Continental"), for its Counterclaim against Plaintiff Bryan S. Ross, Chapter 7 Trustee (the "Trustee") for the

estate of Restaurant Equipment & Supply Depot, Inc. ("RESD"), alleges on knowledge, information and belief:

## Nature of the Action

1.    Continental asserts this Counterclaim to obtain a judicial determination and declaration as to the parties' respective rights and obligations under Lawyers Professional Liability Policy No. 267870255, issued by Continental to the Law Offices of Stanley H. Goldschmidt, P.C. (the "Firm") for the policy period May 1, 2005 to May 1, 2006, but which was cancelled as of July 1, 2005 (the "Policy").  The Firm purchased an unlimited extending reporting period upon cancellation of the Policy.  A copy of the Policy (except for the application and with social security numbers redacted) is attached hereto as Exhibit A.

2.    An actual and justifiable controversy has arisen and now exists relating to the parties' respective rights, duties, and obligations under the Policy.  In particular, Continental seeks a declaratory judgment that the Policy does not provide coverage in connection with the lawsuit captioned *Ross, Trustee in Bankruptcy for Restaurant Equipment & Supply Depot, Inc. v. The Law Offices of Stanley H. Goldschmidt, P.C.*, Case No. 05-01316, filed in the United States Bankruptcy Court for the District of Columbia on or around February 17, 2006 (the "Malpractice Lawsuit").  A copy of the complaint in the Malpractice Lawsuit is attached hereto as Exhibit B.

## The Parties

3.    Continental is an insurance company organized and existing under the laws of the State of Illinois, with its principal place of business located in Chicago, Illinois.  Continental legally transacts insurance business in the District of Columbia and within the geographical jurisdiction of this Court.

4.      Bryan S. Ross is the trustee of the bankruptcy estate of Restaurant Equipment &
Supply Depot, Inc.  Upon information and belief, the Trustee has obtained an assignment of
rights under the Policy.

### Jurisdiction and Venue

5.      Jurisdiction is proper under 28 U.S.C. §1332 based on the diversity of citizenship
between the parties, and the amount in controversy exceeds $75,000.

6.      Venue is appropriate in this Court under 28 U.S.C. § 1391(a) because the events
giving rise to this lawsuit occurred in the District of Columbia.

7.      This declaratory judgment action is proper under 28 U.S.C. §2201.

### The Underlying Litigation

8.      Goldschmidt was retained by RESD to defend it from an employment
discrimination lawsuit filed on or about February 17, 2000 in the Superior Court for the District
of Columbia (the "Underlying Litigation").

9.      On behalf of RESD, on or around May 5, 2000, Goldschmidt filed a motion to
dismiss the Underlying Lawsuit, which the trial court denied on September 11, 2000.

10.     That denial triggered RESD's obligation to file a timely answer, but Goldschmidt
failed to file an answer on behalf of RESD.

11.     Goldschmidt has admitted that the failure to file the answer was due to the Firm's
"oversight."

12.     When no answer was filed, the plaintiffs in the Underlying Litigation sought entry
of a default judgment on December 11, 2000.

13.     On or around January 2, 2001, the trial court entered an Order of Default as to
liability against RESD and set the case for a damages hearing on February 16, 2001.

14.    On or around January 17, 2001, Goldschmidt filed a motion to vacate the default judgment, which the Court denied on February 14, 2001.

15.    On or around March 7, 2001, Goldschmidt filed a Motion for Reconsideration of the Entry of Judgment by Default, which the Court denied on April 12, 2001.

16.    In the trial court's denial of the motion for reconsideration, it explicitly noted that its decision was due entirely to RESD's failure to file a timely answer.

17.    Beginning on April 23, 2001, the trial court held a jury trial on damages.

18.    On May 1, 2001, the court entered judgment against RESD on the jury verdict in excess of $800,000.

19.    Thereafter, the plaintiffs in the Underlying Litigation filed a motion for attorneys' fees and costs, which was granted.

20.    Goldschmidt filed a notice of appeal on behalf of RESD on or around May 16, 2001, submitted briefs, and attended oral argument on April 22, 2004.

21.    According to Goldschmidt, one of the arguments made on RESD's behalf in the appellate brief was that RESD's failure to file its answer timely was due entirely to its counsel's oversight.

22.    On July 1, 2004, the District of Columbia Court of Appeals affirmed the trial court's ruling.

23.    On July 15, 2004, Goldschmidt filed a Petition for *En Banc* Review with the District of Columbia Court of Appeals, which the appeals court denied on October 28, 2004.

24.    Upon information and belief, as of the Court of Appeals ruling, the Firm and Goldschmidt failed to advise RESD of the judgment entered against it or of the appeal.

25.     In addition, Goldschmidt served untimely responses to the plaintiffs' written discovery in the Underlying Litigation.

## The Bankruptcy, Malpractice Lawsuit, and Assignment

26.     Upon information and belief, on or around September 2, 2005, RESD filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

27.     Bryan S. Ross was appointed as the trustee of the RESD bankruptcy estate.

28.     By letter dated January 6, 2006, the Trustee advised Goldschmidt that he believed that the bankruptcy estate possessed a legal malpractice claim against Goldschmidt and the Firm.

29.     On or around February 17, 2006, the Trustee filed the Malpractice Lawsuit.  In the Malpractice Lawsuit, the Trustee alleged that Goldschmidt failed to exercise the standard of care required of an attorney, by, at minimum:  (1) failing to keep RESD informed of significant developments in a lawsuit against the RESD; (2) negligently misrepresenting the status of the lawsuit it was defending on behalf of RESD; (3) failing to exercise reasonable care in defending the lawsuit by failing to comply with court procedures and deadlines, resulting in the entry of a large judgment against RESD; and (4) charging RESD to correct errors committed by Goldschmidt and/or the Firm.

30.     In the Malpractice Lawsuit, the Trustee asserted two counts against the Firm and Goldschmidt:  (1) Breach of Contract; and (2) Negligence – Breach of Fiduciary Duty.

31.     Upon information and belief, judgment was entered against Goldschmidt in the amount of $909, 277.98 plus interest.

32.     Upon information and belief, Goldschmidt, the Firm, and the Trustee reached a settlement and entered into a Settlement Agreement (the "Settlement Agreement"), pursuant to which the Trustee obtained an assignment of the Firm's rights under the Policy.

33.     Continental did not provide its written consent to the assignment.

**The Policy**

34.    Continental issued the Policy, which is a claims made and reported policy, to the Firm for the policy period beginning May 1, 2005 and ending May 1, 2006.  However, the Policy was cancelled as of July 1, 2005.  The Firm purchased an unlimited extended reporting period upon cancellation of the Policy.

35.    This claim was reported under the extended reporting period.

36.    The Policy is a renewal of the first policy issued by Continental to the Firm.  The first policy issued by Continental (or any subsidiary or affiliate of Continental) to the Firm was issued for the May 1, 2003 to May 1, 2004 policy period (the "First Policy").

37.    Subject to all of its terms and conditions, the Policy provides that Continental will pay on behalf of its insureds:

> all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable . . . .

Policy, §I.A. (Terms in bold print are defined terms in the Policy).

38.    The Policy provides that Continental's duty to pay sums on behalf of its insureds is subject to the condition that:

> 3.    *prior to*:
>     a.    *the inception date of the first policy issued by the* **Company** *or any subsidiary or affiliate of the* **Company**, *if continuously renewed; or,*
>     b.    *the date the* **Insured** *first became a member or employee of the* **Named Insured** *or* **predecessor firm**,
>     *whichever is later, no* **Insured** *had a basis to believe that any such act or omission, or* **related act or omission**, *might reasonably be expected to be the basis of a* **claim**[.]

*Id.*, §I.A.3 (italic emphasis added).

39.    The Policy defines "Insured" in relevant part to mean:

the **Named Insured, predecessor firm**, and the persons or entities described below:

1.    any lawyer . . . who is or becomes a partner, officer, director, stockholder-employee, associate, manager or salaried employee of the **Named Insured** during the **policy period** shown in the Declarations.

*Id.*, §III.G.1.

40.    The Policy defines "Named Insured" to mean "the persons and entities designated in the Declarations." *Id.*, § III.I.

41.    The Firm is the "Named Insured" under the Policy, and Goldschmidt is an "Insured," within the meaning of the Policy.

42.    By letters dated March 14, 2006 and April 27, 2006, Continental advised Goldschmidt that there was no coverage for this matter under the Policy.

## COUNT I

### For Declaratory Relief that There is No Coverage for the Claims
### Asserted in the Malpractice Lawsuit Pursuant to Section I.A.3 of the Policy

43.    Continental realleges and incorporates by reference herein the allegations of Paragraphs 1 through 42 of this Counterclaim.

44.    As set forth above, Section I.A.3 of the Policy establishes, as a condition precedent to coverage for any claim, that no Insured had a basis to believe, prior to the inception date of the first policy issued by Continental and continuously renewed, that "such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**."

45.    The First Policy, which was the initial policy issued to the Firm by Continental, or a subsidiary or affiliate of Continental, incepted on May 1, 2003.

46.    As set forth in detail above, prior to May 1, 2003, Goldschmidt knew that:  (1) the Firm had failed to file a timely answer on behalf of RESD; (2) the plaintiffs had filed a request

for default judgment; (3) in January 2001, the court had entered an order of default judgment against RESD; (4) in February 2001, the court had denied Goldschmidt's motion to vacate the default judgment; (5) in April 2001, the court had denied Goldschmidt's motion for reconsideration of the denial, noting specifically that its decision was based on RESD's failure to file a timely answer to the complaint; and (6) on May 1, 2001, the trial court entered judgment for the plaintiffs in the Underlying Litigation in the amount of more than $836,000.

47.     Accordingly, Goldschmidt had a basis to believe, prior to the May 1, 2003 inception date of the First Policy, that his acts or omissions might reasonably be expected to be the basis of a claim against him or the Firm.

48.     Under these circumstances, the Policy's Insuring Agreement, Section I.A.3, applies to preclude coverage for the claims asserted in the Malpractice Lawsuit.

49.     By reason of the foregoing, Continental is entitled to a judgment declaring that the Policy provides no coverage for the claims that have been or could be asserted by the Trustee against Goldschmidt and the Firm in the Malpractice Lawsuit, and that Continental has no duty to pay the Trustee, Goldschmidt or the Firm any amounts in connection with these claims.

WHEREFORE, Continental requests that the Court enter judgment in its favor, and more specifically:

A.     Enter judgment that Policy does not provide coverage for the claims asserted in the Malpractice Lawsuit, and that Continental therefore has no obligation to pay any amounts in connection with the claims made in the Malpractice Lawsuit;

B.     Award Continental its costs incurred herein; and

C.     Award Continental all other relief to which it may be entitled.

Respectfully submitted,

Dated: September 25, 2007

/s/ Kelly V. Overman

Richard A. Simpson
(D.C. Bar No. 411893)
Kelly V. Overman
(D.C. Bar No. 482077)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 662-2000
Facsimile:  (202) 662-2190

*Counsel for Plaintiff*
*Continental Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer and Counterclaim of

Defendant Continental Casualty Company was filed electronically, as well as e-mailed and

mailed, first-class postage prepaid, this 25th day of September, 2007 to:

Michael E. Tucci, Esq.
Darrell W. Clark, Esq.
Christopher Lega, Esq.
Stinson Morrison Hecker, LLP
1150 18th Street, N.W. – Suite 800
Washington, D.C. 20036

                                    /s/ Kelly V. Overman_____
                                    Kelly V. Overman

# EXHIBIT A



# LAWYERS PROFESSIONAL LIABILITY POLICY
## DECLARATIONS

| Agency: | Branch: | Policy Number: |
|---|---|---|
| 708359 | 912 | 267870255 |

Insurance is provided by Continental Casualty Company,
CNA Plaza, Chicago, IL 60685.
A Stock Insurance Company.

**1A. NAMED INSURED AND MAILING ADDRESS:**
Law Offices of Stanley H. Goldschmidt, P.C.
1025 Connecticut Avenue, NW
Suite 220
Washington, DC 20036

**NOTICE TO POLICYHOLDERS:**
This is a Claims Made and Reported policy. It applies only to
those claims that are both first made against the insured and
reported in writing to the Company during the policy period.
Please review the policy carefully and discuss this coverage
with your insurance agent or broker.

**1B. PREDECESSOR FIRM(S):** See Declarations Addendum

---

**2. POLICY PERIOD:**
Inception: 05/01/2005
*at 12:01 A.M. Standard Time at the address shown above*

Expiration: 05/01/2006

---

**3. LIMITS OF LIABILITY:**
*Inclusive of Claims Expenses*

Each Claim: $2,000,000
Aggregate: $2,000,000

Death or Disability and Non-Practicing
Extended Reporting Period Limit of Liability:

Each Claim: $1,000,000
Aggregate: $2,000,000

---

**4. DEDUCTIBLES:**
*Inclusive of Claims Expenses*

Aggregate: $10,000
*per claim*

---

**5. POLICY PREMIUM:**

Total Policy Premium:

$7,435.00

*Includes CNA Risk Management Seminar Credit of*

$ 0.00

---

**6. FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:** *per claim ded   5/1/95 firm retro*
G-118011-A (Ed. 07/2001), G-118012-A (Ed. 03/1999), G-118016-A (Ed. 09/1996), G-118029-A (Ed. 09/1996), G-
118039-A08 (Ed. 06/2001), G-144216-A (Ed. 11/2002), G-144872-ALW (Ed. 01/2003), G-145125-A (Ed. 08/2003),
G-145184-A (Ed. 06/2003)    *amend of term*

---

**7. WHO TO CONTACT:**



**ROSSMANN-HURT-HOFFMAN, INC.**

9011 CHEVROLET DRIVE
ELLICOTT CITY, MD 21042

*RHH INSURANCE*

**FOR INFORMATION CALL:**
(410) 465-4300
TOLL FREE 1-800-345-4133
TELEFAX (410) 465-5151
SINCE 1871

---

| Countersignature | Date | Authorized Representative | Date |
|---|---|---|---|
| | | *Stuart T Hoffman* | 5-3-05 |



### LAWYERS PROFESSIONAL LIABILITY POLICY
### DECLARATIONS ADDENDUM

Item 1.B.   PREDECESSOR FIRM(S):

NONE



**CONTINENTAL CASUALTY COMPANY**
**CNA PLAZA**
**CHICAGO, ILLINOIS 60685**

LAWYERS PROFESSIONAL LIABILITY POLICY

ATTORNEY SCHEDULE

**Policy Number:**    267870255

**Name of Each Lawyer**
Stanley H. Goldschmidt
Tamir D. Damari

**Social Security Number**

**REDACTED**



### CONTINENTAL CASUALTY COMPANY
### CNA PLAZA
### CHICAGO, ILLINOIS 60685

## LAWYERS PROFESSIONAL LIABILITY POLICY

## EACH CLAIM DEDUCTIBLE ENDORSEMENT

In consideration of a premium credit, it is understood and agreed that Item 4. of the Declarations is deleted and replaced in its entirety by the following:

    4.      **DEDUCTIBLE:**        Each claim: $10,000
                                                 *inclusive of claims expenses.*

It is further understood and agreed that Section II, LIMITS OF LIABILITY AND DEDUCTIBLE, paragraph (C), entitled Deductible, is deleted in its entirety, and the following is substituted in place thereof:

    (C)    Deductible - Each Claim

        The deductible amount stated in the Declarations for "each claim" applies to each and every claim made against an **Insured**. It shall be paid by the **Named Insured** and applies to the payment of **damages** and **claims expenses** for **claims** both first made against the **Insured** and reported to the **Company** in writing during the **policy period**. In the event the **Named Insured** fails to pay, the deductible shall be paid jointly and severally by all **Insureds**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

All other terms and conditions of the Policy remain unchanged.

ENDORSEMENT NUMBER: 1
POLICY NUMBER: 267870255
ISSUED TO: Law Offices of Stanley H. Goldschmidt, P.C.
EFFECTIVE DATE OF ENDORSEMENT: 05/01/2005

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-118016-A (Ed. 09/96)

 INSURANCE IN TOUCH WITH BUSINESS

### CONTINENTAL CASUALTY COMPANY
### CNA PLAZA
### CHICAGO, ILLINOIS 60685

---

#### LAWYERS PROFESSIONAL LIABILITY POLICY

#### RETROACTIVE EXCLUSION CLAUSE ENDORSEMENT

It is understood and agreed that Section I., Insuring Agreement, Paragraph A., is amended to include a new subparagraph (5) as follows:

A(5).    the act or omission occurred on or after 05/01/1995.

All other provisions of this Policy remain unchanged.

POLICY NO.267870255

THIS ENDORSEMENT FORMS A PART OF THE ABOVE REFERENCED POLICY, AND TAKES EFFECT ON THE EFFECTIVE DATE AND HOUR OF SAID POLICY UNLESS ANOTHER EFFECTIVE DATE IS SHOWN BELOW, AND EXPIRES CONCURRENTLY WITH SAID POLICY.

ISSUED    TO:    LAW    OFFICES    OF    STANLEY    H.    EFFECTIVE DATE
GOLDSCHMIDT, P.C.

OF THIS ENDORSEMENT  05/01/2005

Complete only when this Endorsement is not prepared with the Policy or is not to be effective with the Policy
Countersigned by

AUTHORIZED REPRESENTATIVE

G-118029-A (Ed. 09/96)

Page 1 of 1



**CNA** *INSURANCE IN TOUCH WITH BUSINESS*

### CONTINENTAL CASUALTY COMPANY
### CNA PLAZA
### CHICAGO, ILLINOIS 60685

---

**LAWYERS PROFESSIONAL LIABILITY POLICY**

**AMENDMENT OF TERMINATION PROVISIONS**
**DISTRICT OF COLUMBIA**

It is understood and agreed that Condition L. Cancellation/Nonrenewal is deleted and replaced in its entirety by the following:

L.   Cancellation/Nonrenewal

   1.   Cancellation

     a.   This Policy may be canceled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this Policy by written notice to the **Company** stating at what future date cancellation is to be effective.

     b.   The **Company** may cancel this Policy by mailing, or by delivery of a written notice of cancellation to the **Named Insured** to the mailing address last known to the **Company** at least 30 days prior to the effective date of cancellation. At least 5 days prior to sending notice to the **Named Insured**, the **Company** will notify the agent or broker, if any, who wrote the Policy at the last mailing address known to the **Company**. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery (where permitted by law) of such written notice either by the **Named Insured** or by the **Company** shall be equivalent to mailing.

     c.   If this Policy is a new policy and has been in effect for 30 days or less, the **Company** may cancel for any reason.

     d.   If this Policy is in effect for more than 30 days, or if it is a renewal of a policy issued by the **Company**, the **Company** may cancel only for one or more of the following reasons:

       (1)   Nonpayment of premium or failure to pay amounts in excess of the limit of the **Company's** liability or within the amount of the deductible; or

       (2)   Material misrepresentation or fraud made by the **Named Insured** or with the **Named Insured's** knowledge in obtaining this Policy or in pursuing a **claim** under this Policy; or

       (3)   There has been a substantial change in the scale of risk covered by this Policy; or

       (4)   The interest of the **Insured** shall have been transferred to a person other than the **Insured** or beneficiary, unless the transfer is permitted under the terms of this Policy.

     e.   If the **Company** cancels this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels its Policy, the **Company** shall retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

   2.   Nonrenewal

G-118039-A08 (Ed. 06/01)

 INSURANCE IN TOUCH WITH BUSINESS

a.    If the Company elects to nonrenew this Policy, the Company will mail, or deliver written notice of nonrenewal to the Named Insured at the last mailing address known to the Company, at least 30 days prior to the expiration date of this Policy.  At least 5 days prior to sending notice to the Named Insured, the Company will notify the agent or broker, if any, who wrote the Policy at the last mailing address known to the Company.  Delivery (where permitted by law) of such written notice by the Company shall be equivalent to mailing.

b.    The offering of terms and conditions different from the expiring terms and conditions does not constitute a refusal to renew.

All other terms and conditions of the Policy remain unchanged.

POLICY NO. 261870255

THIS ENDORSEMENT FORMS A PART OF THE ABOVE REFERENCED POLICY, AND TAKES EFFECT ON THE EFFECTIVE DATE AND HOUR OF SAID POLICY UNLESS ANOTHER EFFECTIVE DATE IS SHOWN BELOW, AND EXPIRES CONCURRENTLY WITH SAID POLICY.

ISSUED   TO:   LAW   OFFICES   OF   STANLEY   H.   EFFECTIVE DATE
GOLDSCHMIDT, P.C.

OF THIS ENDORSEMENT 05/01/2005

Complete only when this Endorsement is not prepared with the Policy or is not to be effective with the Policy
Countersigned by _____
                                    AUTHORIZED REPRESENTATIVE

G-118039-A08  (Ed. 06/01)

**CNA**

# IMPORTANT INFORMATION

## POLICYHOLDER DISCLOSURE

### NOTICE OF INSURANCE COVERAGE

### FOR ACTS OF TERRORISM

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, that you are entitled to insurance coverage for losses arising out of acts of terrorism, *as defined in the Act*, subject to all applicable policy provisions.

You should know that any covered losses caused by acts of terrorism will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium as of this date that is attributable to coverage for acts of terrorism is $0.

G-144216-A  (Ed. 11/02)





**Continental Casualty Company**
**CNA PLAZA**
**CHICAGO, ILLINOIS 60685**

## LAWYERS PROFESSIONAL LIABILITY POLICY

### COVERAGE OF AND CAP ON LOSSES FOR CERTIFIED ACTS OF TERRORISM

In consideration of the premium charge of $0, it is agreed as follows:

1.  The DEFINITIONS section is amended by the addition of the following new term:

    "**Certified Act of Terrorism**" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.
    The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a **Certified Act of Terrorism:**

    a.  The act resulted in aggregate losses in excess of $5 million; and

    b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.  This Policy provides coverage for losses arising from **Certified Acts of Terrorism** subject to all other terms and conditions of this policy.

3.  Under the federal Terrorism Risk Insurance Act of 2002, any losses caused by **Certified Acts of Terrorism** will be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

4.  With respect to any one or more **Certified Acts of Terrorism**, the Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause in such law which results in a cap on the Insurer's liability for payments for terrorism losses.

All other provisions of the Policy remain unchanged.

---

**POLICY NO. 267870255**

THIS ENDORSEMENT FORMS A PART OF THE ABOVE REFERENCED POLICY, AND TAKES EFFECT ON THE EFFECTIVE DATE AND HOUR OF SAID POLICY UNLESS ANOTHER EFFECTIVE DATE IS SHOWN BELOW, AND EXPIRES CONCURRENTLY WITH SAID POLICY.

**ISSUED TO: LAW OFFICES OF STANLEY H. GOLDSCHMIDT, P.C.**

**EFFECTIVE DATE**

**OF THIS ENDORSEMENT 05/01/2005**

*Complete only when this Endorsement is not prepared with the Policy or is not to be effective with the Policy*
Countersigned by

**AUTHORIZED REPRESENTATIVE**

G-144872-ALW (Ed. 01/03)



### POLICYHOLDER NOTICE

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

Our records indicate that you have insurance coverage coming up for renewal with us. The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups), any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

### ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

### ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

ENDORSEMENT NUMBER: 6
POLICY NUMBER: 267870255
ISSUED TO: Law Offices of Stanley H. Goldschmidt, P.C.

G-145125-A  (ED. 08/03)
Page 1 of 2



4.    Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.    Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

ENDORSEMENT NUMBER: 6
POLICY NUMBER: 267870255
ISSUED TO: Law Offices of Stanley H. Goldschmidt, P.C.
EFFECTIVE DATE OF ENDORSEMENT: 05/01/2005

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145125-A  (ED. 08/03)
Page 2 of 2

 



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ECONOMIC AND TRADE SANCTIONS CONDITION**

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.  Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.  Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.  Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

ENDORSEMENT NUMBER: 7
POLICY NUMBER: 267870255
ISSUED TO: Law Offices of Stanley H. Goldschmidt, P.C.
EFFECTIVE DATE OF ENDORSEMENT: 05/01/2005

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145184-A (Ed. 6/03)
Page 1 of 1

# CONTINENTAL CASUALTY COMPANY
## CNA PLAZA
## CHICAGO, ILLINOIS 60685

---

### LAWYERS PROFESSIONAL LIABILITY POLICY

---

*Words and phrases that appear in bold are defined in the Definitions section of this Policy.*

**THIS IS A CLAIMS MADE AND REPORTED POLICY. IT APPLIES ONLY TO THOSE CLAIMS THAT ARE BOTH FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

I.    INSURING AGREEMENT

    A.    Coverage

The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

1.    the **Insured** did not give notice to a **prior insurer** of such **claim** or a **related claim**;

2.    the **Insured** did not give notice to a **prior insurer** of any such act or omission or **related act or omission**;

3.    prior to:

    a.    the inception date of the first policy issued by the **Company** or any subsidiary or affiliate of the **Company**, if continuously renewed; or,

    b.    the date the **Insured** first became a member or employee of the **Named Insured** or **predecessor firm**,

whichever is later, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**;

4.    there is no other policy, whether primary, contributory, excess, contingent or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of

G-118011-A
Ed.7/01

1

legal services by such Insured or by any person for whom the Insured is legally liable while affiliated with a firm other than the Named Insured.

B.    Defense

The Company shall have the right and duty to defend in the Insured's name and on the Insured's behalf a claim covered by this Policy even if any of the allegations of the claim are groundless, false or fraudulent. The Company shall have the right to appoint counsel and to make such investigation and defense of a claim as is deemed necessary by the Company. If a claim shall be subject to arbitration or mediation, the Company shall be entitled to exercise all of the Insured's rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

C.    Settlement

The Company shall not settle a claim without the written consent of the Named Insured. If the Named Insured refuses to consent to a settlement or compromise recommended by the Company and acceptable to the claimant, then the Company's limit of liability under this Policy shall be reduced to the amount for which the claim could have been settled plus all claim expenses incurred up to the time the Company made its recommendation, which amount shall not exceed the remainder of the limit of liability specified in Section II.A.

D.    Exhaustion of limits

The Company is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a claim after the applicable limit of the Company's liability has been exhausted by payment of damages or claim expenses or by any combination thereof or after the Company has deposited the remaining available limits of liability into a court of competent jurisdiction. In such case, the Company shall have the right to withdraw from the further investigation, defense, payment or settlement of such claim by tendering control of said investigation, defense or settlement of the claim to the Insured.

## II.    LIMITS OF LIABILITY AND DEDUCTIBLE

A.    Limit of liability - each claim

Subject to paragraph B. below, the limit of liability of the Company for damages and claim expenses for each claim first made against the Insured and reported to the Company during the policy period shall not exceed the amount stated in the Declarations for each claim.

G-118011-A
Ed. 7/01

2

B.  Limit of liability - in the aggregate

The limit of liability of the **Company** for **damages** and **claim expenses** for all **claims** first made against the **Insured** and reported to the **Company** during the **policy period** shall not exceed the amount stated in the Declarations as the aggregate.

C.  Deductible

The deductible amount stated in the Declarations is the total amount of the **Insured's** liability for all **claims** and applies to the payment of **damages** and **claim expenses** for **claims** first made and reported to the **Company** in writing during the **policy period**. The deductible shall be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

D.  Multiple **insureds, claims** and claimants

The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the **Company** will pay as **damages** and **claim expenses** regardless of the number of **Insureds, claims** made or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company**, all such **related claims**, whenever made, shall be considered a single **claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

E.  Supplementary payments

Although not **Damages**, the **Company** will pay, in addition to the applicable limit of liability:

1.  up to $500.00 for loss of earnings to each **Insured** for each day or part of a day of such **Insured's** attendance, at the **Company's** request, at a trial, hearing or arbitration proceeding involving a **claim** against such **Insured**, but in no event shall the amount payable hereunder exceed $10,000.00 per **Insured** despite the number of days the **Insured** is in attendance, or the number of trials, hearings or arbitration proceedings that the **Insured** is required to attend. In no event shall the amount payable hereunder exceed $10,000.00 despite the number of **Insureds** hereunder or the number of such proceedings.

G-118011-A
Ed. 7/01

3

2.    up to $10,000.00 for any **Insured** and in the aggregate, for attorney fees and other reasonable costs, expenses or fees (the "Disciplinary Fees")resulting from a **Disciplinary Proceeding** incurred as the result of a notice of such **Disciplinary Proceeding** both first received by the **Insured** and reported to the **Company** during the **policy period**, arising out of an act or omission in the rendering of **legal services** by such **Insured**. Except as set forth below, the amount payable hereunder shall not exceed $10,000.00 despite the number of **Insureds** hereunder or the number of such proceedings.

In the event of a determination of **No Liability** of the **Insured** against whom the **Disciplinary Proceeding** has been brought, the **Company** shall reimburse such **Insured** for Disciplinary Fees, including those in excess of the $10,000 cap set forth above, up to $100,000. In no event shall the amount payable hereunder exceed $100,000 despite the number of **Insureds** hereunder or the number of such proceedings.

F.    Risk Management Incentives

1.    Mediation

If mediation of a **claim** takes place either without institution of arbitration proceeding or service of suit or within 60 days of the institution of such proceedings or service of suit, and such **claim** is ultimately resolved for an amount acceptable to the **Insured** and the **Company** by the process of mediation, the **Insured's** deductible, applying to the **claim**, will be reduced by 50%. In no event shall the amount of the deductible waived hereunder exceed $25,000.

2.    Subpoena Assistance

In the event the **Insured** receives a subpoena for documents or testimony arising out of **legal services** rendered by the **Insured** and the **Insured** would like the **Company's** assistance in responding to the subpoena, the **Insured** may provide the **Company** with a copy of the subpoena and the **Company** will retain an attorney to provide advice regarding the production of documents, to prepare the **Insured** for sworn testimony, and to represent the **Insured** at the **Insured's** depositions, provided that:

a.    the subpoena arises out of a lawsuit to which the **Insured** is not a party; and

b.    the **Insured** has not been engaged to provide advice or testimony in connection with the lawsuit, nor has the **Insured** provided such advice or testimony in the past.

Such legal counsel's fees incurred under this provision are in addition to the limits of liability and are not applicable to the deductible. Any notice the **Insured** gives the **Company** of such subpoena shall be deemed notification of a potential **claim** under Section V.A. of this Policy.

### III.    DEFINITIONS

Wherever used in this Policy:

A.    **"Bodily injury"** means injury to the body, sickness or disease sustained by any person, including death resulting from such injuries; or mental injury, mental anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person whether or not resulting from injury to the body, sickness, disease or death of any person.

B.    **"Claim"** means a demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury,** in the rendering of or failure to render **legal services.** A demand shall include the service of suit or the institution of an arbitration proceeding against the **Insured.**

C.    **"Claim expenses"** mean:
  1.    fees charged by attorneys designated by the **Company** or by the **Insured** with the **Company's** written consent; and
  2.    all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim** if incurred by the **Company,** or by the **Insured** with the written consent of the **Company,** including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **Company** to apply for or furnish any such bond.

  **Claim expenses** with respect to a **claim** will be paid first and payment will reduce the amount available to pay **damages. Claim expenses** shall not include fees, costs or expenses of employees or officers of the **Company.** Nor shall **claim expenses** include salaries, loss of earnings or other remuneration by or to any **Insured.**

D.    **"Company"** means the insurance company named in the Declarations.

E.    **"Damages"** mean judgments, awards and settlements, provided any settlement is negotiated with the assistance and approval of the **Company. Damages** do not include:
  1.    legal fees, costs and expenses paid or incurred or charged by the

**Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

2.    civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

3.    punitive or exemplary amounts;

4.    the multiplied portion of multiplied awards;

5.    injunctive or declaratory relief;

6.    amounts for which the **Insured** is not financially liable or that are without legal recourse to the **Insured**.

F.    **"Disciplinary Proceeding"** means any proceeding before a state or federal licensing board or a peer review committee to investigate charges alleging professional misconduct.

G.    **"Insured"** means the **Named Insured**, **predecessor firm** and the persons or entities described below:

1.    any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee of the **Named Insured** during the **policy period** shown in the Declarations.

2.    any lawyer previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee but only for **legal services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation. The term "previously affiliated" as used herein does not include a lawyer who, during the **policy period** and while affiliated with the **Named Insured**: a) voluntarily ceases, permanently and totally, the private practice of law; or b) dies or becomes **totally and permanently disabled**. Such an lawyer will be deemed to be an **Insured** under paragraph one above;

3.    any lawyer, law firm, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who acts as Of Counsel to the **Named Insured** or any non-employee independent contractor attorney to the **Named Insured**, but only for **legal services** rendered on behalf of the **Named Insured** and only if a fee inured to the **Named Insured** except that no fee need inure to the **Named Insured** where eleemosynary (pro bono) **legal services** are rendered by such Of Counsel **Insured** where at the time of retention, there was

G-118011-A
Ed.7/01

6

approval by the appropriate committee or lawyer within the **Named Insured** as a matter that would be handled without compensation. Any lawyer, law firm, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who acts as Of Counsel to the **Named Insured**, who previously qualified as an **Insured** under paragraph 1 above, but left the full time practice of law to practice exclusively as Of Counsel to the **Named Insured**, will be deemed to be an **Insured** under paragraph 1 above.

4.  any person who is a former or current employee, other than an employed lawyer, of the **Named Insured** or any **predecessor firm**, but solely for services performed by such person within the course and scope of their employment by the **Named Insured** or any **predecessor firm** and provided that the services in dispute are **legal services** of the **Named Insured** or any **predecessor firm**;

5.  the estate, heirs, executors, administrators, assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy.

H.  **"Legal services"** mean:

1.  those services performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or as a notary public. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

2.  those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services.

I.  **"Named Insured"** means the persons and entities designated in the Declarations.

J.  **"No Liability"** means a final determination of no liability in favor of the **Insured** who is the subject of a **Disciplinary Proceeding**. In no event shall the term **"No Liability"** apply to a **Disciplinary Proceeding** for which a settlement has occurred, a determination of no further action is made, or the matter is abandoned by the disciplinary authority.

K.  **"Personal injury"** is an injury resulting from an act or omission arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process.

L.  **"Policy period"** means the period of time between the inception date and time

G-118011-A
Ed.7/01

7

shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

M.  **"Predecessor firm"** means any entity which has undergone dissolution and is named as such on the Declarations.

N.  **"Prior insurer"** means an insurer, including the **Company** and any subsidiary or affiliate of the **Company**, who has issued a lawyers professional liability insurance policy that is applicable to a **claim**, such policy having an inception date prior to the **policy period**.

O.  **"Related acts or omissions"** mean all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

P.  **"Related claims"** mean all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services**.

Q.  **"Totally and permanently disabled"** means that an **Insured** is so disabled as to be wholly prevented from rendering **legal services** provided that such disability:
  1.  has existed continuously for not less than six (6) months; and
  2.  is reasonably expected to be continuous and permanent.

## IV.  EXCLUSIONS

This Policy does not apply:

A.  to any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an **Insured** except that this exclusion shall not apply to **personal injury**. The **Company** shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Company's** rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against the **Insured**;

B.  to any **claim** for **bodily injury**, or injury to, or destruction of, any tangible property, including the loss of use resulting therefrom except that the exclusion of **bodily injury** does not apply to mental injury, mental anguish, mental tension, or emotional distress caused by **personal injury**;

G-118011-A
Ed.7/01

8

C.     to any loss sustained by an **Insured** or claim made against an **Insured** as beneficiary or distributee of any trust or estate;

D.     to any **claim** based on or arising out of the **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to the **Insured** in the absence of such agreement;

E.     to any **claim** by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder unless such **claim** arises out of **legal services** by an **Insured** rendered to such other **Insured** as a client;

F.     to any **claim** based on or arising out of an **Insured's** capacity as:
   1.     a former, existing or prospective officer, director, shareholder, partner or manager of a business enterprise or charitable organization (if the above are not named in the Declarations); or
   2.     a former, existing or prospective officer, director, shareholder, partner manager, or trustee of a fund or trust which is a pension, welfare, profit-sharing, mutual or investment fund or trust; or
   3.     a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law;
   except that this exclusion shall not apply to a **claim** based on or arising out of an **Insured's** capacity as a member, director or officer of any professional legal association, its governing board or any of its committees.

G.     to any **claim** based on or arising out of an **Insured's** capacity as a public official or an employee or representative of a governmental body, subdivision or agency unless the **Insured** is deemed as a matter of law to be a public official or employee or representative of such entity solely by virtue of rendering **legal services** to it;

H.     to any **claim** based on or arising out of **legal services** performed for any existing or prospective partnership, organization, corporation, company or other business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, if at the time of the act or omission giving rise to such **claim**:
   1.     any **Insured** controlled, operated or managed or intended to control, operate or manage such enterprise; or
   2.     any **Insured** was :
      a.     a partner or employee of such enterprise, or
      b.     more than a 10% shareholder or a sole proprietor of such enterprise, or
   3.     **Insureds** cumulatively were more than a 10% shareholder of such enterprise,

G-118011-A
Ed.7/01

9

except that this exclusion shall not apply to any **claim** based on or arising out of legal services to any professional legal association, its governing board or any of its committees. As used in this exclusion, the word "partner" shall be deemed to include members of limited liability companies or limited liability partnerships;

## V.    CONDITIONS

### A.    Notice of **claims** and potential **claims**

1.    The **Insured**, as a condition precedent to the obligations of the **Company** under this Policy, shall immediately give written notice to the **Company** during the **policy period**:

    a.    of any **claim** made against the **Insured**;

    b.    of the **Insured's** receipt of any notice, advice or threat, whether written or verbal, that any person or organization intends to hold the **Insured** responsible for any alleged breach of duty.

2.    If during the **policy period** the **Insured** shall become aware of any act or omission that may reasonably be expected to be the basis of a **claim** against the **Insured** and gives written notice to the **Company** of such act or omission and the reasons for anticipating a **claim**, with full particulars, including but not limited to:

    a.    the specific act or omission;

    b.    the dates and persons involved;

    c.    the identity of anticipated or possible claimants;

    d.    the circumstances by which the **Insured** first became aware of the possible **claim**,

then any such **claim** that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made at the time such written notice was given to the **Company**.

### B.    Innocent **Insured**

Whenever coverage under this Policy would be excluded, suspended or lost because of any exclusion relating to criminal, dishonest, fraudulent, or malicious conduct by any person insured hereunder, the **Company** agrees that such insurance, as would otherwise be afforded under this Policy, shall be applicable with respect to an **Insured** who did not personally participate or personally acquiesce in or remain passive (including failure to give timely notice) after having knowledge of such conduct. The **Company's** obligation to pay **damages** under this Condition B will be excess of the full extent of the assets of any **Insured** involved in such criminal, dishonest, fraudulent, or malicious conduct.

G-118011-A
Ed. 7/01

10

C.    Reimbursement of the **Company**

If the **Company**, in the exercise of its discretion and without any obligation to do so, pays any amount in excess of the applicable limits of liability or within the amount of the deductible, the **Named Insured**, or upon the **Named Insured's** failure to pay, the **Insureds**, jointly and severally, shall be liable to the **Company** for any and all such amounts and, upon demand, shall pay such amounts to the **Company**.

D.    Territory

This Policy applies to an act or omission taking place anywhere in the world, provided that the **claim** is made and suit is brought against the **Insured** within the United States of America, including its territories, possessions, Puerto Rico or Canada.

E.    Alternative dispute resolution

After the final adjudication or settlement of a **claim**, any dispute concerning allegations of bad faith or tort against the **Company** regarding the appropriateness or value of any settlement or final disposition of any **claim** that exceeds the deductible may be submitted to any form of alternative dispute resolution acceptable to the **Company** and the **Insured**. Should the **Company** and the **Insured** be unable to agree on the form of alternative dispute resolution, then such dispute shall be submitted to binding arbitration. Except as set forth below, the rules of the American Arbitration Association shall apply. The arbitration panel shall consist of one arbitrator selected by the **Company**, one arbitrator selected by the **Insured**, and one arbitrator selected by the first two arbitrators. If the two arbitrators selected cannot agree on a third arbitrator, then the American Arbitration Association shall appoint an arbitrator.

F.    Other insurance

If there is other insurance that applies to the **claim**:
1.    on a claims made basis, this insurance shall be excess over such other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise. This does not apply to insurance that is purchased by the **Named Insured** specifically to apply in excess of this insurance.
2.    on an occurrence basis, this insurance shall be available in the amount by which the limit of liability for this Policy exceeds the applicable limit of liability of such other valid and collectible insurance. The difference shall be the maximum the **Company** shall pay under this Policy with

G-118011-A
Ed.7/01

11

respect to a **claim**. If the applicable limit of liability of such other valid and collectible insurance is equal to or greater than the maximum payable under this Policy, then this Policy shall not afford any insurance with respect to such **claim**.

G.    Assistance and cooperation of the **Insured**

1.    The **Insured** shall cooperate with the **Company** and, upon the **Company's** request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **claim**.

2.    The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.

3.    The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the consent of the **Company**.

H.    Action against the **Company**

No action shall lie against the **Company** unless, as a condition precedent thereto:

1.    there shall have been full compliance with all the terms of this Policy; and

2.    the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Company** as a party to any action against an **Insured**, nor shall the **Company** be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the **Company** of any of its obligations hereunder.

I.    Subrogation

In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery thereof against any person or organization, including any rights such **Insured** may have against any other **Insured** involved in dishonest, fraudulent, criminal, malicious or intentional conduct. The **Insured** shall execute and deliver instruments and papers and do whatever else is

G-118011-A
Ed.7/01

12

necessary to secure and collect upon such rights. The **Insured** shall do nothing to prejudice such rights.

J.    Changes

Notice to any of the **Company's** agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy. It also will not prevent the **Company** from asserting any rights under the provisions of this Policy. None of the provisions of this Policy will be waived, changed or modified except by written endorsement, signed by the **Company**, issued to form a part of this Policy.

K.    Assignment

No assignment of interest of the **Insured** under this Policy shall be valid, unless the written consent of the **Company** is endorsed hereon.

L.    Cancellation/ Nonrenewal

1.    This Policy may be canceled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this Policy by written notice to the **Company** stating at what future date cancellation is to be effective.

2.    The **Company** may cancel or non-renew this Policy by written notice to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least sixty (60) days before cancellation or non-renewal is to be effective. If the **Company** cancels this Policy because the **Insured** has failed to pay a premium when due or has failed to pay amounts in excess of the limit of the **Company's** liability or within the amount of the deductible, this Policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The time of surrender of this Policy or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period**. Delivery (where permitted by law) of such written notice either by the **Named Insured** or by the **Company** shall be equivalent to mailing.

3.    If the **Company** cancels this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels this Policy, the **Company** shall retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4.    The offering of terms and conditions different from the expiring terms and conditions shall not constitute a refusal to renew.

G-118011-A
Ed.7/01

13

M.     Entire contract

By acceptance of this Policy the **Insured** agrees that:

1.     all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**;

2.     this Policy is issued in reliance upon the **Insured's** representations;

3.     this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4.     the misrepresentation of any material matter by the **Insured** or the **Insured's** agent will render this Policy null and void and relieve the **Company** from all liability herein.

N.     **Named Insured** sole agent

The **Named Insured** shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any notices hereunder, any amendments to or cancellation of this Policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

O.     Liberalization

If the **Company** adopts any revision that would broaden coverage under this policy form G-118011-A without additional premium at any time during the **policy period**, the broadened coverage will immediately apply to this Policy except that it will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.

P.     Notices

Any notices required to be given by an **Insured** shall be submitted in writing to the **Company** or its authorized representative. If mailed, the date of mailing of such notice shall be deemed to be the date such notice was given and proof of mailing shall be sufficient proof of notice.

## VI.     EXTENDED REPORTING PERIODS

G-118011-A
Ed.7/01

As used herein, "extended reporting period" means the period of time after the end of the policy period for reporting claims by reason of an act or omission that occurred prior to the end of the policy period and is otherwise covered by this Policy.

A.    Automatic extended reporting period

If this Policy is canceled or non-renewed by either the Company or by the Named Insured, the Company will provide to the Named Insured an automatic, non-cancelable extended reporting period starting at the termination of the policy period if the Named Insured has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy. This automatic extended reporting period will terminate after sixty (60) days.

B.    Optional extended reporting period

1.    If this Policy is canceled or non-renewed by either the Company or by the Named Insured, then the Named Insured shall have the right to purchase an optional extended reporting period. Such right must be exercised by the Named Insured within sixty (60) days of the termination of the policy period by providing:
a.    written notice to the Company; and
b.    with the written notice, the amount of additional premium described below.

2.    The additional premium for the optional extended reporting period shall be based upon the rates for such coverage in effect on the date this Policy was issued or last renewed and shall be for one (1) year at 100% of such premium; two (2) years at $150% of such premium; three (3) years at 175% of such premium; six (6) years at 225% of such premium; or, for an unlimited period at 250% of such premium.

C.    Death or disability extended reporting period

1.    If an Insured dies or becomes totally and permanently disabled during the policy period, then upon the latter of the expiration of: the policy period; any renewal or successive renewal of this Policy; or any automatic or optional extended reporting period, such Insured shall be provided with a death or disability extended reporting period as provided below.
a.    In the event of death, such Insured's estate, heirs, executors or administrators must, within sixty (60) days of the expiration of the policy period, provide the Company with written proof of the date of death. This extended reporting period is provided to the estate, heirs, executors and administrators of such Insured.
b.    If an Insured becomes totally and permanently disabled, such

Insured or Insured's legal guardian must, within sixty (60) days of the expiration of the **policy period**, provide the **Company** with written proof that such **Insured** is **totally and permanently disabled**, including the date the disability commenced, certified by the **Insured's** physician. The **Company** retains the right to contest the certification made by the **Insured's** physician, and it is a condition precedent to this coverage that the **Insured** agree to submit to medical examinations by any physician designated by the **Company**. This **extended reporting period** is provided until such **Insured** shall no longer be **totally or permanently disabled** or until the death of such **Insured** in which case subparagraph a. hereof shall apply.

2.    No additional premium will be charged for any death or disability **extended reporting period**.

D.    Non-practicing **extended reporting period**

1.    If an **Insured** retires or otherwise voluntarily ceases, permanently and totally, the private practice of law during the **policy period** and has been continuously insured by the **Company** for at least three consecutive years, then such **Insured** shall be provided with an **extended reporting period** commencing upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period**.

2.    This **extended reporting period** is provided until the death of such **Insured** in which case subparagraph C.1. hereof shall apply or, until such **Insured** shall resume the practice of law.

3.    No additional premium will be charged for any non-practicing **extended reporting period**.

E.    **Extended reporting periods limits of liability**

1.    Automatic and optional **extended reporting periods** limits of liability

a.    Where the **Company** has the right to nonrenew or cancel this Policy and it exercises that right, then the **Company's** liability for all **claims** reported during the automatic and optional **extended reporting periods** shall be part of and not in addition to the limits of liability for the **policy period** as set forth in the Declarations and Section II, Limits of Liability of this Policy.

b.    If this Policy is canceled by the **Named Insured** or if the **Company** offers to renew this Policy, and the **Named Insured** refuses such renewal offer, then the **Company's** liability for all

G-118011-A
Ed. 7/01

16

claims reported during the automatic and optional **extended reporting periods** shall be reinstated to the limits of liability applicable to this Policy as set forth in Section II.A. and B. hereof.

2. Separate death or disability and non-practicing **extended reporting period** limits of liability

    a.      Limit of Liability - Each " **Claim** "

Subject to paragraph B. below, the **Company's** limit of liability for each claim first made against the Insured, and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**, shall not exceed the amount stated in the declarations as the " **Each Claim** Death or Disability and Non-Practicing **extended reporting period** limit of liability".

    b.   Limit of Liability - In the Aggregate

The limit of liability of the **Company** for all **claims** first made against the **Insured**, and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**, shall not exceed the amount stated in the Declarations as the "Aggregate Death or Disability and Non-Practicing **extended reporting period** limit of liability".

F.     Elimination of right to any **extended reporting period**

There is no right to any **extended reporting period**:
1.     if the **Company** shall cancel or refuse to renew this Policy due to:
    a.     non-payment of premiums; or
    b.     non-compliance by an **Insured** with any of the terms and conditions of this Policy; or
    c.     any misrepresentation or omission in the application for this Policy; or,
2.     if at the time this right could be exercised by an **Insured**, such **Insured's** right to practice law has been revoked, suspended or surrendered at the request of any regulatory authority for reasons other than that the **Insured** is totally and permanently disabled.

G.     **Extended reporting period** not a new policy

It is understood and agreed that the **extended reporting period** shall not be construed to be a new policy and any **claim** submitted during such period shall otherwise be governed by this Policy.

G-118011-A
Ed.7/01

17

IN WITNESS WHEREOF, the **Company** has caused this Policy to be executed by its Chairman and Secretary, but this Policy shall not be binding upon the **Company** unless completed by the attachment of the Declarations and signed by a duly authorized representative of the **Company**.

Chairman of the Board   _Bernard L. Hirzelburg_     Secretary    _Joseph M. Winter_

G-118011-A
Ed.7/01

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re )<br><br>RESTAURANT EQUIPMENT & SUPPLY )<br>DEPOT INC., )<br><br>Debtor )<br>_____ ) | Case No.  05-01316<br>(Chapter 7) |
| Bryan S. Ross Trustee, )<br><br>Plaintiff )<br>v. )<br><br>The Law Offices of Stanley H. Goldschmidt P.C. )<br><br>Serve:  Stanley H. Goldschmidt )<br>1025 Connecticut Ave N.W. )<br>Suite 200 )<br>Washington D.C. 20036 )<br>And )<br><br>Stanley H. Goldschmidt; )<br><br>Serve:  Stanley H. Goldschmidt )<br>1025 Connecticut Ave N.W. )<br>Suite 200 )<br>Washington D.C. 20036 )<br><br>Defendants. )<br>_____ ) | Adv. Pro. No. _____ |

**COMPLAINT**

The Plaintiff, Bryan S. Ross, trustee for the bankruptcy estate of Restaurant

Equipment and Supply Depot Inc., by and through his attorneys, Stinson Morrison

Hecker LLP, files this Adversary Complaint, stating:

DB03/763807 0110/6723490.1

## INTRODUCTORY STATEMENT

This legal malpractice action seeks damages arising out of the Defendants' breach of their contractual and professional duties while representing the Debtor in a pre-petition engagement. In sum, the Defendants failed to exercise that standard of care required of an attorney, by, at a minimum: (1) failing to keep the Debtor informed of significant developments in a lawsuit against the Debtor; (2) negligently misrepresenting the status of the lawsuit it was defending on behalf of the Debtor; (3) failing to exercise reasonable care in defending the lawsuit by failing to comply with court procedure and deadlines, resulting in the entry of a judgment against the Debtor in the amount of $836,238.99; and (4) charging the Debtor to correct errors committed by the Defendants.

## JURISDICTION AND VENUE

1.     The Debtor commenced this case on September 3, 2005 when it filed a petition for relief under Chapter 7 of the Bankruptcy Code ("Petition Date").

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 548 and 550.  This is a core proceeding under 28 U.S.C. § 157(b).

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4.     Sections 548, 550(a) and 704(1) of the Bankruptcy Code ("Code") 11 U.S.C. §§ 101-1330, authorize the Trustee to bring this adversary proceeding. Pursuant to Section 541 of the Code, the Trustee owns any cause of action that could have been previously brought by the Debtor prior to bankruptcy.

## PARTIES

5.      The Debtor, Restaurant Equipment and Supply Depot Inc., ("Debtor") was a District of Columbia corporation which previously operated a business in the District of Columbia selling restaurant supplies with its principal place of business at 2101 New York Avenue, N.E. Washington D.C.

6.      The Plaintiff, Bryan S. Ross, is the duly appointed, qualified and serving Chapter 7 trustee ("Trustee"), of the bankruptcy estate of Restaurant Equipment and Supply Depot Inc.

7.      The Defendant, the Law Offices of Stanley H. Goldschmidt P.C., was a Maryland professional corporation and served as counsel to the Debtor and, upon information and belief, previously conducted business in this District, and is an entity over whom this Court may exercise jurisdiction.

8.      The Defendant, Stanley H. Goldschmidt ( all defendants are collectively referred to as "Goldschmidt" or "Defendants"), was a shareholder of The Law Offices of Stanley H. Goldschmidt P.C. and served as counsel to the Debtor and, upon information and belief, previously conducted and still conducts business in this District, and is a person over whom this Court may exercise jurisdiction.

9.      Upon information and belief, Defendant Stanley Goldschmidt is now associated with the law firm of Roetzel & Andress, located and conducting business in the District of Columbia.

10.     Upon information and belief, Defendant, The Law Offices of Stanley H. Goldschmidt P.C., no longer conducts business in the District of Columbia and has merged into the law firm of Roetzel & Andress.

3

## STATEMENT OF FACTS COMMON TO ALL COUNTS

### (a) The Superior Court Lawsuit.

11.     On February 16, 2000, three employees of the Debtor filed a lawsuit in the Superior Court of the District of Columbia, styled *Osvaldo Gutierrez et al v. Restaurant Equipment and Supply Depot Inc.*, Case No. 01-774 ("Lawsuit").

12.     The Lawsuit alleged that the Debtor violated provisions of the District of Columbia Wage and Hours laws, the District of Columbia Human Rights Act, and alleged the Debtor committed a battery against one of the Plaintiffs.

13.     In or about February 2000, the Debtor entered into an agreement whereby Goldschmidt would represent the Debtor in the Lawsuit in exchange for compensation.

14.     On May 5, 2000, Goldschmidt filed a motion to dismiss the Lawsuit.

15.     On September 11, 2000, the trial court denied the Debtor's motion to dismiss.

16.     Pursuant to D.C. Super. Ct Rule 12, the denial of the motion to dismiss triggered the Debtor's obligation to answer the Lawsuit within ten days.

17.     Goldschmidt failed to answer the Lawsuit.

18.     On December 11, 2000, the Plaintiff requested the trial court enter a default judgment against the Debtor based upon its failure to answer.

19.     Goldschmidt failed to respond to the Plaintiffs' request for entry of default.

20.     On January 2, 2001, the trial court entered a default judgment as to liability against the Debtor.

21.     Following entry of the default judgment, Goldschmidt filed a motion to reconsider the entry of the default judgment and a motion to vacate the default judgment. The trial court denied both motions.

22.     Although Goldschmidt was aware of the entry of the default judgment, Goldschmidt failed to inform the Debtor.

23.     On April 23, 2001, the trial court held a six (6) day jury trial on the issue of damages to be awarded the Plaintiffs in light of the default judgment on liability.

24.     Goldschmidt represented the Debtor at the jury trial.

25.     Goldschmidt failed to inform the Debtor of the jury trial.

26.     Goldschmidt failed to call any witnesses including any representative of the Debtor at the jury trial.

27.     Goldschmidt failed to introduce any evidence on behalf of the Debtor at the jury trial.

28.     On May 1, 2001, the Court entered judgment on the jury verdict in favor of the Plaintiffs and against the Debtor in the total amount of $836,238.99.

29.     Goldschmidt failed to inform the Debtor of the entry of the judgment.

*(b) The Appeal.*

30.     On May 16, 2001 Goldschmidt filed a Notice of Appeal in the District of Columbia Court of Appeals. After both sides submitted briefs, the Court of Appeals heard oral arguments on April 22, 2004.

31.     Goldschmidt failed to inform the Debtor of the appeal.

32.    On July 1, 2004, the District of Columbia Court of Appeals affirmed the trial court's entry of the jury verdict against the Debtor. *See Restaurant Equipment and Supply Depot Inc., v. Gutierrez*, 852 A.2d 951 (2004).

33.    Goldschmidt failed to inform the Debtor of the decision of the District of Columbia Court of Appeals affirming the trial court's entry of judgment.

*(c) The Plaintiffs' Motion for Attorneys' Fees.*

34.    Following the Court of Appeals decision, the Plaintiffs in the lawsuit filed a Motion for an Award of Attorney's fees pursuant to D.C. Code Section 1-1501 *et seq*.

35.    Goldschmidt represented the Debtor in opposing the motion for attorney's fees.

36.    On June 17, 2005, the trial court entered an order awarding the Plaintiffs' attorney's fees in the amount of $73,038.99.

37.    Goldschmidt failed to inform the Debtor of the Motion for Attorneys Fees or the entry of the award.

*(d) Goldschmidt's Continuous Representation.*

38.    Goldschmidt continuously represented the Debtor from February 2000, through at least June 17, 2005, the date the trial court entered an award on the Motion for Attorneys Fees.

39.    During the course of the representation, Goldschmidt charged the Debtor at least 70,146.17 in fees.

40.    During the course of the representation, the Debtor fully performed its obligations under the contract with Goldschmidt and paid Goldschmidt at least

6

$40,487.12 in fees. Of the fees paid by the Debtor to Goldschmidt, it appears that Goldschmidt charged approximately $33,674.80 to correct its own errors.

### COUNT I– BREACH OF CONTRACT

41.    The Trustee incorporates paragraphs 1-40 as if fully set forth herein.

42.    In or about January 2000, Goldschmidt and the Debtor entered into an agreement by the terms of which Goldschmidt agreed to provide legal services to the Debtor, more specifically, defending the Lawsuit, and the Debtor agreed to pay Goldschmidt its fees charged for those services.

43.    The Debtor fully performed under the terms of the agreement by paying Goldschmidt its fees.

44.    Implicit in the contact between Goldschmidt and the Debtor was that Goldschmidt would provide competent and thorough legal services in exchange for the Debtor's payment of legal fees.

45.    Goldschmidt breached his contractual and professional obligations to the Debtor by failing to take appropriate action and by failing to exercise reasonable diligence in defending the Lawsuit.

46.    Goldschmidt further breached his contractual duties by changing the Debtor legal fees for work required to attempt to fix Goldschmidt's errors.

47.    As a proximate result of Goldschmidt's breach, the Debtor has suffered damages including the entry of a judgment against it, and its payment of legal fees to Goldschmidt to correct its own errors, and seeks damages in an amount to be proven at trial.

## COUNT II – NEGLIGENCE – BREACH OF FIDUCIARY DUTY

The Trustee incorporates paragraphs 1-47 as if fully set forth herein.

48.     In or about January 2000, Goldschmidt and the Debtor entered into an agreement by the terms of which Goldschmidt agreed to provide legal services to the Debtor, more specifically, defending the Lawsuit, and the Debtor agreed to pay Goldschmidt fees based upon those services.

49.     In executing its duties under the agreement, Goldschmidt owed a fiduciary duty to exercise such reasonable skill, care and diligence as members of the legal profession commonly possess and exercise in similar situations

50.     Goldschmidt breached its fiduciary duty and the standard of care owed to the Debtor for the reasons stated above, including, but not limited to failing to take appropriate action in order to defend the Lawsuit, in violation of the standards reasonably to be expected of a competent practitioner in his profession and in these circumstances, and by those acts and omissions, negligently failed to render proper legal representation to the Debtor.

51.     Goldschmidt's negligence and breaches of duty directly and proximately caused damages to the Debtor, including the entry of a judgment against the Debtor which would not have been entered but for Goldschmidt's negligence and breaches of duty, and the payment of attorneys fees to Goldschmidt, by the Debtor, to correct its own errors.

52.     All of the Defendants are jointly and severally liable to the Debtor for breaches of professional and fiduciary duty owed to the Debtor constituting legal malpractice.

8

WHEREFORE, for the foregoing reasons, the Plaintiff, Bryan S. Ross, Chapter 7 Trustee, requests this Court:

a.    enter judgment in favor of Bryan S. Ross, Trustee, and against the Defendants in an amount sufficient to compensate the Debtor for the damages sustained and to be determined at trial, plus attorneys' fees and interest; and

b.    grant Bryan S. Ross, Trustee, such other and further relief as this Court may deem just equitable and proper.

Dated: February 17, 2006                    Respectfully submitted,

                                            STINSON MORRISON HECKER LLP

                                            /s/Michael Tucci
                                            Michael Tucci (#430470)
                                            Christopher Lega (#495023)
                                            Stinson Morrison Hecker LLP
                                            1150 18th Street, N.W., #800
                                            Washington, D.C. 20036
                                            Tel: (202) 785-9100

                                            Attorneys for Chapter 7 Trustee

9