## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
Bryan S. Ross, Chapter 7 Trustee          )
                                          )
                    Plaintiff,            )
                                          )        Case No. 1:07-CV-01450
v.                                        )
                                          )
Continental Casualty Company              )
                                          )
                    Defendant.            )
_____)

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT[1]

Plaintiff Bryan S. Ross, Chapter 7 Trustee ("Trustee") for the estate of Restaurant Equipment & Supply Depot, Inc. ("RES"), by and through undersigned counsel, hereby files this Opposition to Defendant Continental Casualty Company's ("Continental") Motion for Summary Judgment ("Motion").

## I.    INTRODUCTION.

The Law Offices of Stanley H. Goldschmidt P.C., and its principal, Stanley H. Goldschmidt (collectively "Goldschmidt P.C.") believed that the default judgment entered against RES by the trial court was entered in error and would be vacated on appeal. Goldschmidt P.C.'s painstaking research and investigation showed that its belief was both justified and reasonable. So, when Goldschmidt P.C. accepted insurance coverage by Continental, it had no reason to believe the firm would be the subject of a malpractice claim related to the RES case.

_____

[1] Continental has styled its Motion as either a Motion on the Pleadings or a Motion for Summary Judgment. As Continental supports its motion with the Declaration of Kelly V. Overman and several Exhibits, and the Trustee opposes the Motion with the Declaration of Stanley H. Goldschmidt, the Court should treat Continental's Motion as one for summary judgment.

Continental has opted to refuse to fulfill its obligation under the insurance policy it sold to Goldschmidt P.C. It prefers to simply keep Goldschmidt P.C.'s premiums and deny coverage. Thus, rather than squarely address the troublesome (for Continental) statutory provision that governs this dispute, D.C. Code Annotated § 31-4314, Continental attempts to ignore the provision and offer arguments focusing on case law from outside the District of Columbia.

By sidestepping the applicable statute, Continental dooms its Motion, as it completely fails to address the elements necessary for it to succeed. Moreover, Continental's attempt to focus the Court's attention on "objective" versus "subjective" standards is ultimately pointless, as coverage was wrongly denied under either one.

## II.  FACTS.

On February 16, 2000, four individuals filed a lawsuit against Restaurant Equipment & Supply Depot Inc., ("RES") in the Superior Court of the District of Columbia, styled *Osvaldo Gutierrez et al v. Restaurant Equipment and Supply Depot Inc.*, Case No. 00-1165 (the "Gutierrez Case"). Plaintiff's Statement of Undisputed Material Facts ("SMF") at ¶ 1. The lawsuit alleged that RES violated provisions of the District of Columbia Wage and Hour laws and its Human Rights Act. SMF at ¶ 2. Goldschmidt P.C. represented RES in the lawsuit. SMF at ¶ 3.

On or about May 5, 2000, Goldschmidt P.C. filed a Motion to Dismiss, or in the Alternative for Summary Judgment, in the Gutierrez Case (the "Motion to Dismiss"), which was comprised of 29 pages and 5 exhibits.  The Motion to Dismiss was ultimately denied by the trial court.  Prior to and during the pendency of the Motion to Dismiss, Goldschmidt, P.C. actively defended the case on behalf of RES by proffering discovery requests, negotiating with opposing counsel, attending an Initial Conference and filing Motions. SMF at ¶ 4.

After the denial of RES' Motion to Dismiss, Goldschmidt P.C. did not file a timely answer and the trial judge entered a default on January 4, 2001 in favor of the plaintiffs and against RES. SMF at ¶ 5.

On January 17, 2001, Goldschmidt P.C. filed an Expedited Motion to Vacate Order of Default, which attached as an Exhibit the Verified Answer of RES, which was comprised of 13 pages and 95 Paragraphs, and which set forth the bases of RES' substantive defense.  In this Motion, Goldschmidt P.C. attempted to convince the trial judge to vacate the default, and eventually came to believe that the trial judge did not understand the controlling case law, and that the Court of Appeals would correct the error of the trial judge. SMF at ¶ 6.

Following a jury trial on damages, a final judgment was rendered against RES on May 4, 2001. SMF at ¶ 7.

In trying to understand the position taken by the trial court in connection with the entry of the default, Goldschmidt P.C. had substantial legal research undertaken. SMF at ¶ 8. Based on this research Goldschmidt P.C. came to believe that the trial court had abused its discretion in entering the default and refusing to vacate the default judgment because Goldschmidt P.C. had actively defended the case at the trial level and because there is a strong judicial policy in the District of Columbia for cases to be heard on the merits, which prompts D.C. Courts to enter and uphold default judgments only in cases of egregious disregard of Court Rules. SMF at ¶ 9.

For example, D.C.R.C.P. Rule 55(a) requires courts to enter default judgments when defendants fail to "plead or otherwise defend." However, case law and commentary are clear that the actions taken during my representation meet the criterion for "otherwise defend[ing]" the case. In fact, although the District of Columbia Court of Appeals ultimately upheld the trial court, it noted that "[i]f our analysis were controlled solely by considering Rule 55, appellants'

argument would be persuasive." *Restaurant Equipment and Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 955 (D.C.App. 2004). SMF at ¶ 10.

Goldschmidt P.C. also came to believe that certain other authority demonstrated that the trial court had erred. For example, Goldschmidt P.C.'s evaluation of apposite precedent revealed that the vast weight of case law in the District of Columbia militated against the entry of a default against RES under the circumstances presented. Indeed, the research undertaken on RES' behalf (which included reviewing every case in the District of Columbia where a default had been entered against a litigant for failing to timely file an answer) did not reveal a single case where a default had been upheld on appeal under facts analogous to the Gutierrez Case. Goldschmidt P.C.'s office also researched default judgment case law in at least fifteen other state and federal jurisdictions and discovered that the vast weight of case law in these jurisdictions also militated against the entry of a default against RES under the circumstances presented. SMF at ¶ 11.

Goldschmidt P.C.'s research revealing the extreme reluctance of Courts to enter defaults against parties that have actively participated in a case was also corroborated by Goldschmidt P.C.'s experience litigating before the District of Columbia Superior Court, in which Goldschmidt P.C. has often found it difficult to secure a default judgment against uncooperative adverse litigants, even in circumstances where such litigants have disregarded prior courts orders to comply with the court's rules. SMF at ¶ 12.

In light of the foregoing, at all times prior to May 1, 2003 Goldschmidt P.C. believed that the default judgment of the trial court would be vacated. As such, at no point during this time period did Goldschmidt P.C. have a basis to believe that a malpractice claim might be asserted against it by RES. SMF at ¶ 13. In fact, Stanley Goldschmidt has been practicing law in the

District of Columbia for nearly 30 years, and never once has he experienced (or even heard of) a case that was actively defended, and where a default entry was not vacated. SMF at ¶ 15. Nonetheless, the Court of Appeals for the District of Columbia affirmed the judgment of the trial court on July 1, 2004. SMF at ¶ 14.

On or about May 1, 2003, Continental Casualty Company ("Continental") issued Lawyers Professional Liability Policy No. LAW 2667870255 (the "Policy") Goldschmidt P.C. SMF at ¶ 16.

Based on the substantial research and investigation Goldschmidt P.C. had conducted, at the time Stanley M. Goldschmidt signed the application for this Policy, Goldschmidt P.C. reasonably believed (based, among other things, upon the legal research undertaken by Goldschmidt P.C.'s office) that the appellate court would vacate the default judgment. Because of this, and because RES never once indicated that they had been damaged or believed Goldschmidt P.C. had committed malpractice, Goldschmidt P.C. did not reasonably believe there was any basis for a malpractice claim against it. SMF at ¶ 17.

Goldschmidt P.C. did not provide a false statement to Continental regarding its beliefs about the existence of possible malpractice claims against it, and Goldschmidt P.C. did not intend to deceive Continental in any way. SMF at ¶ 18.

On September 9, 2005, RES filed a voluntary petition under Chapter 7 of the Code. SMF at ¶ 19.

On or about January 6, 2006, Goldschmidt P.C. received a letter from counsel for the Trustee explaining that there might be a basis for asserting a malpractice claim against Goldschmidt P.C. Counsel for the Trustee indicated in his letter a willingness to meet prior to filing the lawsuit. SMF at ¶ 20.

Goldschmidt P.C. forwarded a copy of this letter to Continental on January 9, 2006 and did not hear anything back from Continental until February 2, 2006 when Goldschmidt P.C. was told that Continental might refer the matter to outside counsel for a determination if coverage would be made available. Goldschmidt P.C. was told that it would be informed the next day, on February 3, 2006, as to whether the matter would be referred to outside counsel. Goldschmidt P.C. received no communication from Continental on February 3 and in the meantime, the Trustee, not receiving a response from Continental to his offer to meet, filed suit against Goldschmidt P.C. on February 17, 2006. The Complaint alleged that Goldschmidt P.C. committed legal malpractice when it represented RES in the underlying lawsuit. SMF at ¶ 21.

The next communication Goldschmidt P.C. had with Continental after February 2, 2006 was on February 21, 2006 when Goldschmidt P.C. called Continental to inform it that Goldschmidt P.C. had learned from PACER on or about that day that the lawsuit had been filed. SMF at ¶ 22.

By e-mail dated March 3, 2006, Continental denied coverage. SMF at ¶ 23. By letter dated March 23, 2006, Goldschmidt P.C. requested Continental reconsider its denial of coverage. SMF at ¶ 24. On April 27, 2006, Continental again denied coverage of the Complaint and refused to undertake Goldschmidt P.C.'s defense. SMF at ¶ 25.

The Trustee subsequently settled the Complaint against Goldschmidt P.C. and accepted an assignment of Goldschmidt P.C.'s rights under the policy. SMF ¶ 26, 29.

## III.    STANDARD OF REVIEW.

In *Kwon v. Billington*, 370 F.Supp.2d 177 (D.D.C. 2005), this Court recently set forth the standard for deciding motions for summary judgment:

> Summary Judgment is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). …

        In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A non-moving party, however, must establish more than the 'mere existence of a scintilla of evidence' in support of its position. *Id.* at 252, 106 S.Ct. 2505. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. 'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.' *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer 'evidence on which the jury could reasonably find for the [non-movant].' *Id.* at 252, 106 S.Ct. 2505.

*Kwon v. Billington*, 370 F.Supp.2d at 182-83. Thus, the Court must accept the statements set forth by the Trustee as true, accept all the Trustee's evidence, and must make all inferences in favor of the Trustee.

## IV.   **ARGUMENT.**

Continental's quest to avoid its obligations under the Policy fails for statutory and contractual reasons.

First, the statutory umbrella under which this case arises is D.C. Code Annotated § 31-4314. This statute forbids Continental from denying Goldschmidt P.C. coverage under the Policy unless Goldschmidt P.C. intended to deceive Continental, or Continental's acceptance of the risk or hazard assumption was materially effected. Continental has offered no evidence as to any of these statutory elements, and therefore it cannot meet the burden imposed by the statute. Consequently, its Motion must be denied.

In addition, although Continental argues that the Policy contains an "objective" standard regarding an attorney's belief as to whether acts or omissions have occurred that might be the basis for a claim, the contract language is at best ambiguous on this point and can just as easily be read to contain a "subjective" standard. Under District of Columbia law, ambiguities in insurance policies are construed against the insurer, *Chase v. State Farm Fire and Cas. Co.,* 780 A.2d 1123, 1127 (D.C. 2001), which means the "subjective" standard is what controls. As shown below, under either standard Continental has again not met its burden, and the Motion must be denied.

    **1.   Section 31-4314 of the D.C. Code Prohibits Continental From Barring Recovery Under The Policy.**

As noted above, D.C. Code Annotated § 31-4314 is the statutory umbrella under which this case arises. Notwithstanding this fact, Continental has failed to mention this controlling authority in its Motion, other than a passing footnote reference, and has failed to analyze the facts of this case in relation to the statutory elements.[2] The provision states:

§ 31-4314. False statements in application for policy.

The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company.

"The statute sets forth a two-tiered test whereby insurance coverage may be barred. First, the statement must be false. Second, the false statement must have been made with an intent to deceive or must materially affect the acceptance of the risk or hazard assumed by the company." *Skinner v. Aetna Life and Cas.,* 804 F.2d 148, 150 (D.C. Cir. 1986). In addition, under this

---

[2] Continental may try to argue that the disqualifying language is in the policy itself as opposed to the application. In truth, it is in both, and the policy simply incorporates that which is normally in an application. Further, the provision clearly relates to knowledge of the insured prior to policy inception, i.e. the application period. Accordingly, such an argument would be meritless.

statute, "the insurer has the burden of proof as to the elements indicated." *Metropolitan Life Ins. Co. v. Adams,* 37 A.2d 345, 348 (D.C.App. 1944); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Mason, Perrin & Kanovsky,* 765 F.Supp. 15, 18 (D.D.C. 1991) (noting that an insurer must prove the statutory elements "by a 'preponderance of clear and satisfactory evidence.'")

Continental has essentially ignored this statute. As a result, it has not met its burden as to any of the elements, and is therefore not entitled to summary judgment.

### a) Goldschmidt P.C. did not submit a false statement to Continental.

The crux of Continental's argument is that when Goldschmidt P.C. contracted for insurance it was not being truthful about its belief regarding the existence of possible malpractice claims against the firm. After all, a judgment had already been entered in the trial court. However, the Declaration provides the rest of the story, detailing the research, experience, and other investigation that led Goldschmidt P.C. to conclude that the default judgment would be overturned on appeal, thereby vitiating any potential malpractice claim. Thus, Goldschmidt P.C. did not withhold vital information from Continental.

### b) Goldschmidt P.C. did not intend to deceive Continental.

Given that Continental cannot show that Goldschmidt P.C. submitted a false statement regarding its belief about potential malpractice claims, it is not surprising that there is no evidence that it intended to deceive Continental. *National Union Fire Ins. Co. of Pittsburgh, Pa.,* 765 F.Supp. at 18 (noting that the materiality of a false statement is shown if the statement was made with the intent to deceive). In fact, the only evidence related to this element is found in Stanley Goldschmidt's Declaration, and he unequivocally states that Goldschmidt P.C. did not intend to deceive Continental. SMF at ¶ 18 ("Goldschmidt P.C. did not provide a false statement to Continental regarding its beliefs about the existence of possible malpractice claims against it,

and Goldschmidt P.C. did not intend to deceive Continental in any way.")

     **c)  Continental has not shown that a false statement by Goldschmidt materially affected either its acceptance of the risk or the hazard assumed.**

Continental has provided no evidence that it would have done anything differently even if it had received information about the trial court results. It is entirely possible that Continental would have reached the same conclusion as Goldschmidt P.C. In any event, it is Continental's burden to show how it was affected, and it has not done so here. *Haubner v. Aetna Life Ins. Co.*, 256 A.2d 414, 416 (D.C.App. 1969) ("'A misstatement to be material to the hazard assumed must be shown in some way to have affected it or contributed to the loss, and in a substantial manner.'")(citing *Prudential Ins. Co. of America v. Saxe*, 134 F.2d 16, 28 (D.C. Cir. 1943)).

    **2.  The Policy Is Ambiguous As To Whether A Subjective or Objective Standard Is Used Regarding An Attorney's Beliefs About Acts Or Omissions That Might be the Basis for Claim.**

Although Continental argues that the Policy contains an "objective" standard regarding an attorney's belief as to whether acts or omissions have occurred that might be the basis for a claim, the policy language is in fact ambiguous. Continental recognizes as much when it says that "[t]here appears to be no District of Columbia case law interpreting the specific policy language." Motion at 8.

The operative policy language is as follows: "no Insured had a basis to ***believe*** that any such act or omission, or related act or omission, might ***reasonably*** be expected to be the basis of a claim." Motion, Exhibit A (emphasis added). On its face this phrase contains two terms which classically suggest opposing standards—"believe" is associated with subjective standards, while "reasonably" is generally associated with objective standards. While Continental strenuously

argues for an objective standard, it admits that the language contains "a limited subjective element." Motion at 11 n.6. The truth is that the policy is simply ambiguous.

In the District of Columbia, "ambiguities in an insurance policy are construed against the insurer and in favor of 'the reasonable expectations of the purchaser of the policy.' … '[T]he general rule applicable in the interpretation of an insurance policy is that, if its language is reasonably open to two constructions, the one most favorable to the insured will be adopted. Any fair doubt as to the meaning of its own words should be resolved against the insurer.'" *Chase v. State Farm Fire and Cas. Co.,* 780 A.2d 1123, 1127 (D.C. 2001) (citations omitted). Given this authority and the ambiguity noted above, the most favorable interpretation to Goldschmidt P.C. is the subjective interpretation. Moreover, the subjective interpretation is also most consistent with the language of D.C. Code Annotated § 31-4314 which is triggered by the insured's subjective intent to deceive.[3]

### a) Subjective Standard.

Continental's Motion cannot be sustained under a subjective standard. Continental has presented no evidence that, at the time he signed the policy, Stanley Goldschmidt believed the firm would be the subject of a malpractice claim. Moreover, even if Continental had presented such evidence, Goldschmidt's own declaration would be enough to defeat Continental's Motion, as he clearly and unequivocally states that Goldschmidt P.C. did not believe there was a basis for a malpractice claim against him. SMF at ¶ 17.

---

[3] Continental's "objective" view appears to be in direct conflict with the subjective intent language contained in D.C. Code Annotated § 31-4314. Although Courts enforce unambiguous policies as written, they so do only as "long as they do not violate a statute or public policy." *Chase v. State Farm Fire and Cas. Co.,* 780 A.2d 1123, 1132 (D.C. 2001) (citations omitted).

### b) Objective Standard.

Even if the Court decides that the policy contains an "objective" standard, Continental has failed to show that the facts and statements, viewed in a light favorable to the Trustee, would support the granting of Continental's Motion.

According to Continental, "[t]he Court should analyze (1) what the lawyer knew, and (2) how a reasonable lawyer would construe these facts." *Id.*, at 11. Continental then recites the events that occurred before the trial court, culminating with Goldschmidt P.C. filing its notice of appeal, and blithely concludes: "***any reasonable attorney*** would recognize that there was reason to believe that such omissions 'might reasonably be expected to be the basis of a claim.'" *Id.* (emphasis added).

In addition to employing its own favored standard, Continental has presented an obvious "straw man" argument to the Court. Continental admits that "the Court should analyze what the lawyer knew" but then omits every fact that might suggest that Goldschmidt P.C.'s belief was in fact reasonable. For example, in his Declaration, Stanley Goldschmidt points out that even though Goldschmidt P.C. did not file a timely answer at the trial level, it actively defended the case on behalf of RES by proffering discovery requests, negotiating with opposing counsel, attending an Initial Conference and filing Motions. SMF at ¶ 4. Goldschmidt P.C. eventually came to believe that the trial judge did not understand the controlling case law, and that the Court of Appeals would correct the error of the trial judge. SMF at ¶ 6. Most litigators have run into this sort of situation at some point in their career.

Moreover, in trying to understand the position taken by the trial court, Goldschmidt P.C. undertook substantial legal research. SMF at ¶ 8. Based on this research it came to believe that the trial court had abused its discretion in entering the default and refusing to vacate the default judgment because Goldschmidt P.C. had actively defended the case at the trial level[4] and because there is a strong judicial policy in the District of Columbia for cases to be heard on the merits, which prompts D.C. Courts to enter and uphold default judgments only in cases of egregious disregard of Court Rules. SMF at ¶ 9.

In forming its belief that the default would be vacated on appeal, Goldschmidt P.C. also evaluated apposite precedent revealing that the vast weight of case law in the District of Columbia militated against the entry of a default against RES under the circumstances presented. Indeed, the research undertaken on RES' behalf (which included reviewing every case in the District of Columbia where a default had been entered against a litigant for failing to timely file an answer) did not reveal a single case where a default had been upheld on appeal under facts analogous to the Gutierrez Case. Goldschmidt P.C.'s office also researched default judgment case law in at least fifteen other state and federal jurisdictions and discovered that the vast weight of case law in these jurisdictions also militated against the entry of a default against RES under the circumstances presented. SMF at ¶ 11. This research was also corroborated by Goldschmidt P.C.'s experience litigating before the District of Columbia Superior Court, in which Goldschmidt P.C. has often found it difficult to secure a default judgment against uncooperative

---

[4] D.C.R.C.P. Rule 55(a) requires courts to enter default judgments when defendants fail to "plead or otherwise defend." However, case law and commentary are clear that the actions taken during my representation meet the criterion for "otherwise defend[ing]" the case. In fact, although the District of Columbia Court of Appeals ultimately upheld the trial court, it noted that "[i]f our analysis were controlled solely by considering Rule 55, appellants' argument would be persuasive." *Restaurant Equipment and Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 955 (D.C.App. 2004). SMF at ¶ 10.

adverse litigants, even in circumstances where such litigants have disregarded prior courts orders to comply with the court's rules. SMF at ¶ 12.

Goldschmidt even looked to his own experiences as an attorney practicing law in the District of Columbia for nearly 30 years—never once had he experienced (or even heard of) a case that was actively defended, and where a default entry was not vacated. SMF at ¶ 15. As every practicing attorney knows, default judgments are ordinarily associated with absent or hard-to-reach defendants, not defendants that are actively defending their case.

Thus, based on this research and investigation Goldschmidt P.C. reasonably believed that the appellate court would vacate the default judgment. Because of this, and because RES never once indicated that they had been damaged or believed Goldschmidt P.C. had committed malpractice, Goldschmidt P.C. did not reasonably believe there was any basis for a malpractice claim against it. SMF at ¶ 17.

Finally, other than its bald assertion that no reasonable attorney could believe as Goldschmidt did, Continental has offered no testimony as to what a reasonable attorney in Goldschmidt's situation would actually believe, when **_all_** the relevant facts are taken into consideration.[5]   Consequently, given all evidentiary inferences available to the Trustee, Continental has not met its burden.

## V.    CONCLUSION.

For the foregoing reasons, the Court should deny Continental's Motion.

---

[5] Expert testimony might be necessary to show what a reasonable attorney would have believed under the circumstances.

Respectfully submitted,

Dated: February 13, 2008

/s/ Michael E. Tucci
Michael E. Tucci No. 430470
Darrell W. Clark No. 450273
Robert L. Eskay, Jr. No. 479408
STINSON MORRISON HECKER LLP
1150 18th Street, NW
Washington, D.C. 20036-3816
Tel: (202) 785-9100
*Attorneys for Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of February, 2008, a copy of the foregoing Opposition to Motion for Summary Judgment was sent via the Court's Electronic Case Filing notification system and by first class U.S. mail, postage prepaid, to:


Richard A. Simpson, Esq.
Kelly V. Overman, Esq.
Ross, Dixon & Bell LLP
2001 K Street, N.W.
Washington, D.C. 20006



/s/ Michael E. Tucci
Michael E. Tucci

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                  )
Bryan S. Ross, Chapter 7 Trustee                  )
                                                  )
                              Plaintiff,           )
                                                  )        Case No. 1:07-CV-01450
v.                                                )
                                                  )
Continental Casualty Company                      )
                                                  )
                              Defendant.           )
_____)

### PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7(h) and 56.1, and in support of its Opposition to Defendant's Motion for Summary Judgment, Plaintiff hereby submits this Statement of Undisputed Material Facts and Opposition to Defendant's Statement of Undisputed Material Facts.

**I.    STATEMENT OF UNDISPUTED MATERIAL FACTS.**

**1.** On February 16, 2000, four individuals filed a lawsuit against Restaurant Equipment & Supply Depot Inc., ("RES") in the Superior Court of the District of Columbia, styled *Osvaldo Gutierrez et al v. Restaurant Equipment and Supply Depot Inc.*, Case No. 00-1165 (the "Gutierrez Case"). Complaint, at 10.

**2.** The lawsuit alleged that RES violated provisions of the District of Columbia Wage and Hour laws and its Human Rights Act. *Id.* at 11.

**3.** The Law Offices of Stanley H. Goldschmidt P.C. ("Goldschmidt P.C.") represented RES in the lawsuit. *Id.* at 12.

4.      On or about May 5, 2000, Goldschmidt P.C. filed a Motion to Dismiss, or in the Alternative for Summary Judgment, in the Gutierrez Case (the "Motion to Dismiss"), which was comprised of 29 pages and 5 exhibits.  The Motion to Dismiss was ultimately denied by the trial court.  Prior to and during the pendency of the Motion to Dismiss, Goldschmidt P.C. actively defended the case on behalf of RES by proffering discovery requests, negotiating with opposing counsel, attending an Initial Conference and filing Motions. Declaration of Stanley H. Goldschmidt ("Declaration") at ¶ 4.

5.      After the denial of RES' Motion to Dismiss, Goldschmidt P.C. did not file a timely answer and the trial judge entered a default on January 4, 2001 in favor of the plaintiffs and against RES. *Id.* at ¶ 5.

6.      On January 17, 2001, Goldschmidt P.C. filed an Expedited Motion to Vacate Order of Default, which attached as an Exhibit the Verified Answer of RES, which was comprised of 13 pages and 95 Paragraphs, and which set forth the bases of RES' substantive defense.  In this Motion, Goldschmidt P.C. attempted to convince the trial judge to vacate the default, and eventually came to believe that the trial judge did not understand the controlling case law, and that the Court of Appeals would correct the error of the trial judge. *Id.* at ¶ 6.

7.      Following a jury trial on damages, a final judgment was rendered against RES on May 4, 2001. *Id.* at ¶ 7.

8.      In trying to understand the position taken by the trial court in connection with the entry of the default, Goldschmidt P.C. had substantial legal research undertaken. *Id.* at ¶ 8.

9.    Based on this research Goldschmidt P.C. came to believe that the trial court had abused its discretion in entering the default and refusing to vacate the default judgment because Goldschmidt P.C. had actively defended the case at the trial level and because there is a strong judicial policy in the District of Columbia for cases to be heard on the merits, which prompts D.C. Courts to enter and uphold default judgments only in cases of egregious disregard of Court Rules. *Id.* at ¶ 9.

10.    For example, D.C.R.C.P. Rule 55(a) requires courts to enter default judgments when defendants fail to "plead or otherwise defend." However, case law and commentary are clear that the actions taken during my representation meet the criterion for "otherwise defend[ing]" the case. In fact, although the District of Columbia Court of Appeals ultimately upheld the trial court, it noted that "[i]f our analysis were controlled solely by considering Rule 55, appellants' argument would be persuasive." *Restaurant Equipment and Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 955 (D.C.App. 2004). *Id.* at ¶ 10.

11.    Goldschmidt P.C. also came to believe that certain other authority demonstrated that the trial court had erred. For example, Goldschmidt P.C.'s evaluation of apposite precedent revealed that the vast weight of case law in the District of Columbia militated against the entry of a default against RES under the circumstances presented.  Indeed, the research undertaken on RES' behalf (which included reviewing every case in the District of Columbia where a default had been entered against a litigant for failing to timely file an answer) did not reveal a single case where a default had been upheld on appeal under facts analogous to the Gutierrez Case. Goldschmidt P.C.'s office also researched default judgment case law in at least fifteen other state and federal

jurisdictions and discovered that the vast weight of case law in these jurisdictions also militated against the entry of a default against RES under the circumstances presented. *Id.* at ¶ 11.

12.     Goldschmidt P.C.'s research revealing the extreme reluctance of Courts to enter defaults against parties that have actively participated in a case was also corroborated by Goldschmidt P.C.'s experience litigating before the District of Columbia Superior Court, in which Goldschmidt P.C. has often found it difficult to secure a default judgment against uncooperative adverse litigants, even in circumstances where such litigants have disregarded prior courts orders to comply with the court's rules. *Id.* at ¶ 12.

13.     In light of the foregoing, at all times prior to May 1, 2003 Goldschmidt P.C. believed that the default judgment of the trial court would be vacated.  As such, at no point during this time period did Goldschmidt P.C. have a basis to believe that a malpractice claim might be asserted against it by RES. *Id.* at ¶ 13.

14.     Nonetheless, the Court of Appeals for the District of Columbia affirmed the judgment of the trial court on July 1, 2004. *Id.* at ¶ 14.

15.     Stanley M. Goldschmidt, the principal of Goldschmidt P.C., has been practicing law in the District of Columbia for nearly 30 years, and never once has he experienced (or even heard of) a case that was actively defended, and where a default entry was not vacated. *Id.* at ¶ 15.

16.     On or about May 1, 2003, Continental Casualty Company ("Continental") issued Lawyers Professional Liability Policy No. LAW 2667870255 (the "Policy") Goldschmidt P.C. *Id.* at ¶ 16.

17.    Based on the substantial research and investigation Goldschmidt P.C. had conducted, at the time Stanley M. Goldschmidt signed the application for this Policy, Goldschmidt P.C. reasonably believed (based, among other things, upon the legal research undertaken by Goldschmidt P.C.'s office) that the appellate court would vacate the default judgment. Because of this, and because RES never once indicated that they had been damaged or believed Goldschmidt P.C. had committed malpractice, Goldschmidt P.C. did not reasonably believe there was any basis for a malpractice claim against it. *Id.* at ¶ 17.

18.    Goldschmidt P.C. did not provide a false statement to Continental regarding its beliefs about the existence of possible malpractice claims against it, and Goldschmidt P.C. did not intend to deceive Continental in any way. *Id.* at ¶ 18.

19.    On September 9, 2005, RES filed a voluntary petition under Chapter 7 of the Code. *Id.* at ¶ 19.

20.    On or about January 6, 2006, Goldschmidt P.C. received a letter from counsel for the Trustee explaining that there might be a basis for asserting a malpractice claim against Goldschmidt P.C. Counsel for the Trustee indicated in his letter a willingness to meet prior to filing the lawsuit. *Id.* at ¶ 20.

21.    Goldschmidt P.C. forwarded a copy of this letter to Continental on January 9, 2006 and did not hear anything back from Continental until February 2, 2006 when Goldschmidt P.C. was told that Continental might refer the matter to outside counsel for a determination if coverage would be made available. Goldschmidt P.C. was told that it would be informed the next day, on February 3, 2006, as to whether the matter would be referred to outside counsel. Goldschmidt P.C. received no communication from

Continental on February 3 and in the meantime, the Trustee, not receiving a response from Continental to his offer to meet, filed suit against Goldschmidt P.C. on February 17, 2006. The Complaint alleged that Goldschmidt P.C. committed legal malpractice when it represented RES in the underlying lawsuit. *Id.* at ¶ 21.

22.  The next communication Goldschmidt P.C. had with Continental after February 2, 2006 was on February 21, 2006 when Goldschmidt P.C. called Continental to inform it that Goldschmidt P.C. had learned from PACER on or about that day that the lawsuit had been filed. *Id.* at ¶ 22.

23.  By e-mail dated March 3, 2006, Continental denied coverage. *Id.* at ¶ 23.

24.  By letter dated March 23, 2006, Goldschmidt P.C. requested Continental reconsider its denial of coverage. *Id.* at ¶ 24.

25.  On April 27, 2006, Continental again denied coverage of the Complaint and refused to undertake Goldschmidt P.C.'s defense. *Id.* at ¶ 25.

26.  The Trustee subsequently settled the Complaint against Goldschmidt P.C. and accepted an assignment of Goldschmidt P.C.'s rights under the policy. Complaint at ¶ 27, 29.

## II.    OPPOSITION TO DEFENDANT'S STATEMENT OF FACTS.

1.  No objection.

2.  No objection.

3.  Objection. Ross denies that Goldschmidt failed to file an Answer on behalf of RES. Goldschmidt filed an answer on January 17, 2001 in conjunction with a motion to vacate. Plaintiff's Statement of Undisputed Material Facts at ¶ 6; *Restaurant Equipment and Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 953 (D.C.App. 2004).

4.      No objection.

5.      No objection.

6.      No objection.

7.      No objection.

8.      No objection.

9.      No objection.

10.     No objection.

11.     Objection. The opinion speaks for itself.

12.     No objection.

13.     No objection.

14.     No objection.

15.     No objection.

16.     Objection. The document speaks for itself.

17.     Objection. Continental was not asked to provide its consent.

18.     Objection. The document speaks for itself.

19.     Objection. The document speaks for itself.

20.     Objection. The Trustee has insufficient information to respond to this assertion.

21.     Objection. The policy speaks for itself.

22.     Objection. The policy speaks for itself.

23.     Objection. The policy speaks for itself.

24.     Objection. The letters speak for themselves.

Respectfully submitted,

Dated: February 13, 2008

/s/ Michael E. Tucci
Michael E. Tucci No. 430470
Darrell W. Clark No. 450273
Robert L. Eskay, Jr. No. 479408
STINSON MORRISON HECKER LLP
1150 18th Street, NW
Washington, D.C. 20036-3816
Tel: (202) 785-9100
*Attorneys for Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of February, 2008, a copy of the foregoing Plaintiff's Statement Of Undisputed Material Facts And Opposition To Defendant's Statement Of Undisputed Material Facts was sent via the Court's Electronic Case Filing notification system and by first class U.S. mail, postage prepaid, to:

Richard A. Simpson, Esq.
Kelly V. Overman, Esq.
Ross, Dixon & Bell LLP
2001 K Street, N.W.
Washington, D.C. 20006


/s/ Michael E. Tucci
Michael E. Tucci

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Bryan S. Ross, Chapter 7 Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:07-CV-01450 |
| v. | ) | |
| | ) | |
| Continental Casualty Company | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF STANLEY H. GOLDSCHMIDT

I, Stanley H. Goldschmidt, state as follows:

1.       I am over eighteen (18) years of age and competent to testify upon personal knowledge to the matters and facts stated herein.

2.       I am an attorney with Roetzel & Andress, LPA ("Roetzel & Andress"). Prior to my tenure at Roetzel & Andress, I was the principal of the Law Offices of Stanley H. Goldschmidt, P.C. ("Goldschmidt P.C.")

3.       I represented Restaurant Equipment & Supply Depot, Inc. ("RES") in a case filed by three individuals in the Superior Court of the District of Columbia, styled *Osvaldo Gutierrez et al v. Restaurant Equipment and Supply Depot Inc.*, Case No. 00-1165 (the "Gutierrez Case").

4.       On or about May 5, 2000, RES filed a Motion to Dismiss, or in the Alternative for Summary Judgment, in the Gutierrez Case (the "Motion to Dismiss"), which was comprised of 29 pages and 5 exhibits. The Motion to Dismiss was ultimately denied by the trial Court. Prior to and during the pendency of the Motion to Dismiss, Goldschmidt, P.C. actively defended the case on behalf of RES by proffering discovery

1

requests, negotiating with opposing counsel, attending an Initial Conference and filing Motions.

5.     After the denial of RES' Motion to Dismiss, I did not file a timely answer and the trial judge entered a default on January 4, 2001 in favor of the plaintiffs and against RES.

6.     On January 17, 2001, I filed an Expedited Motion to Vacate Order of Default, which attached as an Exhibit the Verified Answer of RES, which was comprised of 13 pages and 95 Paragraphs, and which set forth the bases of RES' substantive defense. In this Motion, I attempted to convince the trial judge to vacate the default, and eventually came to believe that the trial judge did not understand the controlling case law, and that the Court of Appeals would correct the error of the trial judge.

7.     Following a jury trial on damages, a final judgment was rendered against RES on May 4, 2001.

8.     In trying to understand the position taken by the trial court in connection with the entry of the default, I had substantial legal research undertaken.

9.     Based on this research I came to believe that the trial court had abused its discretion in entering the default and refusing to vacate the default judgment because I had actively defended the case at the trial level and because there is a strong judicial policy in the District of Columbia for cases to be heard on the merits, which prompts D.C. Courts to enter and uphold default judgments only in cases of egregious disregard of Court Rules.

10.     For example, D.C.R.C.P. Rule 55(a) requires courts to enter default judgments when defendants fail to "plead or otherwise defend." However, case law and

commentary are clear that the actions taken during my representation meet the criterion for "otherwise defend[ing]" the case. In fact, although the District of Columbia Court of Appeals ultimately upheld the trial court, it noted that "[i]f our analysis were controlled solely by considering Rule 55, appellants' argument would be persuasive." *Restaurant Equipment and Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 955 (D.C.App. 2004).

11.    I also came to believe that certain other authority demonstrated that the trial court had erred. For example, my evaluation of apposite precedent revealed that the vast weight of case law in the District of Columbia militated against the entry of a Default against RES under the circumstances presented. Indeed, the research undertaken on RES' behalf (which included reviewing every case in the District of Columbia where a default had been entered against a litigant for failing to timely file an answer) did not reveal a single case where a default had been upheld on appeal under facts analogous to the Guitierrez Case. My office also researched default judgment case law in at least fifteen other state and federal jurisdictions and discovered that the vast weight of case law in these jurisdictions also militated against the entry of a Default against RES under the circumstances presented. In investigating this situation, I also consulted with another attorney in my office, who agreed that the default would likely be overturned on appeal.

12.    My office's research revealing the extreme reluctance of Courts to enter defaults against parties that have actively participated in a case was also corroborated by my own experience as a litigator before the District of Columbia Superior Court, in which I have often found it difficult to secure a default judgment against uncooperative adverse litigants, even in circumstances where such litigants have disregarded prior courts orders to comply with the court's rules.

13.     In light of the foregoing, at all times prior to May 1, 2003 I believed that the default judgment of the trial court would be vacated.  As such, at no point during this time period did I have a basis to believe that a malpractice claim might be asserted against me by RES.

14.     Nonetheless, the Court of Appeals for the District of Columbia affirmed the judgment of the trial court on July 1, 2004.

15.     I have been practicing law in the District of Columbia for nearly 30 years, and never once have I experienced (or even heard of) a case that was actively defended, and where a default entry was not vacated.

16.     On or about May 1, 2003, Continental Casualty Company (Continental) issued Lawyers Professional Liability Policy No. LAW 2667870255 (the "Policy") to the Law Offices of Stanley H. Goldschmidt, P.C.

17.     Based on the substantial research and investigation I had conducted, at the time I signed the application for this Policy, I reasonably believed (based, among other things, upon the legal research undertaken by my office) that the appellate court would vacate the default judgment. Because of this, and because RES never once indicated that they had been damaged or believed I had committed malpractice, I did not reasonably believe there was any basis for a malpractice claim against me.

18.     I did not provide a false statement to Continental regarding my beliefs about the existence of possible malpractice claims against me, and I did not intend to deceive Continental in any way.

19.     On September 9, 2005, RES filed a voluntary petition under Chapter 7 of the Code.

20.     On or about January 6, 2006, I received a letter from counsel for the Trustee explaining that there might be a basis for asserting a malpractice claim against me and Goldschmidt, P.C.  Counsel for the Trustee indicated in his letter a willingness to meet prior to filing the lawsuit.

21.     I forwarded a copy of this letter to Continental on January 9, 2006. I did not hear anything back from Continental until February 2, 2006 when I was told that Continental might refer the matter to outside counsel for a determination if coverage would be made available.  I was told that I would be informed the next day, on February 3, 2006, as to whether the matter would be referred to outside counsel. I received no communication from Continental on February 3 and in the meantime, the Trustee, not receiving a response from Continental to his offer to meet, filed suit against Goldschmidt P.C. and me on February 17, 2006.   The Complaint alleged that Goldschmidt P.C. and I committed legal malpractice when it represented RES in the underlying lawsuit.

22.     The next communication I had with Continental after February 2, 2006 was on February 21, 2006 when I called Continental to inform it that I had learned from PACER on or about that day that the lawsuit had been filed.

23.     By e-mail dated March 3, 2006, Continental denied coverage.

24.     By letter dated March 23, 2006, I requested Continental reconsider its denial of coverage.

25.     On April 27, 2006, Continental again denied coverage of the Complaint and refused to undertake my defense.

Under penalty of perjury, I attest that the aforementioned statements are accurate and true and within the scope of my personal knowledge.

Executed on February 13, 2008.

Stanley H. Goldschmidt

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
BRYAN S. ROSS, CHAPTER 7 TRUSTEE          )
                                          )
     Plaintiff,                           )
                                          )        Case No. 1:07-CV-01450-RWR
v.                                        )
                                          )
CONTINENTAL CASUALTY COMPANY,             )
                                          )
                                          )
     Defendant.                           )
_____)

**ORDER DENYING THE MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANT CONTINENTAL CASUALTY COMPANY**

     Upon consideration of Defendant Continental Casualty Company's Motion for Summary

Judgment, and Opposition thereto, the Defendant's Motion is denied.

     **SO ORDERED.**

Dated: _____        _____
                                     Richard W. Roberts
                                     United States District Judge

Copies to:

Michael E. Tucci, Esq.
Stinson Morrison Hecker LLP
1150 18th Street, N.W.
Suite 800
Washington, D.C. 20036-3816

Richard A. Simpson, Esq.
Kelly V. Overman, Esq.
Ross, Dixon & Bell LLP
2001 K Street, N.W.
Washington, D.C. 20006