# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Bryan S. Ross, Chapter 7 Trustee )
                                 )
                     Plaintiff,  )
                                 )
v.                               )
                                 )
Continental Casualty Company     )
                                 )
                    Defendant.   )

Case:  1:07-CV-01450

Assigned to:  Roberts, Richard W.

Assign Date:  8/10/2007

Description:  Contract

# REPLY IN
# SUPPORT OF CONTINENTAL CASUALTY COMPANY'S
# MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN
# THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Richard A. Simpson
(D.C. Bar No. 411893)
Kelly V. Overman
(D.C. Bar No. 482077)
2001 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 662-2000
Facsimile:  (202) 662-2190

*Counsel for Plaintiff Continental Casualty Company*

364552

# TABLE OF CONTENTS

Table of Authorities..................………………………….........................................ii

I.    Introduction .................................................................................................... 1

II.   Continental Seeks Not to Rescind the Policy, but only to Deny Coverage for the
      Trustee's Claim Against the Firm................................................................... 2

III.  The Policy Language at Issue is Not Ambiguous, nor is it Contrary to Public Policy;
      Accordingly the Majority Objective Standard Applies ..................................... 6

IV.   Any Reasonable Attorney Aware of the Facts Known to Mr. Goldschmidt Would
      Have a Basis to Believe that His Admitted Errors, which Resulted in a Default
      Judgment, Might Reasonably be Expected to be the Basis of a Claim ............... 8

V.    Conclusion................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Cont'l Casualty Co. v. Graham & Schewe,*
    339 F. Supp. 2d 723 (E.D. Va. 2004) ............................................................. 5

*Culver v. Continental Insurance Co.,*
    11 F. App'x 42 (4th Cir. 1999) ................................................................ 2, 7

*Hartford Accident & Indemnity Co. v. Pro-Football, Inc.,*
    127 F.3d 1111 (D.C. Cir. 1997) ................................................................ 6

*Maynard v. Westport Insurance Co.,*
    208 F. Supp. 2d 568 (D. Md. 2002) *aff'd*, 55 F. App'x. 667, 2003 WL 264704 (4th
    Cir. Feb. 10, 2003) ................................................................................ 4

*Minn. Lawyers Mutual Insurance Co. v. Hahn,*
    355 F. Supp. 2d 104 (D.D.C. 2004) ...................................................... 1, 2

*Mt. Airy Insurance Co. v. Thomas,*
    954 F. Supp. 1073 (W.D. Pa. 1997), aff'd, 149 F.3d 1165 (3d Cir. 1998) ..................... 8

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Mason, Perrin & Kanovsky,*
    765 F. Supp. 15 (D.D.C. 1991) ............................................................... 4-5

*Selko v. Home Insurance Co.,*
    139 F.3d 146 (3rd Cir. 1998) ................................................................ 6, 7

*Westport Insurance Corp. v. Albert,*
    2008 F. App'x 222 (4th Cir. 2006) ............................................................ 2

*Westport Insurance Corp. v. Hanft & Knight, P.C.,*
    523 F. Supp. 2d 444 (M.D. Pa. 2007) ......................................................... 4

### STATE CASES

*Chase v. State Farm Fire & Casualty Co.,*
    780 A.2d 1123 (D.C. 2001) ................................................................ 6, 7

*Haubner v. Aetna Life Insurance Co.,*
    256 A.2d 414 (D.C. App. 1969) ............................................................... 5

*Liberty Surplus Insurance Corp., Inc. v. Nowell Amoroso, P.A.,*
    916 A.2d 440 (N.J. 2007) ................................................................... 7-9

*Restaurant Equip. & Supply Depot v. Gutierrez,*
    852 A.2d 951 (D.C. 2004)................................................................................. 9, 10

*Wittner, Poger, Rosenblum & Spewak v. Bar Plan Mutual Insurance Co.,*
    969 S.W.2d 749 (Mo. 1998)................................................................................. 2

*Zuckerman v. National Fire Insurance Co.,*
    100 N.J. 304 (1985) .......................................................................................... 10

## STATUTES

D.C. Code Ann. § 31-4314 (1981) ............................................................................ 3

## TREATISES

5 Ronald E. Mallen and Jeffrey M. Smith, LEGAL MALPRACTICE, §35:14 (2008 ed.)............. 6

## I.    <u>INTRODUCTION</u>

The Trustee's opposition to Continental's motion for judgment on the pleadings or, in the alternative, summary judgment presents three equally meritless arguments.  First, the Trustee argues that Continental's motion ignored the District of Columbia's rescission statute.  The reason Continental did not cite that statute, of course, is that Continental did not rescind the Policy.  Rather, Continental denied coverage for a specific claim based on an express provision of the insurance contract, the prior knowledge exclusion stated in Section I.A.3 of the Policy.  Courts throughout the country routinely recognize that such prior knowledge exclusions are valid, proper and enforceable.  Continental could have sought the more drastic remedy of rescission, but chose not to do so.  Thus, the rescission statute is completely irrelevant.

Second, the Trustee argues that the prior knowledge exclusion is ambiguous, and that Continental's motion should be denied because Mr. Goldschmidt subjectively believed that his obvious errors would not result in a claim.  In fact, however, the language of the Policy could not be more clear.  The prior knowledge exclusion applies an objective standard to the facts known to the insured attorney.  Again, courts throughout the country (including Judge Bates of this Court, albeit deciding a case under Virginia law), have held that Section I.A.3 and similar prior knowledge exclusions adopt an objective standard.  *See Minn. Lawyers Mut. Ins. Co. v. Hahn*, 355 F. Supp. 2d 104, 108 (D.D.C. 2004).  The issue, therefore, is whether a reasonable attorney, knowing what Mr. Goldschmidt admits he knew, would have recognized that his or her multiple errors that resulted in a default judgment against the client for over $800,000 would have recognized that his or her errors "might reasonably be expected to be the basis of a claim."

Finally, the Trustee attempts to argue that, under the objective reasonable attorney standard, Mr. Goldschmidt did not have a basis to believe that his errors might reasonably be expected to be the basis of a claim.  This argument is nothing short of preposterous.  It is hard to

imagine a more classic example of blatant malpractice than failing to file a timely answer,

thereby causing a default judgment to be entered against your client. Here, not only had the

default been entered, but also the trial court had twice denied motions seeking relief from the

default and had entered final judgment against the client. While Mr. Goldschmidt may have

subjectively believed, as he asserts in his Declaration, that the trial judge did not understand the

proper procedures to be applied in her court, the undisputed fact is that Mr. Goldschmidt knew

he committed malpractice, knew that a default judgment had been entered against his client as a

result, and knew that the only way to obtain relief from the default would be to convince the

appellate court to reverse the judgment. No attorney could think that reversal on appeal is ever a

sure thing. And, even if Mr. Goldschmidt had obtained a reversal, his client still would have had

a valid malpractice claim based on the additional attorneys' fees incurred as a result of the

default. The circumstances of this case are so blatant and so egregious that Continental would be

entitled to summary judgment even if Mr. Goldschmidt's subjective beliefs were relevant (which

they are not), since the court can determine as a matter of law that Mr. Goldschmidt was aware

of circumstances that might reasonably be the basis of a claim. *See Hahn*, 355 F. Supp. 2d 104;

*Westport Ins. Corp. v. Albert*, 208 F. App'x 222 (4th Cir. 2006); *Culver v. Cont'l Ins. Co.,* 11 F.

App'x 42 (4th Cir. 1999); *Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.*,

969 S.W.2d 749 (Mo. 1998).

## II.     CONTINENTAL SEEKS NOT TO RESCIND THE POLICY, BUT ONLY TO DENY COVERAGE FOR THE TRUSTEE'S CLAIM AGAINST THE FIRM

All parties agree that, on behalf of the firm, Mr. Goldschmidt submitted applications to

Continental, and in turn, was issued policies of insurance. *See generally* Plaintiff's Opposition.

Continental first issued a lawyers liability policy to the Law Offices of Stanley H. Goldschmidt

(the "Firm") for the May 1, 2003 to May 1, 2004 policy period (the "First Policy"). Defendant's

Counterclaim at ¶ 36; Plaintiff's Reply to Defendant's Counterclaim at ¶ 36.[1]  Lawyers

Professional Liability Policy No. LAW 267870255, issued for the May 1, 2005 to May 1, 2006

policy period but cancelled as of July 1, 2005 (the "Policy"), was a renewal of that First Policy.

Pleadings, at ¶¶ 34, 36.  The Firm purchased an extended reporting period ("ERP") upon

cancellation of the Policy, and the Trustee's malpractice suit against the Firm (the "Malpractice

Lawsuit") was reported under the extending reported period.  *Id.* at ¶¶ 34-35.

      The First Policy and all renewals offered coverage to the insureds, subject to certain

conditions and exclusions, provided that:  "prior to the inception date of the first policy issued by

the **Company** or any subsidiary of the **Company** . . . no **Insured** had a basis to believe that any

such act or omission, or **related act or omission**, might reasonably be expected to be the basis of

a **claim**."  Policy, Exhibit A to the Overman Declaration, § I.A.3.

      When Continental became aware that Mr. Goldschmidt had knowledge of a potential

claim arising from his representation of RESD before the issuance of the First Policy, it had two

options:  (1) it could rescind the Policy, for failure to disclose the claim on the application(s) that

Mr. Goldschmidt submitted to Continental, *or* (2) deny coverage on the basis of Policy § I.A.3.

Continental chose the less drastic remedy of denying coverage for this specific claim.

      The Trustee spends pages and pages in his opposition argument addressing the rescission

statute, D.C. Code Ann. § 31-4314 (1981), the elements thereof, and the application of the statute

to the facts presented by this case, when the statute is utterly irrelevant.  Continental did not

rescind the Policy.  The Trustee has tried to force a round peg into a square hole by asserting that

---

[1] Defendant's Counterclaim and Plaintiff's Reply thereto are referred to together as the "Pleadings."

the prior knowledge language in the insuring agreement falls under the "statutory umbrella" of

Section 31-4314 and that "Continental has ignored this statute."

The Trustee is confused.  The statute is entitled:  "False statements in *application* for

policy."  D.C. Ann. § 31-4314 (italic emphasis added).  Neither the Trustee's Complaint, nor

Continental's Counterclaim even references an insurance application.  Multiple courts have

asserted that prior knowledge policy exclusionary language, such as Policy § I.A.3, is entirely

distinct from rescission.  *See, e.g., Maynard v. Westport Ins. Co.*, 208 F. Supp. 2d 568, 575 (D.

Md. 2002) ("Exclusion of prior acts from coverage under a contractual provision . . . [such as

§I.A.3 here] is a ground for denying coverage distinct from rescission on the basis of material

misrepresentation") *aff'd*, 55 Fed. App'x. 667, 2003 WL 264704 (4th Cir. Feb. 10, 2003);

*Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 457-58 (M.D. Pa. 2007) ("the

prior knowledge exclusion operates to bar coverage independent of any policy application").

The statute simply has nothing to do with the motion before the Court.

If Continental had chosen to rescind the Policy, it would have returned Mr.

Goldschmidt's premium, and the Policy and ERP would have been declared void *ab initio*.

Continental in that case would have filed a declaratory judgment action seeking to rescind the

Policy; in doing so, it would have relied on the statements made in the application(s) submitted

by Mr. Goldschmidt.  As a practical matter, this course of action would have left

Mr. Goldschmidt and the Firm with no "tail" insurance should an unrelated claim later be made

against them – a drastic remedy that Continental chose not to take.[2]

---

[2] Had it moved for relief under the statute, Continental would have had no problem making a successful case for rescission.  As noted in the Opposition, in order to rescind the Policy, the insurer must prove that the statement was false and that (1) it was material; *or* (2) it was made with an intent to deceive the insurer.  (The Trustee attempts to confuse this standard by citing

(continued on the next page)

Instead, Continental denied coverage pursuant to Policy §I.A.3. Continental had clear justification in doing so, given the undisputed facts that Mr. Goldschmidt was aware that (1) he had failed to file a timely answer on behalf of his Firm's client; (2) a default judgment had been entered against his Firm's client; (3) the trial court had denied his motion to vacate the default judgment; (4) the trial court likewise had denied his motion for reconsideration of its denial; (5) after a trial on damages only, the trial court had entered judgment against his Firm's client for over $800,000; and (6) he had filed an appeal with the D.C. Court of Appeals on May 15, 2001, challenging the pending trial court's default ruling. Contrary to the unfounded insinuations made in the Trustee's opposition brief, Continental's decision to deny coverage was not based on deceitful or underhanded practices seeking to retain the Policy premium; Continental, like any party, was entitled to enforce the plain terms of the applicable contract. Continental's denial is supported by the Policy terms and District of Columbia law mandating that clear policy terms will be enforced as written. *See, e.g., Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123,

---

(continued from the previous page)

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Mason, Perrin & Kanovsky*, 765 F. Supp. 15, 18 (D.D.C. 1991), but that case sought the rescission of the applicable policy based on fraud, rather than material misrepresentations. *See* Continental's Opening Brief at pp. 8-9, n.4)

Here, the relevant application question asked: "After inquiry, is any attorney in the firm aware of . . . an act or omission that may reasonably be expected to be the basis of a claim against them, the firm, any predecessor firm, or against any current or former attorney of the firm, while affiliated with the firm?" For all of the reasons explained in Continental's initial brief, Mr. Goldschmidt's "no" response to this question was objectively false, not only in the initial application submitted on February 21, 2003, but also in the last renewal application that the Firm submitted to Continental on April 5, 2005, after the D.C. Court of Appeals had refused to overturn the trial court's ruling. There can be no question that the response was material as a matter of law, in light of the fact that Mr. Goldschmidt failed to disclose that the default had been entered against RESD, and that his subsequent efforts to vacate the default had been unsuccessful, ultimately resulting in a $800,000 loss for his client. *See, e.g., Cont'l Cas. Co. v. Graham & Schewe*, 339 F. Supp. 2d 723, 727 (E.D. Va. 2004) (determining materiality as a matter of law in a rescission case analyzing the identical application question under an objective

(continued on the next page)

1132 (D.C. 2001); *Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114

(D.C. Cir. 1997).

## III.    THE POLICY LANGUAGE AT ISSUE IS NOT AMBIGUOUS, NOR IS IT CONTRARY TO PUBLIC POLICY; ACCORDINGLY THE MAJORITY OBJECTIVE STANDARD APPLIES

The Trustee also argues that the language in Section I.A.3 is ambiguous, and thus should

be construed against Continental.[3]  While true ambiguities are, in fact, to be construed against the

insurer, courts are not to create ambiguities when they do not exist.  *Chase v. State Farm Fire &*

*Cas. Co.*, 780 A.2d 1123, 1127 (D.C. 2001).

The Trustee does not cite any authority or other support (other than counsel's own view),

for the contention for that Section I.A.3 is ambiguous.  Yet, the exclusion itself could not be

more clear that it requires an objective analysis of the facts that the attorney actually knew.

Countless courts that have addressed this issue have determined that the language in Section

I.A.3 and similar exclusionary language, is unambiguous and enforceable.  *See, e.g., Selko v.*

*Home Ins. Co.*, 139 F.3d 146 (3rd Cir. 1998); 5 Ronald E. Mallen and Jeffrey M. Smith, LEGAL

MALPRACTICE, §35:14, at 84 (citing nationwide authority).

The Trustee claims that the language of Section I.A.3 is ambiguous because it contains

the word "believe," as part of the phrase "basis to believe," which he claims (again, without any

_____

(continued from the previous page)

standard).  The misrepresentation clearly contributed to the loss at issue in a substantial matter.
*Haubner v. Aetna Life Ins. Co.*, 256 A.2d 414, 416 (D.C. App. 1969) (citations omitted).

[3] The Trustee's assertion that the Policy language is ambiguous simply because there is no
District of Columbia law specifically interpreting that language does not make any sense.  An
insurance policy is a contract that should be enforced as written, regardless of whether there is
case law in the relevant jurisdiction that confirms its clear meaning, unless it violates a statute or
public policy.  *Chase*, 780 A.2d at 1132; *Hartford Accident & Indem. Co.*, 127 F.3d at 1114.

support or citation) is associated with subjective standards, while also containing the admittedly objective "reasonably" language. This confusion, he believes, renders the Policy ambiguous. Simply because there are two conceivable interpretations does not render the terms ambiguous. *Chase*, 780 A.2d at 1127 ("otherwise clear language in an insurance agreement is not deemed to be ambiguous 'merely because the parties do not agree' on its meaning.").

The Court of Appeals for the Third Circuit explicitly analyzed this "basis to believe" language and confirmed that it reflects an objective standard. *See, e.g., Selko v. Home Ins. Co.*, 139 F.3d 146, 151-52. The *Selko* court remarked: "Had the provision been meant to stand or fall on the individual insured's subjective assessment of the known facts, it could have easily have used the words 'knew' or 'believed,'. . . . Instead by using the words 'basis to believe,' *the policy pointed to an objective criterion.*" *Id.* at 152 (italic emphasis added).[4] *Selko* maintains that any other construction would be illogical:

> It is reasonable for the insurer to refuse coverage for claims based on preexisting but undisclosed misconduct by an insured attorney. Nor is it unreasonable to tie such an exclusion to an even-handed "reasonable attorney" assessment, rather than to speculation concerning the individual attorney's subjective understanding. The latter approach, by rewarding the attorney who is ignorant of the law, or by encouraging disingenuous, after-the-fact justifications, could result in totally capricious and unpredictable outcomes.

---

[4] In support of its conclusion, the *Selko* court states:

> This construction does not relieve the insurer of its burden to prove that the necessary underlying facts were actually known to the insured. But the insured may not successfully defend on the ground that he was uniquely unaware of ethical and fiduciary principles that all lawyers would know or that he did not understand the implications of conduct and events that any reasonable lawyer would have grasped.

*Id.* at 152. Here, the Trustee contends, in substance, that Mr. Goldschmidt "did not understand the implications of conduct and events that any reasonable lawyer would have grasped."

*Id.* This interpretation is in line with Maryland law (to which courts look in the absence of D.C.

law), *Culver v. Cont'l Ins. Co.*, 11 F. App'x 42 (4th Cir. 1999) (applying an objective prior

knowledge standard), and the overwhelming majority of jurisdictions.[5]

## IV.    ANY REASONABLE ATTORNEY AWARE OF THE FACTS KNOWN TO MR. GOLDSCHMIDT WOULD HAVE A BASIS TO BELIEVE THAT HIS ADMITTED ERRORS, WHICH RESULTED IN A DEFAULT JUDGMENT, MIGHT REASONABLY BE EXPECTED TO BE THE BASIS OF A CLAIM

In his Opposition, the Trustee has attempted to muddy the record with the inclusion of

Mr. Goldschmidt's Declaration, crammed with excuses about why Mr. Goldschmidt did not

"believe" that his admitted mistakes would lead to a claim against him. As an initial matter, the

Court is required to distinguish between "*facts* which are known to an attorney, which . . . , when

viewed by a reasonable person, could give rise to a claim . . . and *impressions* which lead the

attorney to believe that the client will not pursue a claim . . . ." *Mt. Airy Ins. Co. v. Thomas,* 954

F. Supp. 1073, 1079 (W.D. Pa. 1997), *aff'd*, 149 F.3d 1165 (3d Cir. 1998) (table) (construing a

similar prior knowledge provision) (italic emphasis added).

Mr. Goldschmidt asserts in his declaration that he did not expect a claim because he

believed the default judgment would be vacated, based on: (1) the substantial research that the

---

[5] Even if the Court were to apply the subjective standard that the Trustee advocates, Continental still would be entitled to judgment as a matter of law, based on the one-sided evidence suggesting the potential for a malpractice claim against Mr. Goldschmidt. A New Jersey court examined a similar factual scenario in 2007 under a subjective standard. In *Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A.*, 916 A.2d 440, 450 (N.J. 2007), the court found that the insured attorney's affidavit, proclaiming that he did not know a claim might be filed against him, *did not preclude a finding for the insurer,* when other evidence confirmed that he was subjectively aware that a lawsuit had been dismissed because he failed to raise a cause of action within the statute of limitations. *Id.* In so ruling, the Court held: "the trial court would have had to ignore reality to conclude that [the insured law firm] did not have knowledge that a claim might be filed against it when faced with a trial court and two Appellate Division decisions that [it] had missed the statute of limitations for [its client's] claim . . . . We conclude that because the evidence in the record 'is so one-sided[,]' [the insurer] must prevail as a matter of law.")

Firm undertook in D.C. and certain other jurisdictions (Goldschmidt Declaration at ¶ 11); (2) his experience as a litigator, including in D.C. courts (*id.* at ¶¶ 12, 15); and (3) his consultation with other attorneys in his office (*id.* at ¶ 11).  Accordingly, the sole reason that Mr. Goldschmidt has proffered to explain why he did not expect that a claim would be made against him: Mr. Goldschmidt's subjective belief, indeed his *impression*, that the default judgment entered by the trial court would be vacated on appeal.  *See* Goldschmidt Declaration at ¶ 13 ("In light of the foregoing, at all times prior to May 1, 2003, I believed that the default judgment of the trial court would be vacated.  As such, at no point during this time period did I have a basis to believe that a claim might be asserted against me by RES").

Mr. Goldschmidt, in his nearly thirty years of experience as a District of Columbia litigator, must know that even when the case law appears to be in the appellant's favor, cases are not always overturned on appeal, especially when the appellant must meet the high "abuse of discretion" standard.  Goldschmidt Declaration at ¶ 15; *see generally Rest. Equip. & Supply Depot v. Gutierrez*, 852 A.2d 951 (D.C. 2004).  There are no guarantees.  And, the language of Section I.A.3 expressly bars coverage when an insured has a basis to believe that his act or omission *might* reasonably be expected to be the basis of a claim.  Given the undisputed facts here, the potential for a claim was more likely than just a possibility, which would have been enough.

Indeed, while it is not necessary for the Court's decision, even if the default had been vacated, there would have been the basis for a claim against the Firm for the legal fees incurred and charged to RESD to brief and argue the appeal in order to correct the Firm's admitted mistake.  According to the Malpractice Lawsuit (attached to Overman Declaration as Exhibit B), the Firm charged RESD at least $70,146.17 in fees, and RESD paid the firm at least $40,487.12.

Malpractice Lawsuit Complaint, at ¶ 39. Of the amount that RESD paid, the Trustee alleged that the Firm charged approximately $33,674.80 "to correct its own errors." *Id.* at ¶ 40.

Mr. Goldschmidt *hoped* that the case would be vacated on appeal, but what he knew, and what the undisputed facts of this case prove, is that he had failed to file an answer, resulting in a default being entered against his client. *Pleadings*, ¶¶ 10, 12. As a result, a damages verdict in excess of $800,000 was entered against the Firm's client. *Pleadings*, ¶ 18. He knew that despite his multiple efforts to seek vacation of the default, through a motion to vacate, a motion to reconsider, and the appeal (which was pending), the default judgment was still in place against his client. *Pleadings*, ¶¶ 14, 15, 20. Finally, Mr. Goldschmidt knew that, in his effort to vacate the default judgment, he would have to admit in publicly-filed court papers that his Firm had erred, including by having failed to "calendar" the answer due date and by "for[getting]" about the answer. *Rest. Equip. & Supply Depot*, 852 A.2d 957 n.7.

This case presents the classic circumstance that "claims made" policies and prior knowledge exclusionary language like Policy § I.A.3 try to prevent: a circumstance in which the insured, with knowledge of the facts that suggest that a claim might be filed against him, goes out and buys an insurance policy before the other shoe drops. *Zuckerman v. Nat'l Fire Ins. Co.*, 100 N.J. 304, 320 n.3 (1985) (an insurer is entitled to "protect itself against the professional who, recognizing his past error or omission, rushes to purchase a 'claims made' policy before the error is discovered and a claim asserted against him."). With knowledge of both his prior conduct and the facts and circumstances surrounding the Firm's critical omissions, even given the hope that the case would be vacated on appeal, any reasonable attorney would recognize that there was reason to believe that such omissions "might reasonably be expected to be the basis of a claim," as a matter of law, such that coverage is precluded under the Policy.

## V.     <u>CONCLUSION</u>

For the reasons discussed above and in Continental's opening brief, this Court should

grant Continental's Motion for Judgment on the Pleadings or, in the Alternative, for Summary

Judgment.

Respectfully submitted,

ROSS, DIXON & BELL, LLP

Dated: February 25, 2008                By: /s/ Kelly V. Overman
                                            Richard A. Simpson
                                            (D.C. Bar No. 411893)
                                            Kelly V. Overman
                                            (D.C. Bar No. 482077)
                                            2001 K Street, N.W.
                                            Washington, D.C.  20006
                                            Telephone:  (202) 662-2000
                                            Facsimile:  (202) 662-2190

                                            *Counsel for Plaintiff*
                                            *Continental Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Continental Casualty Company's Reply in

Support for its Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary

Judgment, as well as the accompanying Opposition to Plaintiff's Statement of Material Facts,

was filed electronically, as well as e-mailed, this 25th day of February, 2008 to:

    Michael E. Tucci, Esq.
    Darrell W. Clark, Esq.
    Jaime Dibble, Esq.
    Stinson Morrison Hecker, LLP
    1150 18th Street, N.W., Suite 800
    Washington, D.C.  20036

                                     /s/ Kelly V. Overman_____
                                     Kelly V. Overman

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Bryan S. Ross, Chapter 7 Trustee )<br>　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　 )<br>v. 　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　 )<br>Continental Casualty Company 　 )<br>　　　　　　　　　　Defendant. ) | Case:  1:07-CV-01450<br><br>Assigned to:  Roberts, Richard W.<br><br>Assign Date:  8/10/2007<br><br>Description:  Contract |

## DEFENDANT CONTINENTAL CASUALTY COMPANY'S OPPOSITION TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Pursuant to Local Rules 7(h) and 56.1, Defendant Continental Casualty Company ("Continental"), opposes Plaintiff's Statement of Undisputed Material Facts, filed with this Court on February 13, 2008.

## I.　　STATEMENT OF UNDISPUTED MATERIAL FACTS

1.　　No objection.

2.　　Objection.  The complaint filed in the Gutierrez case speaks for itself.

3.　　No objection.

4.　　Objection.  It is undisputed that on May 5, 2000 Goldschmidt, P.C. filed a motion to dismiss that was ultimately denied by the trial court.  It is also undisputed that Goldschmidt, P.C. attended an initial status conference with the Superior Court and served discovery requests during the pendency of the motion to dismiss.  Continental objects to and disputes the remainder of the facts in Paragraph 4, which are copied from the Declaration of Stanley H. Goldschmidt (the "Goldschmidt Declaration"), which was filed in connection with Plaintiff's Opposition to Motion for Summary Judgment, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 4 are immaterial to its motion.

5.      No objection.

6.      Objection.  It is undisputed that Goldschmidt, P.C. filed a motion to vacate the trial court's entry of default on January 17, 2001, which attached a proposed answer.  It is also undisputed that by filing this motion Goldschmidt, P.C. attempted to convince the trial judge to vacate the default.  Continental objects to and disputes the remainder of the facts in Paragraph 6, which are essentially copied from Paragraph 6 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 6 are immaterial to its motion.

7.      No objection; the final judgment was entered on or around May 4, 2001.

8.      Objection.  Continental objects to and disputes the facts in Paragraph 8, which are essentially copied from the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 8 are immaterial to its motion.

9.      Objection.  Continental objects to and disputes the facts in Paragraph 9, which are essentially copied from the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 9 are immaterial to its motion.

10.      Objection.  It is undisputed that the D.C. Court of Appeals upheld the trial court's decision.  Continental states that D.C.R.C.P. Rule 55(a) and the D.C. Court of Appeal's written opinion in *Restaurant Equipment and Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951(D.C. App. 2004) (the "Court of Appeals Opinion") speak for themselves.  Continental objects to and disputes the mischaracterization of the Court of Appeals Opinion in the third sentence of

Paragraph 10.  Continental further objects to and disputes the remaining facts in Paragraph 10, which are essentially copied from Paragraph 10 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 10 are immaterial to its motion.

11.     Objection.  Continental objects to and disputes the facts in Paragraph 11, which are essentially copied from Paragraph 11 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 11 are immaterial to its motion.

12.     Objection.  Continental objects to and disputes the facts in Paragraph 12, which are essentially copied from Paragraph 12 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 12 are immaterial to its motion.

13.     Objection.  Continental objects to and disputes the facts in Paragraph 13, which are essentially copied from Paragraph 13 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 13 are immaterial to its motion.

14.     Objection.  It is disputed that the Court of Appeals affirmed the judgment of the trial Court on July 1, 2004.  Continental objects to Plaintiff's characterization that the D.C. Court

of Appeal's decision to affirm the lower court ruling was "nonetheless" of any other factor.

However, Continental states that the disputed facts in Paragraph 14 are immaterial to its motion.

15.    Objection.  It is undisputed that Mr. Goldschmidt was the principal of Goldschmidt, P.C.  Continental objects to and disputes the remaining facts of Paragraph 15, which are essentially copied from Paragraph 15 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 15 are immaterial to its motion.

16.    Objection.  Continental issued Lawyers Professional Policy No. LAW 267870255 to the Law Offices of Stanley H. Goldschmidt, P.C. for the May 1, 2005 to May 1, 2006 policy period, but that policy was cancelled on July 1, 2005.  The first policy that Continental issued to Goldschmidt, P.C. incepted on May 1, 2003.  These facts do not appear to be disputed, however, per the Counterclaim of Continental Casualty Company at ¶34 and the Reply of Bryan S. Ross at ¶36.

17.    Objection.  Continental objects to and disputes the facts of Paragraph 17, which are essentially copied from Paragraph 17 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery.  However, Continental states that the disputed facts contained in Paragraph 17 are immaterial to its motion.

18.    Objection.  Continental objects to and disputes the facts of Paragraph 18, which are essentially copied from Paragraph 18 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of

discovery. However, Continental states that the disputed facts contained in Paragraph 18 are immaterial to its motion.

19.    Objection. The docket in the bankruptcy case styled *In re Restaurant Equipment & Supply Depot*, Case No. 05-01316, (Bankr. D.D.C.) reflects that RES filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 2, 2005.

20.    Objection. It is undisputed that by letter dated January 6, 2006, counsel for the Trustee wrote to Goldschmidt, P.C. regarding a potential malpractice claim. That January 6, 2006 letter speaks for itself.

21.    Objection. It is undisputed that Goldschmidt, P.C. forwarded a copy of the January 6, 2006 letter to Rossman-Hurt-Hoffman on January 9, 2006. It is undisputed that Mr. Goldschmidt spoke with a Continental representative on or around February 2, 2006. It is undisputed that the Trustee filed a malpractice suit against Mr. Goldschmidt and Goldschmidt, P.C. on February 17, 2006. Continental objects to and disputes the remaining facts of Paragraph 21, which are essentially copied from Paragraph 21 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery. However, Continental states that the disputed facts contained in Paragraph 21 are immaterial to its motion.

22.    Objection. It is undisputed that Goldschmidt, P.C. communicated with Continental on February 21, 2006, after learning that a lawsuit had been filed. Continental objects to and disputes the remaining facts of Paragraph 22, which are essentially copied from Page 22 of the Goldschmidt Declaration, and which have not been subject to cross-examination in deposition testimony or otherwise at this early stage of discovery. However, Continental states that the disputed facts contained in Paragraph 22 are immaterial to its motion.

23.     Objection.  It is undisputed that Continental sent Mr. Goldschmidt an email on March 3, 2006, which reserved Continental's rights with respect to the Trustee's claim under the Policy and applicable law.  Continental states that, by letters dated March 14, 2006 and April 27, 2006, Continental advised Goldschmidt that there was no coverage under the Policy. Continental further states that the disputed facts contained in Paragraph 23 are immaterial to its motion.

24.     No objection.

25.     Objection.  Continental's April 27, 2006 letter advised Goldschmidt that its denial of coverage must stand and that it would therefore not be providing Goldschmidt with a defense to the Malpractice Lawsuit.  However, the disputed facts in Paragraph 25 are immaterial to the issues in Continental's motion.

26.     Objection.  It is undisputed that the Trustee and Goldschmidt, P.C. settled the Malpractice Lawsuit and that the Trustee accepted an assignment of Goldschmidt, P.C.'s rights under the Policy.  Continental asserts that the settlement is not valid, however, as it was not negotiated at arms length, and that the assignment is not valid, as it was not approved by Continental as required by the Policy.  However, the disputed facts in Paragraph 26 are immaterial to the issues in Continental's motion.

Respectfully submitted,

ROSS, DIXON & BELL, LLP

Dated: February 25, 2008          By: /s/ Kelly V. Overman
                                      Richard A. Simpson
                                      (D.C. Bar No. 411893)
                                      Kelly V. Overman
                                      (D.C. Bar No. 482077)
                                      2001 K Street, N.W.
                                      Washington, D.C.  20006
                                      Telephone:  (202) 662-2000
                                      Facsimile:  (202) 662-2190

                                      *Counsel for Plaintiff*
                                      *Continental Casualty Company*

364489