UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRYAN S. ROSS, Chapter 7 Trustee,<br><br>                Plaintiff,<br>v.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>                Defendant. | Civil Action No. 07-1450<br>(RWR) (AK) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for full case management including pre-trial conference, pursuant to a Minute Order dated November 27, 2007, and Local Civil Rule 72.3 (5), providing that "a magistrate judge may conduct hearings, . . ., and submit to the judge proposed findings of fact and recommendations for the disposition of motions for judgment on the pleadings [and] for summary judgment, . . . ." Upon consideration of the Defendant Continental Casualty Company's Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment ("Motion") [12]; Plaintiff's opposition thereto ("Opposition") [15]; and Defendant's reply ("Reply") [16], and for the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment be granted and the civil action against Defendant be dismissed.[1]

## I. Background

On August 10, 2007, Plaintiff Bryan S. Ross, Chapter 7 Trustee ("Plaintiff" or "Ross")

---

[1] Continental has styled its Motion as either a Motion for Judgment on the Pleadings or Motion for Summary Judgement. The undersigned notes that Continental supports its Motion with the Declaration of Kelly V. Overman and several exhibits, and Plaintiff's Opposition utilizes the Declaration of Stanley H. Goldschmidt. Accordingly, the trial court should treat Continental's Motion as a motion for summary judgment.

brought an action against Defendant Continental Casualty Company ("Defendant" or "Continental") for declaratory judgment and breach of contract regarding duty to defend and indemnify. (08/01/07 Complaint [1].) The issue before the trial court is whether Lawyers Professional Liability Policy No. LAW 267870255, which was issued by Continental to the Law Offices of Stanley H. Goldschmidt, P.C. ("Goldschmidt") provides coverage for the legal malpractice claims asserted by the Plaintiff [bankruptcy trustee] in the lawsuit captioned *Ross, Trustee in Bankruptcy for Restaurant Equipment & Supply Depot, Inc. v. The Law Offices of Stanley H. Goldschmidt, P.C.*, Case No. 05-01316, in the United States Bankruptcy Court for the District of Columbia. (Memorandum in support of Motion ("Memorandum") at 6.)[2]

The underlying legal action in this matter giving rise to the allegation of legal malpractice was spawned by a civil action brought by four individuals against Restaurant Equipment & Supply Depot, Inc. ("RES") in the District of Columbia Superior Court, captioned *Gutierrez, et al. v. Restaurant Equipment and Supply Depot Inc.*, Case No. 00-1165. (Plaintiff's Statement of Undisputed Material Facts ("Statement") at ¶1.) Goldschmidt represented Restaurant Equipment and Supply Depot ("RES") in the lawsuit. (Statement at ¶2.) After the trial court denied RES's motion to dismiss, Goldschmidt did not file a timely answer and the trial judge entered a default in January, 2001, in favor of Plaintiffs and against RES. (Statement at ¶5.) On January 17, 2001, Goldschmidt filed an expedited motion to vacate the order of default, which was denied by the trial court. (Statement at ¶6; Pleadings at ¶15.)[3]  On March 7, 2001, Goldschmidt filed a motion

---

[2]The pagination referenced corresponds to the page numbers assigned under the electronic case filing system.

[3]The references to "Pleadings" are drawn from Defendant's Statement of Material Facts as to Which There is No Genuine Dispute [12-3].

for reconsideration of the entry of judgment by default, which was denied by the trial court on April 12, 2001. (Pleadings at ¶15.)

The trial court held a jury trial on damages beginning on April 23, 2001, and in early May 2001, the court entered judgment against RES in excess of $800,000. (Statement at ¶7, Pleadings at ¶¶17-18.) Plaintiffs subsequently filed a motion for attorneys' fees and costs, which was granted. (Pleadings at ¶19.) Goldschmidt filed a notice of appeal on behalf of RES on May 16, 2001, and oral argument was heard on April 22, 2004. (Pleadings at ¶20.) On July 1, 2004, the District of Columbia Court of Appeals affirmed the trial court's ruling. *See Restaurant Equipment & Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951 (D.C. 2004). (Pleadings at ¶22; Statement at ¶14.) Goldschmidt filed a Petition for *en banc* review with the District of Columbia Court of Appeals, which was denied on October 28, 2004. (Pleadings at ¶23.)

On May 1, 2003, Continental Casualty Company issued Lawyers Professional Liability Policy No. LAW 2667870255 (the "Policy") to Goldschmidt, P.C. (Statement at ¶16.) On September 2, 2005, RES filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. (Pleadings at ¶26, Statement at ¶19.) By letter dated January 6, 2006, Bryan Ross, Trustee, advised Goldschmidt that there may be a basis for a legal malpractice claim. (Pleadings at ¶28, Statement at ¶ 20.) In February 2006, the Trustee filed the malpractice lawsuit against Goldschmidt. (Statement at ¶22; Pleadings at ¶ 29.) Judgment was entered against Goldschmidt in the malpractice lawsuit, in the amount of $909,277.98 [underlying judgment plus award of attorneys' fees], plus interest. (Pleadings at ¶31.)

By electronic mail dated March 3, 2006, Continental denied coverage of Goldschmidt's insurance claim. (Statement at ¶23.) Continental confirmed its denial of coverage on April 27,

2006. (Statement at ¶25.) The Trustee subsequently entered into a settlement of the malpractice claim with Goldschmidt and accepted an assignment of Goldschmidt's rights under the Policy. (Pleadings at ¶¶32-33, Statement at ¶26.)[4]

## II. Legal Standard

Fed. R. Civ. P. 12 (c) provides that a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Courts grant a judgment on the pleadings pursuant to Rule 12 (c) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations [in the complaint.]" *Longwood Village Rest. Ltd. v. Ashcroft*, 157 F. Supp.2d 61, 66 (D.D.C. 2001) (citation omitted.) The standard of review under Rule 12 (c) is similar to that for a motion to dismiss for failure to state a claim under Rule 12(b)(6); a court must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmoving party. *See Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2007) (citation omitted.) A court should grant a motion for judgment on the pleadings if the movant "is entitled to judgment as a matter of law." *See Burns Int'l Servs. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995).

Pursuant to Fed. R. Civ. P. 56(c), a court should grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions . . ., together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

---

[4]Continental contends that it did not provide a written consent to such assignment, as required by the Policy (Pleadings at ¶33) but it has elected not to brief this issue because it "believes this matter can be resolved wholly on the threshold coverage issue . . . ." (Memorandum at 9, n.1.)

477 U.S. 317, 323 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See id.*, 477 U.S. at 248.

      The nonmoving party must demonstrate specific facts in the record which create a genuine issue as to a material fact to oppose the motion for summary judgment.  To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  *Anderson*, 477 U.S. at 248; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

      Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment.  The nonmoving party must establish more than "the mere existence of a scintilla of evidence" to support its position.  *Anderson* at 252.  The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he can provide "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006)  or  "support his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)).  The court may grant summary judgment if there is no significantly probative evidence tending to support the complaint.  *Shields v. Eli Lilly*, 895 F.2d 1463 (D.C. Cir. 1990).

### III. Analysis
### A. Policy Language

The insurance policy issued to Goldschmidt was issued for the May 1, 2003 to May 1, 2004 policy period. (Memorandum at 9.) The Policy states in relevant part that coverage is provided for:

> all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable. . .

(Exhibit A, Policy, §I.A.) It is Continental's duty to pay sums on behalf of its insured on the condition that:

> 3. prior to:
> a.   the inception date of the first policy issued by the **Company** or any subsidiary or affiliate of the **Company**, if continuously renewed; or,
> b.   the date the **Insured** first became a member or employee of the **named Insured** or a **predecessor firm**,
>
> whichever is later, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim** . . .

(*Id.* at §I.A.3.) There is no dispute that Goldschmidt's firm is the "named Insured' or that Goldschmidt [individually] is an "Insured" under the Policy.

### B. Is the Policy Language Ambiguous?

The Policy at issue in this case is a "claims made" policy providing coverage for all claims "first made against the Insured and reported in writing to [Continental] during the policy period." (Policy, §I.A.) As a prerequisite to coverage, the Policy requires that "no Insured had a basis to believe that any [ ] act or omission, or related act or omission [by the insured], might reasonably be expected to be the basis of a claim [against the insured]." (Motion, Exh. A.)

Plaintiff argues that the policy language is ambiguous and asserts that "ambiguities in an insurance policy are construed against the insurer . . . ." (Opposition at 11.)

Defendant contends that "[c]ountless courts that have addressed this issue have determined that the language in Section I.A.3 and similar exclusionary language, is unambiguous and enforceable." (Reply at 10, citing *Selko v. Home Ins. Co.*, 139 F.3d 146 (3rd Cir. 1998); 5 Ronald E. Mallen and Jeffrey M. Smith, LEGAL MALPRACTICE, §35:14, at 84 (citing nationwide authority.)) *See Westport Insurance Corp. v. Lilley*, 292 F. Supp.2d 165, 171 (D. Me. 2003) (noting that the exclusionary language in a claims made policy is generally viewed as unambiguous) (omitting string citation of cases from numerous jurisdictions.)  Nor is such language found to be against public policy.  *See Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 790 (7th Cir. 1992) ("Like the exclusion of a known preexisting condition from a health insurance policy, the exclusion from a claims-only policy of claims based on conduct that occurred before the policy was issued and that was known to have claim potential is uncontroversially proper.") (citation omitted.)  "The insurance company is entitled to protect itself against the professional who, recognizing his past error or omission, rushes to purchase a 'claims-made' policy before the error is discovered and a claim is asserted against him." *Zuckerman v. Nat'l. Union Fire Ins. Co.*, 495 A.2d 395, 403-04 n.3 (N.J. 1985) (citation omitted).  The undersigned's review of the Policy provision and the law interpreting similar insurance policy provisions leads to the conclusion that the Policy provision is not ambiguous on its face nor is it against public policy.

### C. Objective or Subjective Standard Applied

Defendant argues that courts apply a reasonable person standard for evaluating whether

the insured was "aware of any incident that could reasonably result in a claim being made against [it]." *Minn. Lawyers Mut. Ins. Co. v. Hahn*, 355 F.Supp.2d 104, 106 ( D.D.C. 2004).[5] *See, e.g., Cont'l Cas. Co. v. Graham & Schewe*, 339 F. Supp.2d 723, 727 (E.D. Va. 2004) (applying an objective standard to evaluate an insured's prior knowledge in a professional liability insurance case); *Westport*, 292 F. Supp.2d at 171 (holding that the court must decide whether a reasonable attorney in possession of the facts known to the party in the case would reasonably foresee that a malpractice claim was forthcoming, and that such test incorporates objective and subjective elements.) "Whether the [insurance claimant] could have reasonably foreseen [a] malpractice claim is an objective test that can be determined as a matter of law, but it must be determined based only on those facts and circumstances [of which the claimant was] subjectively aware. . . ." *Id.* (citations omitted.)

Plaintiff asserts that, applying a subjective standard, there is no evidence that "Goldschmidt believed the firm would be the subject of a malpractice claim" at the time he signed the policy, and Goldschmidt's Declaration confirms this.[6] There is no dispute however that, at the time of the inception of the First Policy, Goldschmidt was aware that the firm had failed to file an answer on behalf of RES, which resulted in a default being entered against RES.[7] Goldschmidt was further aware that the court had denied its motion to vacate the default and

---

[5]The *Hahn* case involved a liability insurance company's request for declaratory judgment that it could rescind a policy issued to a law firm based on the firm's failure to give notice of a claim or potential claim prior to the policy being issued.

[6]Notably, the Plaintiff provides no independent support for the contention that Section I.A.3 is ambiguous.

[7]In his brief filed with the Court of Appeals, Goldschmidt admitted that it had erred in "failing to 'calendar' the due date for the answer" and by "for[getting] about the answer." 852 A.2d 957 n.7.

motion for reconsideration. Goldschmidt was additionally aware that the trial court had entered a damages verdict in excess of $800,000.00 against RES.  Awareness of these circumstances would lead a reasonable attorney to recognize that such omission [failing to file an answer on behalf of RES] "might reasonably be expected to form the basis of [a malpractice] claim." *See Coregis Ins. Co. v. Wheeler*, 24 F. Supp.2d 475 (E.D. Pa. 1998) (knowledge of counsel's failure to timely assert a valid claim against a hospital in a medical malpractice case was sufficient knowledge of circumstances that could be the basis of a legal malpractice claim.)

In *Selko*, 139 F.3d at 151-52, the Court of Appeals for the Third Circuit analyzed the "basis to believe" language and confirmed that it reflects an objective standard, in terms of the insured's knowledge.  The *Selko* court commented that: "[h]ad the provision been meant to stand or fall on the individual insured's subjective assessment of the known facts, it could have easily used the words 'knew' or 'believed,' . . . Instead by using the words 'basis to believe,' the policy pointed to an objective criterion." *Id.* at 152.

Plaintiff argues however that Goldschmidt believed "that the default judgment entered against RES by the trial court was entered in error and would be vacated on appeal" and further that "Goldschmidt P.C's painstaking research and investigation showed that its belief was both justified and reasonable." (Opposition at 1.)  Accordingly, Goldschmidt did not recognize any omission that would give rise to a claim. While Goldschmidt conceivably may have had a good faith belief that the trial court's decision would be overturned on appeal, Goldschmidt could not turn a blind eye to the record in this case which included entry of a default against RES because of action (or inaction) by Goldschmidt; the trial court's subsequent denial of Goldschmidt's motions to vacate and for reconsideration; the trial court's award of a significant judgment

against RES and Goldschmidt's filing of an appeal.[8]  *See Culver v. Cont'l Ins. Co.*, 11 F. Appx. 42, 1999 WL 503527 *3 (4th Cir. 1999) (rejecting the insured's argument that the foreseeable claims exclusion requires an applicant for malpractice coverage to disclose only those claims that the applicant in his subjective judgment deems reasonable.)

In a further attempt to justify the grounds for its good faith belief, Plaintiff states that "RES never once indicated that they had been damaged or believed Goldschmidt had committed malpractice, . . . ." (Opposition at 5.)  In establishing prior knowledge, there is no requirement that the client complain ahead of time or indicate that it will file a claim against the insured. *Home Indemnity Co. v.Toombs,* 910 F.Supp.1569, 1574 (N.D.Ga. 1995); *Mt. Airy Ins. Co. v. Thomas*, 954 F. Supp. 1073, 1080 (W.D. Pa. 1997) ("Any dispute over whether the defendant believed [that the client would make the claim], on the basis of his relationship with his client or [what] his impression [was] of that client's reaction to the situation, . . . is not relevant to our analysis"), *aff'd.*, 149 F.3d 1165 (3d Cir. 1998).  Defendant asserts that it is not relevant whether Goldschmidt believed that any malpractice claims against his firm would have merit.  *See Terrell, Thorpe & Findlay, Inc., P.S. v. Cont'l Ins. Co.*, 825 P.2d 724, 728 (Wash. Ct. App. 1992).

A review of the record of proceedings in the trial court, whether viewed subjectively or objectively, leads ineluctably to the conclusion that a malpractice claim against Goldschmidt was a reasonably foreseeable event.  Goldschmidt does not and cannot deny that its failure to file an answer on behalf of RES led to the entry of default against RES and ultimately to entry of a

---

[8]Defendant comments that "[n]o attorney could think that reversal on appeal is ever a sure thing[,] [a]nd, even if Mr. Goldschmidt had obtained a reversal, his client still would have had a valid malpractice claim based on the additional attorneys' fees incurred as a result of the default." (Reply at 6.)

significant judgment against RES.  Thus, the undersigned finds that events resulting in the judgment against RES "might reasonably have been expected to be the basis of a [legal malpractice] claim" and under the terms of the Policy should have been disclosed to Defendant Continental.

### D. Applicability of D.C Code §31-4314

Plaintiff also argues that D.C. Code Annotated §31-4314 governs this dispute and Defendant's motion fails for not having addressed it.  Plaintiff contends that this statutory section "forbids Continental from denying Goldschmidt P.C. coverage under the Policy unless Goldschmidt P.C. intended to deceive Continental, or Continental's acceptance of the risk or hazard assumption was materially affected." (Opposition at 7.)

Section 31-4314 is entitled "False statements in application for policy" and it provides that:

> The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either acceptance of the risk or the hazard assumed by the company.

Plaintiff asserts that Goldschmidt did not submit a false statement to Continental nor did it intend to deceive Continental; neither has Continental shown that any false statement materially affected its acceptance of the risk or hazard assumed.

Continental asserts that Section 31-4314 is a rescission statute, inapplicable in this case because Continental did not elect to rescind the Policy for Goldschmidt's failure to disclose the claim on the application, but instead, Continental "denied coverage on the basis of Policy §I.A.3." (Reply at 3.)  Continental argues that if it had elected to rescind the policy, it would have filed a declaratory judgment action seeking to rescind the policy  (Reply at 8) but instead,

Continental denied coverage pursuant to the Policy §I.A.3. (Reply at 9.) Continental asserts that "[m]ultiple courts have asserted that the prior knowledge policy exclusionary language, such as Policy §I.A.3, is entirely distinct from rescission." (Reply at 4.) *See Maynard v. Westport Ins. Co.*, 208 F. Supp.2d 568, 575 (D. Md. 2002) ("Exclusion of prior acts from coverage under a contractual provision . . . [such as §I.A3 here] is a ground for denying coverage distinct from rescission on the basis of material misrepresentation"), *aff'd*, 55 Fed. App'x. 667, 2003 WL 264704 (4th Cir. Feb. 10, 2003); *Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 457-58 (M.D. Pa. 2007) ("the prior knowledge exclusion operates to bar coverage independent of any policy application").

The undersigned finds that Section 31-4314 is inapplicable to the circumstances of this denial of coverage case, which does not involve a rescission of the policy. Continental's denial of coverage is supported by the terms of the Policy and District of Columbia law mandating enforcement of clear policy terms, as written. *See, e.g., Chase v. State Farm Fire & Cas. Co.* 780 A.2d 1123, 1132 (D.C. 2001); *Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997).

### IV. Recommendation

The undersigned finds that the language of the Policy is not against public policy nor is it ambiguous. The trial court should employ an objective standard to determine whether a reasonable attorney would have anticipated a legal malpractice claim, in light of the knowledge possessed by Goldschmidt regarding the default against RES and the subsequent judgment. The undersigned further finds that Code Section §31-4314, dealing with rescission, is inapplicable to the instant case, where the Policy was not rescinded by Continental, but rather, coverage was denied. The undersigned recommends that Continental's Motion for Summary Judgment should

be granted with the effect that the Trustees's [Plaintiff's] claims against Defendant should be dismissed.

### V. Review by the District Court

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).  If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: 10 business days (excluding weekends and holidays) plus three calendar days (including weekends and holidays).  *See CNPq-Conselho Nacional De Desenvolvimento Cientifico e Technologico v. Inter-Trade, Inc.*, 50 F.3d 56, 58 (D.C. Cir. 1995) (*per curiam*).


DATED: April 30, 2008                                    _____/s/_____
                                                         ALAN KAY
                                                         UNITED STATES MAGISTRATE JUDGE