UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| Bryan S. Ross, Chapter 7 Trustee ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:07-CV-01450 |
| v. ) | |
| ) | |
| Continental Casualty Company ) | |
| ) | |
| Defendant. ) | |

**OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION**

Plaintiff Bryan S. Ross, Chapter 7 Trustee ("Trustee") for the estate of Restaurant Equipment & Supply Depot, Inc. ("RES"), by and through undersigned counsel, and pursuant to Local Rule 72.3(b) of the Unites States District Court for the District of Columbia, hereby files this Objection to Magistrate's Report and Recommendation ("Report").

**I.      INTRODUCTION.**

The District of Columbia has expressed a clear public policy in D.C. Code Annotated § 31-4314 as to when an insurer may deny coverage to an insured based on a misrepresentation or omission. Under this policy, insurers are prohibited from denying coverage unless the insured intended to deceive the insurer, or the insurer's acceptance of the risk or hazard assumption was materially affected. The purpose of this statute is "to prevent innocent and immaterial representations in an application from avoiding the insurance," *Prudential Ins. Co. of America v. Saxe*, 134 F.2d 16 (D.C. Cir. 1943), which thereby avoids the "harsh result" of its predecessor

statute. *Johnson v. Prudential Ins. Co. of America,* 589 F.Supp. 30, 34 (D.C.D.C. 1983).[1] Despite clear facts implicating this policy, the Magistrate gives it no substantive effect in his Report. The effect of this omission, as well as the loss of certain factual inferences that rightfully belong to the Trustee, demonstrate that this Court should not adopt the Magistrate's Report and should deny Continental's motion.

## II. SPECIFIC OBJECTIONS.

### A. § 31-4314 Applies To This Case, Consistent With D.C. Policy.

In finding that § 31-4314 is "inapplicable to the circumstances of this denial of coverage case," the Magistrate accepted Continental's arguments regarding the construction and application of this statute. Report at 12. However, as noted below, the insurance policy language relied on by Continental in support of its denial of coverage is nearly identical to the application language expressly addressed by the statute. Accordingly, the requirements of the statute should apply equally to both the application and the policy.

Continental claims that the Trustee's attempt to apply § 31-4314 to the facts of this case is like trying "to force a round peg into a square hole." Reply in Support of Continental Casualty Company's Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment ("Reply") at 3-4. According to Continental, § 31-4314 applies only to insurance *applications*, not policies, and the only remedy available under it is rescission. *Id.* Thus, Continental claims it had two options when it became aware of the facts of this case: "(1) it could

---

[1] "The law prior to the enactment of Section 35-414 focused, not upon whether the applicant was attempting to mislead the insurer or whether the statement might have led the insurer to accept a risk it might not have taken had it known the truth, but rather upon the misrepresentation itself. Any misrepresentation in the application, no matter how innocent or immaterial, was sufficient to allow the insurer to avoid the contract." *Id.*

rescind the Policy, for failure to disclose the claim on the application(s) that Mr. Goldschmidt submitted to Continental, *or* (2) deny coverage on the basis of Policy § I.A.3." *Id.* at 3.

The Magistrate's acceptance of Continental's position is in direct conflict with clear District of Columbia policy. Continental's primary goal is to drive a conceptual wedge between the insurance application and insurance policy, thereby avoiding the difficult task of proving the deceptive intent of Goldschmidt, P.C. as required by § 31-4314. However, as noted below, the exclusionary language in the insurance policy is virtually identical to the language in Continental's application. Accordingly, to accept the Magistrate's conclusion means that a misrepresentation or omission about a fact in an application for insurance is subject to the requirements of the statute, but the exact same misrepresentation or omission (or facts underlying the misrepresentation) can validly support a denial of coverage under the policy, solely because the exclusionary language is in the policy too, in addition to the application. Such an obvious elevation of form over substance makes no sense, and, most importantly, violates the expressly stated public policy of District of Columbia, as evidenced by the statute setting forth the requirements under which an insurer can deny coverage under an insurance policy.

To begin with, Section V.M. of the insurance policy states: "this Policy, endorsements thereto, ***together with the completed and signed application*** … shall constitute the entire contract between the Insured and the Company." (emphasis added). In other words, the documents ***collectively*** constitute the contract between the parties. Given this, § 31-4314 necessarily applies to the entirety of the agreement between the parties, including the insurance policy.

Moreover, no District of Columbia authority supports the view propounded by Continental and adopted by the Magistrate. In fact, controlling case law has rejected the

conclusion reached in the Report. As noted in the Report, the exclusionary language in Section I.A.3. of the insurance policy operates as "a prerequisite to coverage." Report at 6. The lack of effect of such "conditions precedent" on the operation of § 31-4314 was established long ago in *Prudential Ins. Co. of America v. Saxe*, 134 F.2d 16 (D.C. Cir. 1943):

> [Section 31-4314] was intended to prevent innocent and immaterial misrepresentations in the application from avoiding the insurance, and its effect cannot be escaped by the device of contracting to the contrary or labelling a contractual attempt to do this a 'condition precedent' to attaching of the risk. The very purpose of the section was to nullify contractual provisions contrary to its terms and effect. If therefore the so-called 'condition precedent' is by its terms more broadly effective than the statute allows, to that extent it is invalid. (citations omitted)

*Id.* at 25; *Briggs v. United Services Life Ins. Co.*, 80 S.D. 26, 31, 117 N.W.2d 804, 807 (1962)(citing *Saxe*). The net effect of Continental's position and that adopted by the Magistrate is to strip away the statutory protections afforded by § 31-4314 in contravention of controlling precedent. This result is wrong and should not be adopted by the Court.

Finally, the Report cites to a Seventh Circuit case, *Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 790 (7th Cir. 1992) in support of the conclusion that its construction of Section I.A.3. is not "against public policy." Report at 7. However, the Report fails to mention the above cited *Prudential Ins. Co. of America v. Saxe*, 134 F.2d 16 (D.C. Cir. 1943) and the general policy contained in § 31-4314. Both the statute and the *Prudential* case clearly demonstrate that the Magistrate's conclusion is contrary to the policy of the District of Columbia. Moreover, the Seventh Circuit case is factually inapposite, involves Indiana law, and, importantly, did not implicate any statutory provision similar to § 31-4314 with a strong policy towards protecting insureds from their innocent misrepresentations. Therefore, the Seventh Circuit case provides no support for the conclusion that Continental's construction does not violate District of Columbia public policy.

B. **The Insurance Contract is Ambiguous.**

Adopting another Continental argument, the Report concludes that "the Policy provision is not ambiguous" as to whether Section I.A.3 requires an objective or subjective standard, citing a Third Circuit case, *Selko v. Home Ins. Co.*, 139 F.3d 146 (3rd Cir. 1998). Report at 7. *Selko* interpreted, under New Jersey law, an insurance policy with language similar to Section I.A.3. However, the views of the *Selko* court are not shared by every state. *See, e.g., Shaheen, Cappiello, Stein & Gordon v. Home Ins. Co.*, 143 N.H. 35, 41, 719 A.2d 562, 566 (1998)("We conclude that the provision requiring the insured to report any incidents which could 'reasonably be expected' to form the basis of a suit or claim is ambiguous."). Moreover, no District of Columbia authority is cited in support of this proposition, and the Report contains no analysis of the actual contract language using the proper interpretive rules.

In the District of Columbia, "'[t]he general rule applicable in the interpretation of an insurance policy is that, if its language is reasonably open to two constructions, the one most favorable to the insured will be adopted.'" *Chase v. State Farm Fire and Cas. Co.,* 780 A.2d 1123, 1127 (D.C. 2001) (citations omitted). As noted above, the Policy and Application collectively constitute the insurance contract between Goldschmidt, P.C. and Continental. Thus, the language in the Application is also relevant to determining whether the contract is ambiguous regarding an objective versus subjective standard for questions regarding prior acts:

> Application language: "After inquiry, is any attorney in the firm ***aware*** of … an act or omission that may reasonably be expected to be the basis of a claim …." Reply at 5 n.2 (emphasis added).

<u>Policy language</u>: "no Insured had a ***basis to believe*** that any such act or omission, or related act or omission, might ***reasonably*** be expected to be the basis of a claim." Motion, Exhibit A (emphasis added).

A fair reading of the language above suggests that the insurance contract contained terms in at least two places that classically suggest subjective standards—"aware" and "believe"—and a term in another place— "reasonably"— that is often associated with objective standards. While Continental argues for the objective standard, it nonetheless admits that the contract language contains "a limited subjective element." Motion at 11 n.6.  Because this language is "reasonably open to two constructions," it is subject to standard D.C. insurance contract interpretation rules. *Chase,* 780 A.2d at 1127 ("[A]mbiguities in an insurance policy are construed against the insurer and in favor of 'the reasonable expectations of the purchaser of the policy.'[and] 'Any fair doubt as to the meaning of its own words should be resolved against the insurer.'")

Given this authority, the subjective interpretation applies to the actions of Goldschmidt P.C., contrary to the Report's conclusions.

C. **The Standard is Subjective.**

Although no District of Columbia authority is cited in support, the Report again adopts Continental's argument, relying on *Selko v. Home Ins. Co.*, 139 F.3d 146 (3rd Cir. 1998), that the phrase "basis to believe" from Section I.A.3 contains an "objective" rather than "subjective" standard. Report at 9.

In *Selko*, the Third Circuit was interpreting New Jersey law. However, a subsequent New Jersey state court decision has interpreted the same language, as well as the *Selko* decision itself, and has rejected it, reaching a different conclusion. *See Liebling v. Garden State Indemnity*, 337 N.J.Super. 447, 767 A.2d 515 (2001)(rejecting *Selko* and adopting *Logan v. Northwestern Nat.*

*Cas. Co.*, 144 Wis.2d 318, 424 N.W.2d 179 (1988)). In adopting the reasoning in the *Logan* opinion, the New Jersey court noted:

> *Logan*'s exclusion, like *Selko*'s, provided that coverage would be denied if the insured attorney "had a 'basis to believe' that the insured had committed a breach of a professional duty." *Id.* at 185-86. The insurance company argued that under that exclusion a claim should be excepted from coverage "if the insured knew or should have known that the insured had breached a professional duty." *Id.* at 185-86. The court disagreed and analyzed the problem in the following manner:
>
>> However, we reject the objective standard because the use of an objective standard is inconsistent with the purpose of the policy and what an insured would have understood the exception to provide. Accordingly, whether the policy excepts coverage for a claim based on a breach of a professional duty occurring prior to the effective date of the policy must be determined by analyzing whether the insured (Dowling) knew or believed, prior to the effective date of the policy, that he had breached a professional duty.
>> The difficulty with applying an objective standard is apparent when examined in the context of a hypothetical error or omission by an attorney. For example, an attorney commits a breach of his or her professional duty by not filing a suit within the one year statute of limitations. The attorney did not file within the year because he or she believed erroneously that the statute of limitations was three years. The statute was specific, and the attorney should have known that the statute of limitations was one year. Under an objective standard, any subsequent policy would except coverage for a claim based on failing to file the suit within one year because, prior to the effective date of the subsequent policy, the attorney should have known that he or she had breached a professional duty by failing to file the suit within the one year statute of limitations. Thus, because the attorney did not know the correct statute of limitations, but should have known the correct statute, the attorney not only committed a breach of his or her professional duty, but he or she is also denied insurance coverage.
>> *Because we conclude that the parties could not have intended the policy to except coverage in such a situation, and because an exception of coverage in such a situation is contrary to the purpose of professional liability insurance, we hold that whether an insured had a "basis to believe" must be treated by whether the insured knew or believed that the insured had committed a breach of his or her professional duty.* [*Id.* at 186 (emphasis added by NJ court).]

*Liebling*, 337 N.J.Super. at 461-62, 767 A.2d at 523-24. As this interpretation is most consistent with the language and public policy underlying § 31-4314, which is triggered by the insured's subjective intent to deceive,[2] the Magistrate's conclusions should be rejected.

    **D.    Under the "Objective" *Selko* Standard Adopted By The Report, The Evidence, Taken in the Light Most Favorable to the Trustee, Requires Denial of the Motion for Summary Judgment.**

Even assuming that the policy language requires an objective standard under District of Columbia law, the Report fails to analyze and compare the facts in *Selko* with the facts of this case. In *Selko*, an attorney invested a client's personal injury settlement proceeds into risky real estate ventures without the client's knowledge. *Selko v. Home Ins. Co.*, 139 F.3d 146 (3rd Cir. 1998). An important aspect of the decision was the fact that the attorney's actions clearly violated Rule 1.8(a) of the Pennsylvania Rules of Professional Conduct. *Id.* at 155.

Unlike *Selko*, however, here there is no bright line violation of an ethical rule. In considering attorneys' obligations to report potential claims to malpractice carriers, one commentator states:

> 'The test, however, is one of reasonableness: is it more likely than not that an incident will lead to a claim? Certain circumstances are clear-cut, as in the cases of blown statutes of limitations or the late filing of a Subchapter S election. Most cases are less clear-cut, however, and *require that the attorney exercise his professional judgment in evaluating the possibility that an adverse development will give rise to a claim.*'

---

[2] Continental's "objective" view also appears to be in direct conflict with the subjective intent language contained in D.C. Code Annotated § 31-4314. Although Courts enforce unambiguous policies as written, they so do only as "long as they do not violate a statute or public policy." *Chase v. State Farm Fire and Cas. Co.,* 780 A.2d 1123, 1132 (D.C. 2001) (citations omitted). Applying the objective view violates the public policy evidenced by § 31-4314.

*Shaheen, Cappiello, Stein & Gordon v. Home Ins. Co.*, 143 N.H. 35, 40, 719 A.2d 565, 566 (citing *Legal Malpractice: The Law Office Guide to Purchasing Legal Malpractice Insurance* § 5.14, at 32 (R.E. Mallen ed., 2d ed.1997) (emphasis added)).

The circumstances in this case are not clear-cut like in *Selko*. Goldschmidt P.C. conducted substantial research and investigation before concluding that the appellate court would vacate the default judgment. Because of this, and because RES never once indicated that they had been damaged or believed Goldschmidt P.C. had committed malpractice, Goldschmidt P.C. determined, exercising its professional judgment, that there was no likelihood that the incident would lead to a claim. Plaintiff's Statement of Undisputed Material Facts at ¶ 17.

Ultimately, "[w]hether the insured acted reasonably in providing notice of a potential claim is a question of fact for the trial court." *Shaheen*, 143 N.H. at 39-40, 719 A.2d 562, 565-66 (1998). Here, Continental offered no evidence as to what a reasonable attorney in Goldschmidt's situation would actually believe given all the relevant facts. Consequently, had the Magistrate truly accepted the statements and evidence set forth by the Trustee as true, and truly made all inferences in favor of the Trustee, *Kwon v. Billington*, 370 F.Supp.2d 177, 182-83 (D.D.C. 2005), it should have determined that Continental had not met its burden.

**III.    CONCLUSION.**

The Trustee respectfully requests that the Court consider these objections to the Magistrate's Report when rendering its decision, and further requests that the Court refuse to adopt the Report and instead deny Defendant's Motion.

Respectfully submitted,

Dated: May 19, 2008

/s/ Michael E. Tucci
Michael E. Tucci No. 430470
Darrell W. Clark No. 450273
Robert L. Eskay, Jr. No. 479408
STINSON MORRISON HECKER LLP
1150 18th Street, NW
Washington, D.C. 20036-3816
Tel: (202) 785-9100
*Attorneys for Chapter 7 Trustee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of May, 2008, a copy of the foregoing Objection to Magistrate's Report and Recommendation was sent via the Court's Electronic Case Filing notification system and by first class U.S. mail, postage prepaid, to:

Richard A. Simpson, Esq.
Kelly V. Overman, Esq.
Ross, Dixon & Bell LLP
2001 K Street, N.W.
Washington, D.C. 20006

/s/ Michael E. Tucci
Michael E. Tucci