**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Bryan S. Ross, Chapter 7 Trustee ) | Case: 1:07-CV-01450 |
| Plaintiff, ) | |
| ) | Assigned to: Roberts, Richard W. |
| v. ) | |
| ) | Assign Date: 8/10/2007 |
| Continental Casualty Company ) | |
| Defendant. ) | Description: Contract 1 |

**CONTINENTAL CASUALTY COMPANY'S RESPONSE**
**TO PLAINTIFF'S OBJECTION TO MAGISTRATE**
**JUDGE KAY'S REPORT AND RECOMMENDATION**

Pursuant to Rule 72(b), Fed.R.Civ.P., Defendant Continental Casualty Company

("Continental") respectfully submits this Response to Plaintiff's Objections to Magistrate Judge

Kay's Report and Recommendation. As shown below, Plaintiff's Objections are wholly

meritless. Magistrate Judge Kay's thoughtful and well-reasoned Report and Recommendation

(the "Report") should be adopted in full as the decision and opinion of this Court.[1]

**I.    INTRODUCTION**

As Magistrate Judge Kay recognized, this case calls for application of an unambiguous

prior knowledge provision of a professional liability insurance policy to undisputed facts. In

particular, Section I.A.3 of the applicable Policy's Insuring Agreement imposes a common and

eminently reasonable condition by precluding coverage for a claim unless "prior to the inception

date of the first policy issued by [Continental] . . . no **Insured** had a basis to believe that any

such act or omission [on which the claim is based] or **related act or omission**, might reasonably

---

[1] In the interest of brevity, Continental assumes familiarity with Magistrate Kay's Report and adopts the defined terms used in the Report.

be expected to be the basis of a **claim** . . . ." Policy, § I.A.3.  In other words, the Policy does not provide coverage for claims arising from circumstances already known to a lawyer before he or she buys the first policy from Continental, *i.e.*, the Policy addresses "moral hazard" by excluding known risks from coverage.

It is difficult to imagine a case to which Section I.A.3 more clearly applies than this one. The pertinent facts are undisputed.  Goldschmidt admits that, as of May 1, 2003, the inception date of the first policy Continental issued to Goldschmidt, P.C., he was aware of the following: (1) he had failed to file an answer on behalf of his client; (2) the failure to answer resulted in a default being entered against the client; (3) the court had denied both a motion to vacate the default and a motion for reconsideration; and (4) the court had entered a judgment against the client for an amount in excess of $800,000.  Goldschmidt thus knew, before Continental issued its first policy, that his negligence in failing to file a timely answer had resulted in a judgment for over $800,000 being entered against his client.  Based on those undisputed facts, Magistrate Judge Kay concluded that Section I.A.3 precludes coverage for the client's entirely predictable claim against Goldschmidt.

Plaintiff's Objection merely repeats the same meritless arguments fully addressed by Magistrate Judge Kay.  First, the Trustee argues that the District of Columbia's rescission statute applies to Continental's denial of coverage.  That argument fails for the simple reason that Continental did not rescind the Policy, but instead denied coverage for a specific claim based on an unambiguous provision of the insurance contract.  The distinction between rescission, which voids a policy *ab initio* and in full, thereby resulting in a total absence of coverage for any claim of any kind, and denial of coverage for a specific claim based on the terms of the insurance contract, leaving the policy itself in full force and effect, is an obvious and universally

recognized one.  Magistrate Judge Kay properly concluded that the rescission statute is manifestly irrelevant.

Second, the Trustee argues that Section I.A.3 is ambiguous, and should be read to create a subjective standard under which coverage would be barred only if Goldschmidt subjectively believed that a claim might be made, regardless of whether a reasonable attorney knowing what Goldschmidt knew would recognize that a claim might be made.  As to this argument, Magistrate Judge Kay followed the overwhelming weight of authority, including a prior decision by Judge Bates of this Court (under Virginia law), in holding that Section I.A.3 applies an objective, reasonable attorney standard to the facts known to the insured attorney.  Although not necessary to the decision, Magistrate Judge Kay further determined that, even under a subjective standard, Continental would be entitled to summary judgment because the facts known to Goldschmidt so obviously and conclusively demonstrated the potential for a malpractice claim that a court should hold as a matter of law that he could not have failed to recognize that he had committed malpractice and that a claim might result.

II.     **RESPONSE TO SPECIFIC OBJECTIONS**

    A.     **Continental Did Not Rescind the Policy; The Rescission Statute is Irrelevant**

As to the rescission statute, Magistrate Judge Kay put the dispositive point succinctly: "[D.C. Code Ann. §] 31-4314 is inapplicable to the circumstances of this denial of coverage case, which does not involve the rescission of the policy."  Report at 12.  Yet, in his Objection, the Trustee continues to assert that the D.C. rescission statute, entitled "False statements in *application* for policy" (emphasis added), controls this case in which Continental does not seek

to rescind the Policy and does not rely on any statement in any application.  It simply does not.[2]

Continental did not rescind the Policy and did not rely on any misrepresentation in the

application for the Policy in denying coverage.  Rather, Continental properly denied coverage for

a specific claim based on an unambiguous term of the Policy – a contract entered into between

Continental and Goldschmidt.

Rescission of a policy is analytically distinct from denial of coverage for a particular

claim based on a contractual provision, as rescission voids the policy *ab initio* and leaves the

insured with no coverage for *any* claims under the Policy.  The distinction between rescission

and a denial of coverage based on a prior knowledge exclusion such as Section I.A.3 is basic and

universally recognized, including under Maryland law, to which District of Columbia courts look

in the absence of District of Columbia law on a particular issue.[3]  *See, e.g., Maynard v. Westport

Ins. Co.*, 208 F. Supp. 2d 568, 575 (D. Md. 2002) ("Exclusion of prior acts from coverage under

a contractual provision . . . [similar to Section I.A.3] is a ground for denying coverage distinct

from rescission on the basis of material misrepresentation") *aff'd*, 55 F. App'x 667, 2003 WL

264704 (4th Cir. Feb. 10, 2003); *see also Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F.

---

[2] The Trustee speaks of the rescission statute as though it were somehow unusual in permitting rescission only when false statements in an application are either material or made with an intent to deceive.  In fact, however, D.C. Code Ann. § 31-4314 is substantially similar to the law in most states, which share the public policy concern asserted by the Trustee "to protect innocent and immaterial representations in an application from avoiding the insurance."  *See, e.g.* Ga. Code Ann. § 33-24-7; Tenn. Code Ann. § 56-7-103.  These other states have no problem enforcing the objective standard created by prior knowledge provisions of insurance contracts, such as Section I.A.3, in accordance with their terms.  *See Home Indem.Co. v. Toombs*, 910 F. Supp. 1569 (N.D. Ga. 1995); *McColpin v. N. Atl. Cas. & Sur. Co.*, No. 03A01-9602-CH-00067, 1996 WL 636488 (Tenn. Ct. App. Nov. 5, 1996).

[3] When there is no applicable District of Columbia law, courts look to the law of Maryland. *See, e.g., West v. United States*, 866 A.2d 74, 79 n.1 (D.C. 2005) ("We may, of course, look to Maryland law because the District of Columbia derives its common law from Maryland as of 1801"); *Sharp v. Ward*, No. 01-CA-2184, 2004 WL 1835102, at *3 (D.C. Super. Ct. Aug. 16, 2004) (looking to Maryland law in the absence of D.C. law regarding an excess insurance issue).

Supp. 2d 444, 457-58 (M.D. Pa. 2007) ("the prior knowledge exclusion operates to bar coverage independent of any policy application").

In his Objection, the Trustee does not attempt to address the case law, cited above and in Continental's Reply Brief at 4, distinguishing analysis of rescission from analysis of prior knowledge exclusions. Instead, the Trustee relies on a factually inapposite 1943 life insurance case, *Prudential Insurance Company of America v. Saxe*, 134 F.2d 16 (D.C. 1943), and a 1962 decision from the Supreme Court of South Dakota (applying District of Columbia law), also pertaining to a life insurance policy. *Briggs v. United Servs. Life Ins. Co.*, 117 N.W.2d 804 (S.D. 1962). Neither of these life insurance cases considers a denial of coverage under a liability policy and both involve efforts to void a policy entirely.

The language from *Saxe* quoted by the Trustee in his Objection does not address an insurer's attempt to use policy language to side-step the rescission statute; rather, it quotes language from the warranty section of an *application*. *See Saxe*, 134 F.3d at 24-25. In addition, both *Saxe* and *Briggs* analyze provisions that operate to void the *entire* policy (the remedy for rescission), not a demand of coverage for a specific claim. Section I.A.3 does not void the policy as a whole or otherwise prevent it from taking effect; rather, as explained above, it excludes coverage for specific claims arising from acts or omissions about which the insured knew prior to the inception of coverage. Thus, while Section I.A.3 protects against the "moral hazard" of insuring a known risk, it leaves the Policy otherwise intact. Continental has not rescinded, nor otherwise sought to void the Policy and, as Magistrate Judge Kay explained, the rescission statute is consequently irrelevant.[4]

---

[4] The tenor of the Trustee's Objection suggests that the statute requires that an insurer prove that a misrepresentation in an application was intentional in order to void the policy. To the

(continued on the next page)

**B.      Section I.A.3 is Not Ambiguous**

As Magistrate Judge Kay recognized, courts repeatedly have held that the language of Section I.A.3, like that of substantially similar prior knowledge exclusions, are unambiguous and proper. *See Tewell, Thorpe & Findlay, Inc. v. Cont'l Cas. Co.*, 825 P.2d 724, 727 (Wash. Ct. App. 1992); *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatezkis*, 799 F.2d 218, 224 (5th Cir. 1986); *Bellefonte Ins. Co. v. Albert*, 472 N.Y.S.2d 635, 636-37 (App. Div. 1984).  Courts applying both Illinois and New Jersey law have held specifically that the "basis to believe" language used in Section I.A.3 is unambiguous and states an objective standard. *Selko v. Home Ins. Co.*, 139 F.3d 146, 151-52 (3rd Cir. 1998); *Smith v. Newmann*, 682 N.E.2d 1245, 1249, 1255 (Ill. App. 1997).  Moreover, a court applying Maryland law has held that Section I.A.3 itself is clear and ambiguous, and should be enforced as written.  *Cont'l Cas. Co. v. Conroy Ballman & Dameron, Chtd.*, Civil Action No. AW-05-1082 (D. Md. March 23, 2006) (slip op.) ("*Conroy*") (attached as Ex. A).  Where "policies are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy." *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1132 (D.C. 2001) (citation and quotations omitted).  *Accord Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997).

---

(continued from the previous page)

contrary, the statute permits rescission if the misrepresentation (1) was made with an intent to deceive; *or* (2) materially affected the risk to the carrier.  *See* D.C. Code Ann. §31-4314.  As Continental noted in its Reply Brief, had it moved for relief under the statute, Continental would have had no problem making a successful case for rescission.  *See* Continental's Reply Brief at p. 4, n. 2.  Had Continental rescinded the Policy, it would have put the Firm at substantial risk had unrelated claims been made while the Policy was in effect.

**C.    Section I.A.3 Applies An Objective Standard To The Facts Known To The Insured**

The Court should adopt Magistrate Judge Kay's analysis that "courts should employ an objective standard to determine whether a reasonable attorney would have anticipated a legal malpractice claim, in light of the knowledge possessed by Goldschmidt regarding the default against RES and the subsequent judgment." Report at 12. Although there is no District of Columbia law that addresses the issue directly, Judge Bates of this Court reached this conclusion in a case applying Virginia law. *Minn. Lawyers Mut. Ins. Co. v. Hahn, 355 F. Supp. 2d 104* (D.D.C. 2004). Courts in the Fourth Circuit have reached the same conclusion under both Maryland and Virginia law. *Westport Ins. Corp. v. Albert*, 208 F. App'x 222, 226 (4th Cir. 2006); *Culver v. Cont'l Ins. Co.,* 11 F. App'x 42, 45-46 (4th Cir. 1999); *Cont'l Cas. Co. v. Graham & Schewe*, 339 F. Supp. 2d 723, 727 (E.D. Va. 2004).

Indeed, as noted above, a Maryland federal court, applying Section I.A.3 itself, upheld the adoption of the objective standard. *Conroy*, Civil Action No. AW-05-1082 (D. Md. March 23, 2006). In *Conroy*, Continental first issued a policy to the insured firm in 1999. *Id.* at 3. The firm was later named in a lawsuit alleging RICO violations arising out of a real estate flipping scheme. *Id.* at 2. An insured attorney admitted in a criminal plea agreement that he was involved in the flipping scheme dating back to fall 1998 and that he began defrauding the federal government, mortgage lenders, and financial institutions prior to the first policy's inception date. *Id.* at 7-8. The *Conroy* court held that "[the insured's] admissions amply support Plaintiff's assertion that a *reasonable person* would have expected that the victims of this fraud could assert a claim against him and/or [the firm]," and granted summary judgment to Continental. *See Conroy*, at 8, 10 (emphasis added).

Law from across the country supports this conclusion.  *See, e.g.*, Richard L. Neumeier, *Disclaiming Coverage When the Insured Fails to Give Proper Notice of "Any Circumstance" Giving Rise to a Claim*, 41 Tort Trial & Ins. Prac. L.J. 45, 48 (Fall 2005) ("The courts generally apply 'an objective standard, asking whether a reasonable person in possession of the facts known to the insured, would have a reasonable basis to know that a claim might be made.'"); *Nat'l Union Ins. Co. v. Holmes & Graven*, 23 F. Supp. 2d 1057, 1066 n.7 (D. Minn. 1998) (Minnesota law); *Home Ins. Co. v. Powell*, No. Civ. A. 95-6305, 1997 WL 370109 at *6 (E.D. Pa. June 13, 1997) (Pennsylvania law), *aff'd*, 156 F.3d 1224 (3d Cir. 1998); *Int'l Ins. Co. v. Peabody Int'l Corp.*, 747 F. Supp. 477, 481 (N.D. Ill. 1990) (Illinois law); *Ratcliffe v. Int'l Surplus Lines Ins. Co.*, 550 N.E.2d 1052, 1057 (Ill. App. Ct. 1990); *Toombs*, 910 F. Supp. at 1574; *Int'l Surplus Lines Ins. Co. v. Univ. of Wyo. Research Corp.*, 850 F. Supp. 1509 (D. Wyo. 1994), *aff'd sub nom. Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995); *Neumann*, 682 N.E.2d at 1255; *Worth v. Tamarack Am.,* 47 F. Supp. 2d 1087, 1096 (S.D. Ind. 1999), aff'd, 210 F.3d 377 (7th Cir. 2000).

In arguing for a subjective standard, the Trustee relies primarily on an intermediate appellate court decision from New Jersey, *Liebling v. Garden State Indemnity*, 767 A.2d 515 (N.J. Super App. Div. 2001).  Although *Liebling* states the court was adopting a subjective standard, the holding of *Liebling* on its facts is not inconsistent with the majority rule that prior knowledge provisions like Section I.A.3 apply an objective standard to the facts actually known to the insured.[5]  Specifically, as the long block quote in the Trustee's Objection (at 7) shows, the

---

[5] *Liebling* is actually a rescission case, but considers an application question asking about knowledge of circumstances that could result in a claim.  Notwithstanding holding that that language adopted a subjective standard, the *Liebling* court granted summary judgment for the insurance company because the insured lawyer admitted he knew he had failed to amend a

(continued on the next page)

*Liebling* court reasoned that a prior knowledge exclusion should not bar coverage for an attorney who missed a statute of limitations because he mistakenly believed that the statute was three years rather than one year.  Continental does not disagree.  Section I.A.3 has a subjective element in that the attorney must be aware of the pertinent facts, *i.e.*, Section I.A.3 applies an objective standard to the facts known to the attorney.  Section I.A.3 would not bar coverage for an attorney who mistakenly believed the statute of limitations was three years rather than one year.  It would, however, bar coverage for an attorney who knew he or she missed a one year statute, but asserted he or she subjectively believed that the wronged client would not make a claim.  That is the actual analogy to Goldschmidt's situation:  Goldschmidt knew that he failed to file a timely answer and that a default judgment had been entered against his client, but asserts he did not believe a claim would be made.

The United States Court of Appeals for the Third Circuit, applying New Jersey law, held that *Liebling* was wrong in suggesting that the standard is a subjective one, and refused to follow *Liebling* in that respect.  The Third Circuit held that the New Jersey Supreme Court would not follow *Liebling* in applying a subjective standard.  Specifically, based on a careful review of the *Liebling* decision, the Third Circuit held that "we predict that the New Jersey Supreme Court would hold that the mixed subjective-objective test arising from the clear and unambiguous policy exclusion in our case violates neither New Jersey public policy nor the objectively reasonable expectations of the insured."  *Colliers Lanard & Axilbund v. Lloyds of London*, 458

---

(continued from the previous page)

complaint in an underlying action to add the United States as a defendant on time and, in the court's view, the lawyer could not possibly have honestly failed to recognize the potential for a claim.  *Liebling*, 767 A.2d at 525.  So too here, Goldschmidt admits that he knew that he had failed to file a timely answer and that a default judgment had been entered against his client as a result; in other words,  Goldschmidt knew that he had committed malpractice.

F.3d 231, 243 (3rd Cir. 2006).  The Third Circuit reasoned:  "an exclusion which depended on the subjective standard . . .  would reward ignorance and encourage professionals to engage in disingenuous statements and after-the facts justifications, which would in turn lead to unpredictable outcomes."  *Id.*  at 240.

The facts here could not be more clear-cut, regardless of the standard applied.  As Magistrate Kay put it,

> A review of the record of proceedings in the trial court, *whether viewed subjectively or objectively*, leads ineluctably to the conclusion that a malpractice claim against Goldschmidt was a reasonably foreseeable event.  Goldschmidt does not and cannot deny that its failure to file an answer on behalf of RES led to the entry of default against RES and ultimately to entry of a significant judgment against RES.  Thus, the undersigned finds that events resulting in the judgment against RES "might reasonably have been expected to be the basis of a [legal malpractice] claim" and under the terms of the Policy should have been disclosed to Defendant Continental.

Report at 10-11 (emphasis added).

III.    **CONCLUSION**

For the reasons discussed above and in Continental's summary judgment papers, this

Court should adopt Magistrate Judge Kay's Report as the decision and opinion of the Court.

Respectfully submitted,

ROSS, DIXON & BELL, LLP

Dated:  June 6, 2008                    By:__/s/ Richard A. Simpson_____
                                        Richard A. Simpson
                                        (D.C. Bar No. 411893)
                                        Kelly V. Overman
                                        (D.C. Bar No. 482077)
                                        Whitney R. Lindahl
                                        (D.C. Bar No. 496451)
                                        2001 K Street, N.W.
                                        Washington, D.C.  20006
                                        Telephone:  (202) 662-2000
                                        Facsimile:  (202) 662-2190

                                        *Counsel for Plaintiff*
                                        *Continental Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Continental Casualty Company's Brief in

Support of the Magistrate's Report and Recommendation and Response to Plaintiff's Objection,

was filed electronically, as well as e-mailed, this 6th day of June 2008 to:

        Michael E. Tucci, Esq.
        Darrell W. Clark, Esq.
        Robert L. Eskay, Jr., Esq.
        Jaime Dibble, Esq.
        Stinson Morrison Hecker, LLP
        1150 18th Street, N.W., Suite 800
        Washington, D.C.  20036

        /s/ Whitney R. Lindahl
        Whitney R. Lindahl

368671v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

CONTINENTAL CASUALTY COMPANY,  *

              Plaintiff,      *

        v.                        Civil Action No. AW-05-1082

                        *

CONROY, BALLMAN, & DAMERON,
CHTD., *et al.*,               *

            Defendants.     *

                      * * * * *

## MEMORANDUM OPINION

Continental Casualty Company ("Continental" of "Plaintiff") brings this suit against Conroy, Ballman, & Dameron, Chartered ("CBD"), Lynn Kromminga ("Kromminga"), a former attorney at CBD, and First Guaranty Mortgage Corporation ("First Guaranty") (collectively, "Defendants") seeking a declaration that it need not provide defense or indemnity coverage for the claims made in the civil action *First Guaranty Mortgage Corporation v. Bryant*.  Currently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment [21] and Defendant CBD's Motion to Stay These Proceedings [25].  The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions and has determined that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated more fully below, the Court will deny CBD's Motion to Stay as moot, and Plaintiff's motion, which the Court will treat as a Motion for Summary Judgment, is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to Defendants.  From November 1993 to August 1999, Defendant Kromminga engaged in the practice of law at CBD.[1]

---

[1] The firm of CBD is now defunct.

While at CBD, Kromminga allegedly began a real estate "flipping scheme" with John Bryant and others. As part of this illicit activity, real estate investors would purchase distressed properties using borrowed funds. The buyer would obtain the loan for an amount greater than the value and sales price of the property. The buyer then would purchase the property and generate a profit on the same, which could fund a portion of the buyer's costs. To effectuate this scheme, Defendant Kromminga and others allegedly falsified HUD documents and made various other false statements. Ultimately, Defendant Kromminga and nine other individuals were charged with criminal conspiracy, pursuant to 18 U.S.C. § 371. The indictment alleged that Kromminga committed certain overt acts, which served as predicates to the conspiracy, as early as November 1998.

In June of 2004, Kromminga entered into a plea bargain agreement with the United States Attorney in the criminal case and admitted to participating in a single conspiracy under 18 U.S.C. § 371. In his signed plea agreement, Kromminga acknowledged that he "did knowingly, willfully, and unlawfully, combine, conspire, confederate, and agree with John Bryant, and others known or unknown, to defraud mortgage lenders and financial institutions, and for the purposes of influencing in any way the action of HUD, to knowingly pass, utter, and publish statements, knowing same to be false." *See* Plea Agreement. Subsequently, this Court sentenced Kromminga on October 1, 2004 to one year and one day in federal prison, three months of supervised probation, ordered him to pay a $100 assessment, a $3,000 fine, and $299,479.19 in restitution to HUD and other mortgage lenders.

On November 14, 2004, one of these lenders, First Guaranty, brought suit against Kromminga, CBD, and fourteen other defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and other common law torts as well as breach of contract

2

(the" First Guaranty Action").

To pay the legal fees associated with this suit, CBD and Kromminga filed claims under their professional liability policy issued by Continental (the "Policy").  Continental first issued the Policy in April 1999 and continually renewed the Policy through the 2003-2004 policy year.  The Policy generally obligated Continental to pay all sums in excess of the deductible for damages and claim expenses made against CBD, as well as its attorneys, during the policy period, for acts and omissions in its provision of legal services.  The Policy, however, enumerates several conditions, including a provision that excepts from coverage any conduct that occurred "prior to . . .  the inception date of the first policy issued by the Company. . .if continuously renewed; or . . .the date the Insured first became a member or employee of the Named Insured" if any insured "had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim." *See* The Policy, at 1 (the "Prior Knowledge Exclusion"). In addition, the Policy disavows any coverage of "any claim based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an Insured . . .The Company shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, legal admission, whether appealed or not.  Such defense will not waive any of the Company's rights under this Policy " *See id.* at 8.

Seeking to adjudicate its rights under the Policy, Continental filed the instant suit on April 21, 2005.  After all parties entered an appearance in this case, Continental filed a Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment on November 4, 2005. CBD responded to this motion and filed a Motion to Stay the Proceedings.  Currently, both Motions are ripe and ready for disposition, and the Court shall now issue an Opinion.

3

## DISCUSSION

I.     **CBD's Motion to Stay**

Based on the Maryland State Court of Appeals case, *Allstate Insurance Company v. Atwood*, 575 A.2d 154 (Md. 1990), CBD has moved to stay this case. The *Allstate* decision exemplifies a line of Maryland cases, which hold that normally an insurer should not bring declaratory judgments in advance of tort trials to resolve the issues presented in the pending tort cases. *Id.* at 157; *see also Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842 (Md. 1975) (stating that ordinarily insurer must provide a defense to the insured and is prohibited from bringing a declaratory action before the conclusion of the underlying tort trial).

On December 20, 2005, Judge Quarles issued a memorandum opinion and order dismissing CBD from the First Guaranty Action. The disposition of the underlying tort action has rendered *Allstate* inapposite, and the Court need not stay this action against CBD to avoid any conflict of interest which may arise between CBD and Continental. Because of Judge Quarles' order, this Court will deny CBD's motion as moot.

II.     **Continental's Motion for Judgment on the Pleadings**

A.     Standard of Review

Rule 12(c) provides that "if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(c); *see also Kaiser Aluminum & Chem. Corp. v. Westinghouse Elec. Corp.*, 981 F.2d 136, 140 (4th Cir. 1992). As the Plaintiff has submitted additional materials with its pleadings, the Court will consider Plaintiff's Motion for Judgment on the Pleadings as a Motion for Summary Judgment.

4

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Once the moving party discharges its burden by showing there is an absence of evidence to support the nonmoving party's case, *Catrett*, 477 U.S. at 325, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

B.    Construction of the Policy

To interpret provisions in the Policy, the Court must begin by looking to Maryland law.[2] Under Maryland law, insurance policies are interpreted in the same manner as contracts generally; and Maryland law does not adhere to the rule that an insurance policy should be construed most strongly against the insurer. *See Collier v. MD-Individual Practice Ass'n,* 607 A.2d 537, 539 (Md. 1992). As with all other contracts, a court must attempt to ascertain and give effect to the intentions of the parties at the time of contracting. *See Levy v. American Mut. Liab. Ins. Co.*, 73 A.2d 892, 894 (Md. 1995). To determine the parties' intent, the court must view the instrument as a whole, attributing to each word its normal or customary meaning, unless some indication exists that the parties intended to use words in a special technical sense. *See Kendall v. Nationwide Ins. Co.*, 702

---

[2]  When presented with choice-of-law questions, Maryland courts ordinarily follow the rule of *lex loci contractus,* which provides that the construction of a contract be determined by the law of the state where the contract was made. *Commercial Union Ins. v. Porter Hayden Co.*, 698 A.2d 1167, 1199 (Md. 1997); *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). Parties seem to agree that the contract was made in Maryland, and that, therefore, Maryland law governs the interpretation of the insurance policy's provisions.

5

A.2d 767, 771 (Md. 1996); *Sullins v. Allstate Ins. Co.,* 667 A.2d 617, 619 (Md. 1995); *Nolt v. United States Fidelity & Guar. Co.,* 617 A.2d 578, 584 (Md. 1993); *Collier,* 607 A.2d at 539.  While the character of the contract, its object and purposes, and the factual circumstances of the parties at the time of execution may assist in interpreting the meaning of a particular contractual provision, clear and unambiguous language must be enforced as written.  *See Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md. 2001); *Board of Trustees of State Colleges v. Sherman,* 373 A.2d 626, 629 (1977) ("where a contract is plain and unambiguous, there is no room for construction").

The first exclusion provides that Continental agrees to provide coverage for claims and expenses made against CBD provided that:

> prior to:
> a.      The inception date of the fist policy issued by the Company
>         or any subsidiary or affiliate of the Company, if continuously
>         renewed; or,
> b.      The date the Insured first became a member or employee of
>         the Named Insured or Predecessor firm,
> whichever is later, no Insured had a basis to believe that any such act
> or omission, or related act or omission, might reasonably be expected
> to be the basis of a claim.

The Prior Knowledge Exclusion bars coverage where any insured at the effective date "had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim."  Maryland courts have applied an objective standard to prior knowledge exclusions, such as the present, when determining whether an insured had knowledge of a potential claim.  *See, e.g.*, *Culver v. Continental Ins. Co.*, 1 F. Supp. 2d 545, 546 (D. Md. 1998) ("No lawyer receiving [potential claimant's attorney's] letter . . . could plausibly contend that he did not have a *reasonable basis* to foresee a claim against him on the basis of the contents of that letter.") (emphasis added); *Maynard v. Westport Ins. Co.*, 208 F. Supp. 2d 568, 571 ("Plaintiffs concede that

6

an objectively reasonable attorney would or should have known of the potential malpractice.").

In this case, Defendant Kromminga has admitted in his plea agreement that he knowingly and willfully became a member of the conspiracy to "flip" properties, which began in Spring of 1998 and continued through Fall of 2000, and that he committed overt acts in furtherance of that unlawful agreement.  Specifically, in the plea, Kromminga stipulated to the following facts: "Beginning in or about 1998 and continuing until July, 1999, Lynn Kromminga . . . did knowingly, willfully, unlawfully, combine, conspire, confederate, and agree with John Bryant . . . to defraud mortgage lenders and financial institutions. . . .  The defendant met John Bryant, for whom he performed at least 17 unlawful 'flip' transactions."  Plea Agreement, at 4.  The indictment lists several of these conveyances, including the sale of the property 7662 N. Arbory Way, Laurel, Maryland. According to Count One of the criminal indictment, Kromminga ordered a title abstract on that property in or about November 1998 that reflected that John Bryant did not own the property, but in January 1999 Kromminga caused an abstractor to record that John Bryant owned the property as of the date that Bryant "flipped the property" to the buyer.

As a general rule, a plea of guilty to a criminal charge may be introduced in a subsequent civil proceeding as an admission. *See* Fed. R. Evid. 803(22); *see also Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 848 (Md. 1975); *Campfield v. Crowther*, 249 A.2d 168 (Md. 1969).  CBD questions the veracity of the admissions in the plea agreement, stating that factors, such as Kromminga's age, health, family, and financial circumstances, may have compelled him to enter into the plea agreement.[3]  Defendant CBD, however, does not attach affidavits or other proof to

---

[3]  CBD also points out that the original plea agreement attached to Plaintiff's pleadings was not sworn.  Plaintiffs have proffered the Judgment of Conviction, which under the Federal Rules of Evidence is self-authenticating.  *See* Fed. R. Evid. 803.

support these theories.  Because of the lack of evidence to rebut this admission, this Court will deem the guilty plea an admission.

The next logical question then is whether Defendant Kromminga knew or should reasonably have known that these prior acts could serve as the basis of a claim.  In the plea, Kromminga concedes that, prior to April 199, he began defrauding the federal government as well as other entities.  Kromminga's admissions amply support Plaintiff's assertion that a reasonable person would have expected that the victims of this fraud could assert a claim against him and/or CBD.  Furthermore, the plea shows that Kromminga was or should have been aware of these potential claims on or before April 1, 1999, the effective date of the policy.

Although this Court has ruled that Kromminga had a basis to believe or should have reasonably expected that certain acts could be the basis of a claim, the Prior Knowledge Exclusion only applies if these acts were related to the conduct alleged in the First Guaranty Action. Kromminga has admitted his involvement in the flipping scheme from Fall 1998 to 2000 with several other individuals and organizations.  The First Guaranty Action amended complaint asserts that Kromminga "would also often falsify documents to show that Defendant Bryant had purchased the property."  First Guaranty Amend. Compl.¶ 179.  The amended complaint also alleges that Kromminga made false statements to First Guaranty and defrauded the corporation.  The factual assertions underlying this claim are the same as those in Count I of the criminal matter, and there is substantial overlap in these actions.  Both involve many of the same players; in both cases, Kromminga was in essentially the same role; and the purported scheme was the same.  Based on these similarities, the Court finds that the acts which Kromminga should have reasonably known could give rise to a claim are "related" to the acts which could, and did, give rise to the First

Guaranty Action.

Finally, this finding necessarily leads this Court to conclude that the Prior Knowledge Exclusion bars coverage for the negligence claim against CBD. The Policy states that Continental will not provide coverage under the Policy if "any Insured" should have expected that his acts or omission would be the basis of the claim. Neither party disputes that on the effective date of the Policy Kromminga was one of the insured. The broad language of the Policy bars coverage if any insured had prior knowledge and does not restrict this prohibition to claims against the individual. Rather, the plain language bars coverage as to the firm even if an individual possessed the prior knowledge.

Defendant attempts to salvage its case by contending that summary judgment would be inappropriate in cases, like this one, where reasonableness is quite often a question of fact. This Court is unpersuaded. In *Culver*, the Court expressly stated that "[a]lthough reasonableness is quite often a question of fact, summary judgment may properly be granted where, for example, no reasonable fact finder could come to a different conclusion than that a certain state of affairs was reasonably foreseeable." *Culver*, 1 F. Supp. 2d at 547. Because the evidence shows that Defendant Kromminga should have reasonably expected the First Guaranty Action, Plaintiff is entitled to summary judgment.[4]

Defendant CBD also raises Rule 56(f) concerns. This court has carefully considered CBD's argument and the relevant caselaw. After reviewing this material, this Court finds that discovery on this matter would not lead to any genuine issues of fact and is therefore unnecessary.

_____

[4] Having decided this case on other grounds, this Court need not address the Plaintiff's argument that Section IV.A also bars coverage for claims against Kromminga.

Accordingly, for reasons explained above, this Court denies Defendant's request for such discovery.

*See Strag v. Board of Trustees,* 55 F.3d 943, 954 (4th Cir.1995) (holding that a court may denial a

Rule 56(f) motion "where the additional evidence sought for discovery would not have by itself

created a genuine issue of material fact sufficient to defeat summary judgment").

## <u>CONCLUSION</u>

For the reasons set forth above, this Court will grant Plaintiff's Motion for Summary

Judgment [21] and deny Defendant CBD's Motion to Stay These Proceedings [25], as moot.  An

Order consistent with this Opinion will follow.

Date: March 23, 2006                                            /s/
                                                        Alexander Williams, Jr.
                                                        United States District Court