**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **BRYAN S. ROSS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-1450 (RWR)(AK)** |
| ) | |
| **CONTINENTAL CASUALTY CO.,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Chapter 7 bankruptcy trustee Bryan Ross, brought this action against defendant Continental Casualty Company ("Continental") arguing that Continental breached a contract by failing to defend and indemnify the Law Offices of Stanley H. Goldschmidt, P.C. ("Goldschmidt, P.C.") for liability arising from a malpractice lawsuit.  Continental filed a counterclaim seeking a declaratory judgment that the policy did not cover Goldschmidt, P.C.'s claim.  Continental has moved for judgment on the pleadings, or in the alternative for summary judgment, and Magistrate Judge Alan Kay recommends that Continental's motion for summary judgment be granted.  Because the undisputed facts reflect that the professional liability policy did not require Continental to defend and indemnify Goldschmidt, P.C., Magistrate Judge Kay's recommendation will be adopted and Continental's motion for summary judgment will be granted.

- 2 -

BACKGROUND

Stanley Goldschmidt ("Goldschmidt") represented Restaurant Equipment and Supply Depot, Inc. ("RESD") in a lawsuit filed against it in Superior Court for the District of Columbia.  Rest. Equip. & Supply Depot, Inc. v. Gutierrez, 852 A.2d 951 (D.C. 2004).  Goldschmidt failed to file a timely answer on behalf of RESD and default was entered.  Goldschmidt moved unsuccessfully to vacate the entry of default, and the Superior Court entered final default judgment against RESD for over $800,000 on May 1, 2001 after a trial on damages.  Id. at 954.  (See Def.'s Stmt. of Material Facts ("Def.'s Stmt.") ¶ 8.)  Goldschmidt filed an unsuccessful appeal for RESD with the District of Columbia Court of Appeals ("Court of Appeals").  Gutierrez, 852 A.2d at 957.

While RESD's appeal was pending, Continental issued a professional responsibility liability policy to Goldschmidt, P.C.[1] that provided coverage for claims made and reported from May 1, 2003 to May 1, 2004.  (Def.'s Stmt. ¶¶ 18, 20.)  This policy was renewed until it was cancelled as of July 1, 2005.  (Id. ¶ 18.)  Upon cancellation, Goldschmidt, P.C. purchased an unlimited extended reporting period (id. ¶ 19), which created a "period of time after the end of the policy period for reporting

_____

[1] Goldschmidt, the principal of Goldschmidt, P.C. at the time (Pl.'s Opp'n to Mot. for Summ. J., Decl. of Stanley H. Goldschmidt ¶ 2), was also an insured under the policy.  (Def.'s Mem. of P. & A. in Supp. of Mot. for J. on the Pldgs., Decl. of Kelly V. Overman, Ex. A, Lawyers Professional Liability Policy § III.G) (defining "insured.")

- 3 -

claims by reason of an act or omission that occurred prior to the
end of the policy period and is otherwise covered by [the]
policy."[2]  (Def.'s Mem. of P. & A. in Supp. of Mot. for J. on the
Pldgs., or in the Alt., Mot. for Summ. J. ("Def.'s Mem."), Decl.
of Kelly V. Overman, Ex. A, Lawyers Professional Liability Policy
("Liability Policy") § VI.)

In September 2005, RESD filed for bankruptcy and Ross was
appointed trustee of the bankruptcy estate.  (Def.'s Stmt. ¶ 13.)
Goldschmidt, P.C. notified Continental in January 2006, during
the policy's extended reporting period, that Ross contemplated
asserting a malpractice claim against Goldschmidt, P.C.[3]  (Def.'s
Stmt. ¶ 19; Pl.'s Stmt. of Undisputed Material Facts ("Pl.'s
Stmt.") ¶¶ 20, 21.)  Under the policy, Continental agreed to

> pay on behalf of the Insured all sums in excess of the
> deductible that the Insured shall become legally
> obligated to pay as damages and claim expenses because
> of a claim that is both first made against the Insured

---

[2] Plaintiff objected to defendant's factual statement that
the insurance policy at issue was a renewal of a policy first
issued for the period of May 1, 2003 to May 1, 2004, but
plaintiff provided no alternative statement of fact on this issue
to controvert the defendant.  (Pl.'s Obj'n to Def.'s Stmt. ¶¶ 18,
20.)  Moreover, the defendant alleged the same facts in its
counterclaim (Countercl. ¶¶ 34, 36), and the plaintiff admitted
them in his reply to the counterclaim.  (Reply to Countercl.
¶¶ 34, 36.)  Thus, paragraphs 18 and 20 of the defendant's
statement of facts will be treated as admitted.  See Local Civil
Rule 7(h)(1).

[3] Continental attached to its memorandum a copy of the
policy that covered May 1, 2005 to May 1, 2006.  Ross does not
contest the validity of this policy, which covered the
malpractice claim against Goldschmidt, P.C. for its
representation of RESD.

- 4 -

and reported in writing to the Company during the
policy period by reason of an act or omission in the
performance of legal services by the Insured or by any
person for whom the Insured is legally liable, provided
that . . . <u>prior to</u> . . . <u>the inception date of the</u>
<u>first policy issued by the Company</u> . . . , if
continuously renewed . . .[,] <u>no Insured had a basis to</u>
<u>believe that any such act or omission, or related act</u>
<u>or omission, might reasonably be expected to be the</u>
<u>basis of a claim</u>[.]

(Liability Policy § I.A (emphasis added).)

Ross later filed a malpractice lawsuit against Goldschmidt,
P.C.  (Def.'s Stmt. ¶ 14.)  Ross and Goldschmidt, P.C. reached a
settlement in which judgment was entered against Goldschmidt,
P.C., and Goldschmidt, P.C. assigned its rights under the
liability policy to Ross.  (<u>Id.</u> ¶¶ 15-16; Pl.'s Stmt. ¶ 26.)
Goldschmidt, P.C. notified Continental of the adverse judgment.
(Def.'s Opp'n to Pl.'s Stmt. ¶ 22.)  Continental denied coverage
of Goldschmidt, P.C.'s policy claim.  (Def.'s Stmt. ¶ 24; Pl.'s
Stmt. ¶¶ 23, 25.)

Ross alleges that Continental breached the contract by
failing to defend and indemnify Goldschmidt, P.C. for liability
arising from the RESD malpractice lawsuit.  (Compl. ¶ 44.)
Continental has filed a counterclaim seeking a declaratory
judgment that the policy barred coverage of the claim against
Goldschmidt, P.C., and has moved for summary judgment, arguing
that Goldschmidt, P.C. had a basis to know before the policy was
issued that its representation of RESD might trigger a
malpractice lawsuit.  (Def.'s Mem. at 7-14.)  Ross opposes

- 5 -

Continental's motion for summary judgment.  He argues that D.C.
Code § 31-4314 bars Continental from denying coverage unless
Goldschmidt, P.C. subjectively intended in its policy application
to deceive Continental and the deception was material, for
neither of which there is any evidence.  (Pl.'s Opp'n to Mot. for
Summ. J. ("Pl.'s Opp'n") at 7-10.)

The magistrate judge recommends that Continental's motion
for summary judgment be granted.  The magistrate judge concluded
that no material facts remained in dispute as to whether
Goldschmidt, P.C. knew of prior events that could have triggered
a claim, and that § 31-4314 did not govern this dispute.  (Report
& Recommendation ("R. & R.") at 10-12.)  Ross filed an objection
claiming that § I.A of the policy is ambiguous and should be
interpreted in Ross' favor, that Continental had to show
materiality of a false statement or intent to deceive in the
application to deny coverage, and that an issue of fact exists as
to whether Goldschmidt's actions might reasonably have been
expected to be the basis of a claim.  (Pl.'s Obj'n to
Magistrate's R. & R. ("Pl.'s Obj'n") at 1-2, 5-6, 9.)

## DISCUSSION

Under Local Civil Rule 72.3(c), "[a] district judge shall
make a de novo determination of those portions of a magistrate
judge's findings and recommendations to which objection is made."
Local Civil Rule 72.3(c); Ames v. Yellow Cab of D.C., Inc., Civil

- 6 -

Action No. 00-3116 (RWR), 2006 WL 2711546, at *4 (D.D.C. Sept. 21, 2006).

On a motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment may be granted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). A material fact is one that is capable of affecting the outcome of the litigation. Liberty Lobby, Inc., 477 U.S. at 248. A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" as opposed to evidence that "is so one-sided that one party must prevail as a matter of law." Id. at 248, 252. A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. Id. at 255. The nonmoving party, however, must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

- 7 -

Rather, the nonmovant must "come forward with specific facts showing that there is a *genuine issue for trial*."  Id. at 587 (internal quotation marks omitted).

I.   D.C. CODE § 31-4314

Under D.C. Code § 31-4314, "[t]he falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company."[4]  D.C. Code § 31-4314.  D.C. Code § 31-4314 prevents an insurer from denying coverage or canceling a policy due to a false statement in the application unless the applicant intended to deceive the insurer or the false statement materially affected the insurer's decision of whether to insure the applicant. Westhoven v. New England Mut. Life Ins. Co., 384 A.2d 36, 38 (D.C. 1978); see also Metro. Life Ins. Co. v. Adams, 37 A.2d 345, 348 (D.C. 1944) (noting that the section involves an insurer's attempts to "avoid such a policy for material misrepresentation on account of the answers to the questions in the application"); Burlington Ins. Co. v. Okie Dokie, Inc., 398 F. Supp. 2d 147, 157 (D.D.C. 2005) (applying § 31-4314 to an attempt to deny coverage and cancel a policy by an insurer that claimed the application contained a false statement that materially affected the

---

[4] Section 31-4314 was previously codified as D.C. Code § 35-414.

- 8 -

insurer's decision to issue the policy).  Ross objects to the
magistrate judge's conclusion that Continental does not have to
show intent to deceive or a material effect on the risk taken in
order to deny coverage.  (Pl.'s Obj'n at 2.)

Continental did not ground its denial of the insured's claim
on any assertion that the insured made any false statement in its
application.  Continental denied the claim based on the assertion
that when the policy went into effect, Goldschmidt knew that his
representation of RESD that might reasonably be expected to be
the basis of a malpractice claim.  (Def.'s Mem. at 1.)  Section
I.A. of this "claims made and reported policy" barred claims
where prior to the first policy's inception date, the "[i]nsured
has a basis to believe that any such act or omission, or related
act or omission, might reasonably be expected to be the basis of
a claim[.]"  (Liability Policy § I.A.)  See Robert Mallen &
Jeffrey Smith, 5 Legal Malpractice § 36:3 (2008) (stating that
"[a] claims-made policy usually states in the insuring agreements
or by exclusion that it does not apply to claims or known
circumstances that pre-existed the policy inception date, and
that may be or are likely to give rise to a claim").  No false
statement in the application need be present to trigger that bar.
Ross cites to Prudential Ins. Co. of Am. v. Saxe, 134 F.2d 16
(D.C. Cir. 1943), and argues that § 31-4314 cannot be
circumvented by contractual attempts to avoid the attachment of
risk.  Id. at 25.  However, unlike the insurer in Saxe who argued

that the false statement in the application prevented the policy from taking effect, id. at 24, Continental did not deny coverage by claiming that the policy was void or not in effect.

Continental did not improperly circumvent § 31-4314 as that statute does not apply to Continental's decision here.

## II.   LIABILITY POLICY § I.A

Under District of Columbia law, "when [insurance] contracts are clear and unambiguous, they will be enforced by the courts as written, so long as they do not 'violate a statute or public policy.'"  Hartford Accident & Indem. Co. v. Pro-Football, Inc., 127 F.3d 1111, 1114 (D.C. Cir. 1997) (quoting Smalls v. State Farm Mut. Auto. Ins. Co., 678 A.2d 32, 35 (D.C. 1996)).  An insurance contract is not "ambiguous merely because the parties do not agree on the interpretation of the contract provision in question."  Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union, 770 A.2d 978, 986 (D.C. 2001). "Policy language is not genuinely ambiguous unless 'it is susceptible of more than one reasonable interpretation.'"  Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123, 1127-28 (D.C. 2001) (quoting Am. Bldg. Maint. Co. v. L'Enfant Plaza Prop., Inc., 655 A.2d 858, 861 (D.C. 1995)).  "[A] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity[.]"  Redmond v. State Farm Ins. Co., 728 A.2d 1202, 1206 (D.C. 1999) (internal quotation marks omitted) (first alteration in original).  Unless the policy violates public

- 10 -

policy or a statute, an exclusion provision must be enforced even if the insured did not foresee how the exclusion operated because courts are hesitant to "rewrite insurance policies and reallocate [the] assignment of risks between insurer and insured." Chase, 780 A.2d at 1132.

Ross asserts that Liability Policy § I.A is ambiguous because it is "reasonably open to two constructions." (Pl.'s Objection at 6.) He contends that the ambiguity comes from the use of a subjective word "believe" and an objective word "reasonably" in the same provision. If § I.A is ambiguous, Ross argues, the ambiguity should be construed in favor of the insured under District of Columbia law and the subjective belief of the insured should govern. However, the inclusion of both subjective and objective language does not necessarily cause § I.A to be ambiguous.

Courts have applied insurance policy provisions with subjective and objective language like that in § I.A. Such provisions incorporate both a subjective consideration of the facts known by the insured and an objective analysis of whether a future malpractice claim might reasonably be expected to arise. Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231 (3d Cir. 2006) interpreted a provision stating that coverage would be available "provided that the insured had no knowledge of any suit, or any act or error or omission, which might reasonably be expected to result in a claim or suit as of the date of signing

the application for this insurance" as incorporating a subjective look at the insured's actual knowledge and an objective consideration of "whether a reasonable professional in the insured's position might expect a claim or suit to result." Id. at 237; cf. Skinner v. Aetna Life & Cas., 804 F.2d 148, 150-51 (D.C. Cir. 1986) (stating that a provision using the phrase "to the best of [the insured's] knowledge and belief" "must be assessed in the light of [the insured's] actual knowledge and belief"). Morever, the court in Westport Ins. Corp. v. Lilley, 292 F. Supp. 2d 165, 171 (D. Me. 2003), found that a provision which prevented coverage "if any insured at the effective date knew or could have reasonably foreseen that such act, error, omission [or] circumstance . . . might be the basis of a claim," to be unambiguous, and "[w]hether the . . . defendants could have reasonably foreseen [the lawyer's] malpractice claim is an objective test that can be determined as a matter of law, but it must be determined based only on those facts and circumstances that the . . . defendants were subjectively aware of." See also City of Brentwood, Mo. v. Northland Ins. Co., 397 F. Supp. 2d 1143, 1146, 1148 (E.D. Mo. 2005) (interpreting a provision that extended coverage when "no Insured had any knowledge of any circumstance likely to result in or give rise to a claim nor could have reasonably foreseen that a claim might be made" to mean that a court should "first look at the insured's subjective knowledge and then the *objective* understanding of a reasonable

attorney with that knowledge" (internal quotation marks omitted)). Section I.A incorporates a subjective consideration of the insured's knowledge and an objective consideration of whether an act or omission "might reasonably be expected to be the basis of a claim." (Liability Policy § I.A.)

Ross argues that the magistrate judge erred in relying on the Third Circuit case of Selko v. Home Ins. Co., 139 F.3d 146, 151-52 (1998), because Selko was later rejected in New Jersey by Liebling v. Garden State Indem., 767 A.2d 515 (N.J. Super. Ct. App. Div. 2001). As the Third Circuit thereafter explained, Selko interpreted under Pennsylvania law an insurance policy provision stating "the insured had no basis to believe that the insured had breached a professional duty" to require that the court consider "(1) the subjective question of whether the insured knew of certain facts; and (2) the objective question of whether a reasonable lawyer in possession of such facts would have had a basis to believe that the insured breached a professional duty." Colliers Lanard & Axilbund, 458 F.3d at 237. Liebling "acknowledge[d] that [Selko's] interpretation is sound as a matter of logic," 767 A.2d at 523, but it departed from Selko under the New Jersey doctrine that "in exceptional circumstances, even the plain language of an exclusion can be set aside if it is contrary to the objectively reasonable expectations of the insured." Colliers Lanard & Axilbund, 458 F.3d at 238. While Selko interpreted "basis to believe" to

- 13 -

require both subjective and objective inquiries, <u>Colliers Lanard</u>
<u>& Axilbund</u>, 458 F.3d at 237, § I.A clearly has a "basis to
believe" requirement that is distinct from the plainly objective
"might reasonably be expected" component.  The policy provision
at issue in this case unambiguously requires an objective inquiry
into what might have been reasonably expected to form a claim
based on the knowledge Goldschmidt possessed when the policy took
effect.[5]

Ross concedes that Goldschmidt knew the facts surrounding
the entry of default against RESD.  Goldschmidt knew he did not
file an answer on behalf of RESD, unsuccessfully sought to have
Superior Court vacate the entry of default, and knew that the
Superior Court entered a default judgment against RESD before the
liability policy went into effect.  (Pl.'s Opp'n, Decl. of
Stanley H. Goldschmidt ¶¶ 5-7.)  <u>See also</u> <u>Gutierrez</u>, 852 A.2d at
953-54.  Moreover, Goldschmidt's known failure to file an answer
"might reasonably be expected to be the basis of a claim."
(Liability Policy § I.A.)  An attorney's failure to file an
answer resulting in a court's entry of default can constitute a
basis for a malpractice suit.  <u>See</u> <u>Kaempe v. Meyers</u>, 367 F.3d
958, 966 (D.C. Cir. 2004) (stating that allowing entry of default

_____

[5] Ross argues that § I.A conflicts with § 31-4314.  (Pl.'s
Obj'n at 8 n.2.)  However, as is discussed above, § 31-4314
applies to denials of coverage based on false statements in an
application and not a denial based on the exclusion found in the
policy's terms.

- 14 -

judgment against a client by an attorney is an example of an act
or omission that is "so obvious that the trier of fact can find
negligence [by the attorney] as a matter of common knowledge");
Hamilton v. Needham, 519 A.2d 172, 174-75 (D.C. 1986) (noting
that "permitting entry of default against a client" is an example
of negligence in a legal malpractice action); Lockhart v. Cade,
728 A.2d 65, 68 (D.C. 1999) (stating that "entry of a default
operates as an admission by the defaulting party that there are
no issues of liability") (internal quotation marks omitted).
Although Goldschmidt was contesting the default judgment with the
Court of Appeals and believed that he would be successful, § I.A
does not require certainty that a malpractice claim will be
filed.  Accordingly, § I.A prevents coverage of a malpractice
claim in connection with Goldschmidt's representation of RESD.

<u>CONCLUSION</u>

Because § 31-4314 does not apply and the Liability Policy
barred coverage of Goldschmidt, P.C.'s claim, Magistrate Judge
Kay's recommendation will be adopted, and Continental's motion
for summary judgment will be granted.  A final order accompanies
this Memorandum Opinion.

SIGNED this 2nd day of December, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge